MICHAEL RUBIN (SBN 80618)
HUNTER B. THOMSON (SBN 330533)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064
E-mail:        mrubin@altber.com
               hthomson@altber.com

JEFFREY D. PERCONTE (*pro hac vice to be filed*)
Major League Baseball Players Association
12 East 49th Street
New York, NY  10017
Telephone:     (212) 584-6516
Facsimile:     (212) 584-6616
E-mail:        jperconte@mlbpa.org

*Attorneys for Defendant*
*Major League Baseball Players Association*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NEIMAN NIX, an individual; and DNA SPORTS PERFORMANCE LAB, INC., a Florida corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>MAJOR LEAGUE BASEBALL; MAJOR LEAGUE BASEBALL ENTERPRISES, INC.; MLB ADVANCED MEDIA, L.P.; and MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION,<br><br>                    Defendants. | CASE NO. 3:20-cv-00546-WHA<br><br>**DEFENDANT MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT POWERS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 2, 2020<br>Time:          8:00 a.m.<br>Courtroom:   12, 19th Fl.<br>                450 Golden Gate Avenue<br>                San Francisco, CA 94102<br><br>Action Filed: January 23, 2020<br><br>*Honorable William H. Alsup* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

    INTRODUCTION .......................................................................................................... 1

    FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 5

    ARGUMENT .................................................................................................................. 7

       I.    Filing a Frivolous Complaint is Sanctionable Under Federal Rule of
           Civil Procedure 11 and the Court's Inherent Powers ........................................... 7

          A.  The Complaint is Legally and Factually Baseless ...................................... 8

              a. Lanham Act ...................................................................................... 9

              b. False Advertising Law ................................................................... 12

              c. Unfair Competition Law ................................................................ 12

          B.  Plaintiffs' Counsel Failed to Undertake the Requisite "Reasonable
            and Competent Inquiry." ........................................................................ 13

              a. The Court Should Impose Monetary Sanctions under
                 Rule 11 for the Filing of a Frivolous Complaint .......................... 14

              b. The Court Should Impose Further Monetary Sanctions
                 Based on Its Inherent Authority to Punish the Bad-Faith
                 Course of  Conduct Preceding the Filing of Plaintiffs'
                 Frivolous Complaint ..................................................................... 24

       CONCLUSION ........................................................................................................ 25

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Federal Cases**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
   398 F.Supp.3d 578 (N.D. Cal. 2019)......................................................................... 10

*Ariix, LLC v. NutriSearch Corp.*,
   No. 17CV320-LAB (BGS), 2018 WL 1456928 (S.D. Cal. Mar. 23, 2018)........................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 1

*B.K.B. v. Maui Police Dep't*,
   276 F.3d 1091 (9th Cir. 2002), *as amended* (Feb. 20, 2002) ................................... 8

*Baby Trend, Inc. v. Playtex Prods., LLC*,
   No. 5:13-CV-647-ODW(RZx), 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013) ................ 11, 12

*Beasley v. Conagra Brands, Inc.*,
   374 F.Supp 3d 869 (N.D. Cal. 2019)....................................................................... 12

*Estate of Blue v. County of Los Angeles*,
   120 F.3d 982 (9th Cir. 1997) ............................................................................... 14

*Buster v. Greisen*,
   104 F.3d 1186 (9th Cir. 1997) ................................................................................ 7

*Chose v. Accor Hotels & Resorts (Maryland) LLC*,
   No. 19-CV-06174-HSG, 2020 WL 759365 (N.D. Cal. Feb. 14, 2020) ......................... 13

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)......................................................................*passim*

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993) ......................................................................................... 10

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
   398 F.Supp.3d 623 (N.D. Cal. 2019)...................................................................... 12

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999)................................................................................ 10

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ........................................................................................... 7

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ................................................................... 1, 8, 24, 25

*Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*,
   859 F.Supp. 1521 (S.D.N.Y. 1994) ................................................................. 10

*In re Itel Securities Litigation*,
   791 F.2d 672 (9th Cir. 1986) ........................................................................ 24

*Jarrow Formulas, Inc. v. Nutrition Now, Inc*.,
   304 F.3d 829 (9th Cir. 2002) ........................................................................ 11

*In re Keegan Mgmt. Co., Sec. Litig*.,
   78 F.3d 431 (9th Cir. 1996) ............................................................................ 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ...................................................................................... 10

*Luxpro Corp. v. Apple Inc*.,
   No. C 10-03058 JSW, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011).................... 13

*MAI Sys. Corp. v. UIPS*,
   856 F.Supp. 538 (N.D. Cal. 1994) ................................................................... 13

*Margolis v. Ryan*,
   140 F.3d 850 (9th Cir. 1998) ........................................................................ 24

*McCready v. Am. Honda Motor Co*.,
   No. C 05-5247, 2006 WL 1708303 (N.D. Cal. June 19, 2006).......................... 12

*Nix v. ESPN, Inc.*,
   772 F.App'x 807 (11th Cir. 2019) ..................................................................... 6

*Nix v. ESPN, Inc*.,
   No. 1:18-CV-22208-UU, 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018) ................ 6

*Nix v. Office of the Comm'r of Baseball*,
   No. 16-CV-5604 (ALC) (S.D.N.Y. July 14, 2016) ............................................... 5

*Nix v. Office of Comm'r of Baseball*,
   No. 17-CV-1241 (RJS), 2017 WL 2889503 (S.D.N.Y. July 6, 2017) ............... 5, 15

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
   115 F.3d 644 (9th Cir. 1997) .............................................................. 8, 24, 25

*Refac Int'l, Ltd. v. Hitachi Ltd*.,
   141 F.R.D. 281 (C.D. Cal. 1991) ............................................................. 14, 24

*Rhoades v. Avon Prod., Inc*.,
   504 F.3d 1151 (9th Cir. 2007) ....................................................................... 17

*Rice v. Fox Broad. Co*.,
   330 F.3d 1170 (9th Cir. 2003) ....................................................................... 10

*Rosado v. eBay, Inc.*,
    53 F.Supp.3d 1256 (N.D. Cal. 2014) ................................................................. 12

*Rubin v. Wal-Mart Stores, Inc.*,
    599 F.Supp.2d 1176 (N.D. Cal. 2009) ................................................................ 12

*Tr. for Randy Craig Wolfe Tr. v. Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ............................................................................ 10

*Truesdell v. S. Cal. Permanente Med. Group*,
    209 F.R.D. 169 (C.D. Cal. 2002) ........................................................................ 14

*Truesdell v. S. Cal. Permanente Med. Grp.*,
    293 F.3d 1146 (9th Cir. 2002) ............................................................................ 14

*Winchester Packaging, Inc. v. Mobil Chem. Co.*,
    14 F.3d 316 (7th Cir. 1994) ................................................................................ 16

**California Cases**

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ....................................................................................... 13

**Other State Cases**

*Nix v. Major League Baseball*,
    Index No. 159953/2016, 2018 WL 2739433 (N.Y. Sup. Ct., June 07, 2018) ......... 6

**Federal Statutes**

15 U.S.C. §1125(a)(1)(B) .................................................................................... 9, 10

**California Statutes**

Cal. Bus. & Prof. Code §17200 ............................................................................... 9

Cal. Bus. & Prof. Code §17203 ............................................................................. 13

Cal. Bus. & Prof. Code §17500 ........................................................................ 9, 12

Cal. Civ. Proc. Code §338(a) ................................................................................ 12

Cal. Civ. Proc. Code §338(d) ................................................................................ 11

**Rules**

Fed. R. Civ. P. 11(b) ............................................................................................... 7

Fed. R. Civ. P. 11(c)(2) ......................................................................................... 24

Fed. R. Civ. P. 11(c)(4) ......................................................................................... 14

1

2

## NOTICE OF MOTION AND MOTION FOR SANCTIONS
## PURSUANT TO  RULE 11 AND THE COURT'S INHERENT POWERS

3

TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:

4

PLEASE TAKE NOTICE THAT at 8:00 a.m. on July 2, 2020, or as soon thereafter as the

5

matter may be heard, in Courtroom 12 on the 19th floor of the United States District Court for the

6

Northern District of California, at 450 Golden Gate Avenue, San Francisco, California 94102,

7

defendant Major League Baseball Players Association ("MLBPA") will and hereby does move this

8

Court for an order sanctioning plaintiffs and their counsel for filing a frivolous complaint and for

9

the harassing bad-faith misconduct preceding plaintiffs' filing of the complaint. This motion is

10

made pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent powers.

11

For the reason set forth in the accompanying memorandum of points and authorities,

12

MLBPA respectfully requests that the Court: (1) strike plaintiffs' claims against MLBPA and (2)

13

order monetary sanctions against plaintiffs and their attorneys in an amount to be determined by

14

the Court after reviewing MLBPA's documentation of the attorneys' fees reasonably incurred in

15

responding to plaintiffs' and their attorneys' wrongful conduct.

16

This Motion is based on the attached Memorandum of Points and Authorities, the

17

accompanying Declaration of Michael Rubin, any reply papers that MLBPA may submit, the

18

arguments and any evidence presented at the hearing on this Motion, and all of the Court's

19

pleadings and papers on file in this matter.

20

Dated:  May 5, 2020                      By:      /s/Michael Rubin_____
                                                 MICHAEL RUBIN

21                                                HUNTER B. THOMSON

22                                                Altshuler Berzon LLP

23                                                JEFFREY D. PERCONTE
                                                 Major League Baseball Players Association

24
                                                 *Attorneys for Defendant*
25                                                *Major League Baseball Players Association*

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

For the past several years, plaintiff Neiman Nix ("Nix") has alternated between threatening to file this lawsuit against defendant Major League Baseball Players Association ("MLBPA") and wrongfully using those threats to pressure MLPBA into providing false statements for Nix to use in one of his many failed lawsuits against defendant Major League Baseball ("MLB") and the media. Until this past January, Nix had backed down from each of his threats in the face of MLBPA's refusals to provide false testimony and its warnings that if Nix persisted in harassing MLBPA and threatening frivolous litigation, MLBPA would seek monetary sanctions against him and his attorneys. *See* Declaration of Michael Rubin ("Rubin Decl.") ¶¶9-27.

Now, despite those warnings and in the complete absence of any supporting evidence (or any good faith belief that such evidence might exist), Nix has filed this lawsuit, naming MLB, two MLB-related entities (as in his previous lawsuits) and, for the first time, adding MLBPA as a defendant – without any factual or legal support for doing so.

To the extent Nix's claims against MLBPA are intelligible, they lack any good faith legal or factual basis and do not survive "plausibility" scrutiny under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Particularly when considered against the backdrop of nearly four years of increasingly wild threats to drag MLBPA into federal court litigation unless it would provide false testimony to support Nix's quixotic campaign to pin the blame for his business failures on MLB, the decision by Nix and his attorneys to sue MLBPA despite *knowing* that no facts exist to support the claims against MLBPA is sanctionable under Rule 11 and the Court's inherent powers. *See, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (imposition of Rule 11 sanctions where complaint lacked legal or factual basis); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) ("the district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct").

Nix's 66-paragraph complaint contains just a single, two-sentence paragraph with factual allegations pertaining to his claims against MLBPA. That paragraph states:

> Major League Baseball Players Association (MLBPA) has entered into its partnership with a nutritional supplement company, Klean Athlete, to sell protein

supplements containing whey protein isolates to the general public. *See* **Exhibit 4** attached hereto [citation omitted]. Klean Athlete states that its products are "certified safe for sport" under the guidelines of the NSF. Being "certified safe for sport" is an express representation that this product contains no banned substances under the MLB Joint-Program.

Compl. ¶38 & Exh. 4. Yet those "facts," even if true, do not come close to stating a claim against MLBPA under the Lanham Act, False Advertising Law ("FAL") or Unfair Competition Law ("UCL") – the three claims for relief alleged in paragraphs 45-66 of the Complaint (*none* of which refer specifically to MLBPA). Nor do those facts support the requested relief under any plausible theory of liability. While Nix's Complaint also makes a handful of other references to MLBPA, those references either set forth irrelevant background information (*see, e.g.,* Compl. ¶8 (describing MLBPA), ¶21 (describing a July 2016 telephone call between Nix and MLBPA's in-house counsel), ¶29 (describing a September 2018 email between Nix's counsel and MLBPA's outside counsel)) or they lump all defendants together in making conclusory allegations that do not rest on any facts pertaining to MLBPA, let alone that plausibly allege any wrongful conduct by MLBPA during the applicable limitations period (or any other time). *See, e.g., id.* ¶¶18, 44, 45.

Nix's Complaint mostly describes a supposed vendetta against him by MLB, which allegedly began in 2013 and has been the subject of four other failed lawsuits filed by Nix and/or his company in state and federal courts in New York and Florida. *See* Compl. ¶¶22-25. In this new lawsuit, as before, Nix tries to blame others for his own unsuccessful efforts in marketing his deer antler spray product to athletes as a nutritional supplement. This time Nix has added MLBPA as a defendant, but without identifying any actionable conduct by MLBPA or specifying what MLBPA did, or failed to do, that would give rise to any liability under the Lanham Act, FAL, or UCL. The course of dealing between Nix and the MLBPA over the past several years, described in detail below at 14-24, suggests that the real reason Nix sued MLBPA was to punish it for not providing false testimony to support Nix's previous lawsuits against MLB and others, not because of any legitimate, good faith believe that MLBPA engaged in any wrongful conduct.

Despite the opacity of Nix's complaint, it appears from the threats and demands communicated from Nix and his lawyers to MLBPA in recent years (*see* Rubin Decl. ¶¶15-27 & Exhs. H-R) that the following is the gist of Nix's allegations against MLBPA:

1    * Nix and his company, plaintiff DNA Sports Performance Lab, Inc., sell a nutritional

2 supplement purportedly made from deer antler (or perhaps elk antler) horns. *See* Compl. ¶17.

3    * That nutritional supplement contains a substance – insulin-like growth factor ("IGF-1") –

4 that has long been on the list of banned substances (like steroids and other naturally occurring

5 performance-enhancing substances such as testosterone and human growth hormone) under MLB's

6 and MLBPA's collectively bargained Joint Drug Prevention and Treatment Plan ("Joint Drug

7 Program"). *See* Compl. ¶32.

8    * MLBPA once had a "partnership" (actually, a brief licensing agreement that ended in

9 2017) with a company, Klean Athlete, whose products included nutritional supplements.

10    * Klean Athlete represented in a 2016 press release that its products were certified by an

11 independent certification organization, NSF International (www.nsf.org), as "certified safe for

12 sports" (actually, "certified for sports"). *See* Compl. ¶38.

13    * Despite being "certified for sports," the Klean Athlete supplements (according to Nix)

14 contain "whey protein isolates," Compl. ¶38, and Nix alleges that "[i]t is . . . well known that whey

15 protein and other proteins derived from meat or milk contain IGF-1, *id.* ¶27.

16    That's the full extent of Nix's allegations against MLBPA. There's no allegation – nor

17 could there be – that *MLBPA* targeted Nix and his products in any investigation, or publicly

18 maligned his products, or issued any press releases, or engaged in any false commercial speech (or

19 any of the other conduct) that Nix contends, without factual support or plausible allegations, that

20 the *other* defendants might have done. *See, e.g.,* Compl. ¶¶21, 29, 38. There's no allegation that

21 MLBPA conducted any of its own testing of any Klean Athlete nutritional supplement (which it

22 had no ability to do). There's no allegation that MLBPA *knew* that any Klean Athlete supplement

23 contained IGF-1 (if in fact it did). There's also no allegation that MLBPA instructed NSF, or had

24 the authority to instruct NSF, to certify the Klean Athlete product as "certified for sport" or to deny

25 certification to any of Nix's company's products (if in fact Nix ever sought certification, which the

26 Complaint does not say). In short, there is nothing in the Complaint, let alone any plausible, fact-

27 based allegation, that would support a claim for relief against MLBPA for having made false or

28 misleading representations to any member of the public about any product at any time.

The absence of any plausible factual basis for plaintiffs' claims for relief against MLBPA dooms those claims. Just as important for purposes of this sanctions motion is the fact that MLBPA repeatedly informed Nix and his attorneys, orally and writing, of the true facts – which Nix's Complaint ignores and does not even attempt to address. *See* Rubin Decl. ¶¶2-26. Yet those communications from MLBPA establish that Nix and his attorneys could not possibly have conducted Rule 11's required "inquiry reasonable under the circumstances" to determine that their "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that their "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

As documented below, MLBPA informed Nix and his attorneys of each of the following indisputable facts:

* MLBPA's brief licensing agreement with Klean Athlete (which merely allowed Klean Athlete to use the MLBPA trademark on licensed products) ended on December 31, 2017 and has not been renewed.

* MLBPA does not conduct any independent testing of nutritional supplements or any other products and does not know whether or not any of Klean Athlete's nutritional supplement contained any IGF-1 prior to December 31, 2017 (or at any other time).

* MLBPA had no input into NSF's decision to "certify for sports" any nutritional supplement product manufactured by Klean Athlete.

* The Joint Drug Program negotiated between MLB and MLBPA lists IGF-1 as a banned Performance Enhancing Substance and does not distinguish between natural and other sources of IGF-1.

Rubin Decl. ¶2.

MLBPA has repeatedly asked Nix and his attorneys to dismiss with prejudice all claims against MLBPA. *Id.* ¶3. Even though Nix's attorney repeatedly promised to do so, it is now clear that plaintiffs have no intention of dismissing this action voluntarily. *See id.* ¶27. By serving this Rule 11 motion on plaintiffs, MLBPA is giving Nix and his company one more chance. Either they

dismiss their complaint against MLBPA with prejudice, or they and their attorneys, who falsely

represented to the Court that they had conducted a reasonable good faith inquiry into the facts

before filing the Complaint against MLBPA, should be sanctioned for violating Rule 11 and for

bad-faith litigation conduct.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the allegations of his Complaint, Nix opened a "sports science center,"

defendant DNA, in Miami Beach in 2012. Compl. ¶16. In addition to sports training, DNA sold

various nutritional supplements, including a supplement derived from deer antler tissue. *Id.* ¶¶16-

17. Nix concedes that his company's deer-antler supplement contains IGF-1 and that IGF-1 is

banned by the Joint Drug Program, although he contends that his supplement contains only a

"naturally occurring, bio-identical form" of IGF-1. *Id.* ¶18.

In 2013, MLB launched an investigation into performance-enhancing drugs, allegedly

investigating "every anti-aging clinic" in Florida, including DNA. *Id.* ¶19. Nix's company was

apparently one of the targets of that investigation.

On February 18, 2014, plaintiffs filed a complaint against MLB and several of its

employees in Florida state court, contending that MLB's investigation was unfair and

discriminatory. *See Nix v. Office of Comm'r of Baseball*, No. 17-CV-1241 (RJS), 2017 WL

2889503, at *1-2 (S.D.N.Y. July 6, 2017) (describing the history of Nix's litigation against MLB).

That lawsuit was dismissed on November 6, 2014 for failure to prosecute. *Id.*

Plaintiffs filed a second lawsuit against MLB and several of its employees on July 14, 2016

in the U.S. District Court for the Southern District of New York, challenging that same MLB

investigation and alleging tortious interference with prospective economic advantage. *See*

Complaint, *Nix v. Office of the Comm'r of Baseball*, No. 16-CV-5604 (ALC) (S.D.N.Y. July 14,

2016). Plaintiffs voluntarily dismissed that suit on November 3, 2016. Docket No. 13.

Six days after that dismissal, plaintiffs filed a third lawsuit, in New York state court, against

MLB and several of its employees, alleging that in the course of that same investigation defendants

hacked DNA's social media accounts and engaged in tortious interference with economic

advantage and defamation. *Nix*, 2017 WL 2889503, at *1. Following the voluntary dismissal of the

1   sole federal claim, that lawsuit was remanded to state court, where it was dismissed in June 2018.

2   *Nix v. Major League Baseball*, Index No. 159953/2016, 2018 WL 2739433 (N.Y. Sup. Ct., June

3   07, 2018). Plaintiffs moved to reargue the dismissal. In an order dated December 31, 2018, the

4   New York court denied the motion as frivolous and imposed sanctions "against plaintiffs and

5   counsel," requiring them to pay defendants' attorneys' fees incurred in opposing the motion. 2018

6   WL 6838756 (N.Y. Sup. Ct., Dec. 31, 2018).

7   　　　　On March 13, 2018, plaintiffs filed a fourth lawsuit, this time in the Southern District of

8   Florida, alleging that ESPN, the AP, and USA Today defamed plaintiffs by reporting or

9   republishing a report on plaintiffs' July 2016 suit against MLB (Lawsuit #2), a report that included

10  the statement, "The suit admits Nix and his company used bioidentical insulin like growth factor

11  (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." *Nix v.*

12  *ESPN*, *Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *1-2 (S.D. Fla. Aug. 30, 2018); *see*

13  Compl. ¶25.[1] The federal district court dismissed plaintiffs' complaint with prejudice in this fourth

14  lawsuit on August 30, 2018, *id.* at *7, and the Eleventh Circuit affirmed on May 15, 2019, holding

15  that there could be no actionable defamation because the statement at issue was substantially

16  correct: "Nix's complaint in his suit against the MLB stated that his products contained IGF-1

17  derived from elk antlers. The MLB's list of banned substances includes all isomers of IGF-1. The

18  statement at issue simply combined these two facts." *Nix v. ESPN, Inc.*, 772 F.App'x 807, 813

19  (11th Cir. 2019); *see also id.* at 814 ("The MLB Prohibited Substances List . . . does not describe

20  the source of the substance or distinguish between synthetic and natural IGF-1. Therefore, the

21  omission of any distinction between synthetic and natural IGF-1 does not render the statements

22

_____

23  [1] In that defamation lawsuit, as in the present lawsuit, plaintiffs alleged that

24  　　　(1) naturally occurring, bio-identical IGF-1, extracted from the antlers of elk and deer,
        is not a controlled or illegal substance, (2) the use of naturally occurring, bioidentical

25  　　　IGF-1, extracted from the antlers of elk and deer, is not prohibited by MLB or MLB
        Player's Association, (3) naturally occurring, bio-identical IGF-1 is also found in

26  　　　milk, meat, fish, whey protein, and in every human body, (4) neither Nix nor DNA
        ever sold any extracts or compounds derived from elk or deer antlers to any MLB

27  　　　players, and (5) extracts from elk or deer antlers are not considered illegal by the U.S.
        Drug Enforcement Agency ("DEA") nor are these banned by the World Anti-Doping
        Agency ("WADA").

28  *Compare Nix*, 2018 WL 8802885, at *1 *with* Compl. ¶18.

untrue or defamatory.").

Plaintiffs filed the present lawsuit in this Court on January 23, 2020. Although Nix and his attorneys have been trying since at least 2016 to strong arm MLBPA into "cooperating" with their efforts to pursue claims against MLB, and have been threatening to sue MLBPA since at least July 2018 on a variety of baseless theories (unless MLBPA provided that cooperation, in the form of false testimony), this is the first time that Nix has actually brought suit against MLBPA. Imposition of sanctions will help to ensure that it is the last time, because he lacks any good faith legal or factual basis for his claims.

## ARGUMENT

**I.     Filing a Frivolous Complaint is Sanctionable Under Federal Rule of Civil Procedure 11 and the Court's Inherent Powers.**

"Filing a complaint in federal court is no trifling undertaking." *Christian*, 286 F.3d at 1127. "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 provides in relevant part:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). Rule 11's "central purpose" is to "deter baseless filings in district court." *Cooter*, 496 U.S. at 393. When the Rule 11 violation is premised on the filing of a complaint, the Court must consider: (1) whether the claim is objectively "baseless," and (2) whether the attorney

has conducted "a reasonable and competent inquiry" prior to signing and filing the complaint. *Christian*, 286 F.3d at 1127 (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). Both considerations require imposition of monetary sanctions here.

Federal courts also have inherent power to impose sanctions when there is an explicit finding "that counsel's conduct constituted or was tantamount to bad faith." *Id.* at 1131; *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002) ("counsel's reckless and knowing conduct in this case was tantamount to bad faith and therefore sanctionable under the court's inherent power"), *as amended* (Feb. 20, 2002). "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)). Bad faith accordingly "includes a broad range of willful improper conduct." *Fink*, 239 F.3d at 992. Sanctions pursuant to the Court's inherent authority "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

### A.   The Complaint is Legally and Factually Baseless.

The only fact-based allegations against MLBPA in the Complaint are that, at some unstated time, MLBPA had a "partnership with a nutritional supplement company, Klean Athlete," which sold "protein supplements containing whey protein isolates to the general public" which "*Klean Athlete states* . . . are 'certified as safe for sport' under the guidelines of the NSF." Compl. ¶38 (emphasis added). Plaintiffs further allege that "[b]eing 'certified as safe for sport' is an express representation that this product contains no banned substances under the MLB Joint-Program," *id.*, although plaintiffs contend that "[i]t [is] . . . well known that whey protein and other proteins derived from meat or milk contain IGF-1, *id.* ¶27.

Plaintiffs' Complaint does not allege that *MLBPA* itself made any representations about Klean Athlete or any of its products, express or otherwise, or that any of Klean Athlete's products *actually* contained IGF-1, or that, if they did, that MLBA knew that those products contained IGF-1 (or had any ability to test those products itself, independently, for the presence of any banned

substances). The portion of the Complaint pertaining to Klean Athlete refers only to representations purportedly made *by Klean Athlete* and, perhaps by implication, NSF, neither of which are named as defendants in the lawsuit.

Plaintiffs nonetheless allege in paragraphs 45-66 of the Complaint, *without making any specific references to MLBPA* (which they lump together with each of the other defendants in those paragraphs) that MLBPA, presumably based on its former licensing agreement with Klean Athlete, somehow violated: (1) the false advertising prong of the Lanham Act, 15 U.S.C. §1125(a)(1)(B); (2) California's False Advertising Law, Bus. and Prof. Code §17500; (3) and California's Unfair Competition Law, Bus. & Prof. Code §17200.

None of those three claims against MLBPA has the slightest merit. There is no allegation that MLBPA engaged in any advertising, let alone any false or misleading advertising. There is also no allegation that MLBPA engaged in other form of speech, commercial or otherwise, that could possibly serve as a basis for liability. Even accepting that MLBPA once had a contractual agreement with a company that sold a product that an independent testing laboratory had certified as being in compliance with that independent certifying entity's own "certified for sport" standards, that agreement ended several years ago and would not be actionable in any event.

### a.   Lanham Act

Plaintiffs allege that MLBPA's former licensing agreement with Klean Athlete violates the Lanham Act because Klean Athlete sold a nutritional supplement that purportedly contained whey protein isolates that, according to plaintiffs, contain naturally occurring IGF-1, making Klean Athlete's representation that the NSF has certified Klean Athlete products as "certified safe for sport" a misleading representation (because IGF-1 is a banned substance under the Joint Drug Program).

MLBPA has no reason to believe that any Klean Athlete supplement *actually* contained IGF-1, and it doubts whether plaintiffs ever actually tested that product for IGF-1 themselves (either during the short period MLBPA had a licensing agreement with Klean Athlete or at any other time). But regardless of what the results of such testing might be, the fact that Klean Athlete attached a label to its product stating that it had been "certified safe for sport" by NSF (or, more

accurately, "certified for sport," which is how NSF describes that particular certification, *see* https://www.nsf.org/services/by-industry/nutritional-products/certified-for-sport), neither that representation *by Klean Athlete* nor MLBPA's licensing agreement with Klean Athlete could possibly give rise to a Lanham Act violation.

Section 43(a)(1)(B) of the Lanham Act prohibits the misrepresentation of one's own or another's goods or services in "commercial advertising or promotion." 15 U.S.C. §1125(a)(1)(B). The Ninth Circuit has set forth the elements that plaintiffs must establish to state a valid claim under this section:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1535-36 (S.D.N.Y. 1994)).[2]

The Complaint fails to satisfy *any* of these elements. Most obviously, the Complaint does not identify any "commercial speech" by MLBPA. "The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'" *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Although the Complaint alleges a partnership between MLBPA and Klean Athlete and several representations *by Klean Athlete*, it does not cite any commercial speech, advertising, or representations by MLBPA itself, let alone any false or

---

[2] Some district courts have suggested that the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), requires modification of the second element of the Ninth Circuit's standard, to require only that the defendant's commercial speech be made for the purpose of influencing consumers to buy particular goods or services. *See Ariix, LLC v. NutriSearch Corp.*, No. 17CV320-LAB (BGS), 2018 WL 1456928, at *4 n.3 (S.D. Cal. Mar. 23, 2018); *Alfasigma USA, Inc. v. First Databank, Inc.*, 398 F.Supp.3d 578, 590 n.4 (N.D. Cal. 2019).

misleading speech.[3] The mere fact that MLBPA had an agreement with Klean Athlete that allowed Klean Athlete to license MLBPA's trademark for certain products does not make MLBPA responsible for *Klean Athlete's* representations about its products. Besides, the only representation alleged in the Complaint that Klean Athlete made about its product is true, because at the time of Klean Athlete's April 2016 press release, some of its products *were* "certified for sports" by NSF, an independent certification organization. Thus, there is no Lanham Act claim here. And even if there were, it would be barred by the statute of limitations, because the Klean Athlete press release that is the focus of plaintiffs' allegations was issued more than three years and nine months before this lawsuit was filed.

California law provides a three-year statute of limitations for fraud, Cal. Civ. Proc. Code §338(d), which courts apply for false advertising claims under the Lanham Act. "For Lanham Act false-advertising claims, this three-year period 'runs from the time the plaintiff knew or should have known about his §43(a) cause of action.'" *Baby Trend, Inc. v. Playtex Prods., LLC*, No. 5:13-CV-647-ODW(RZx), 2013 WL 4039451, at *3 (C.D. Cal. Aug. 7, 2013) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)). Plaintiffs have put forth no facts alleging fraudulent concealment or "facts regarding their purported lack of knowledge, their ignorance of [MLBPA's] alleged fraud, why they lacked the means to discover the alleged fraud, whether they exercised reasonable diligence in investigating the alleged fraud, or when the

---

[3] The press release that plaintiffs cite in ¶38 and attach as Exhibit 4 to their Complaint – which is a 2016 press release that Klean Athlete, not MLBPA, issued – is not to the contrary and would not be admissible against MLBPA in any event.  That press release simply states:

> Klean Athlete is an official partner of the Major League Baseball Players Association and works with many of the league's strength and conditioning coaches to support clean training for the ball players. Members of the Klean Athlete team were recently on-site at spring training and provided each Major League Baseball player with a bottle of Klean Multivitamin™ to kick-start the training season. As part of this ongoing commitment, each major league baseball club also received a shipment of Klean BCAA + PEAK ATP® product to help players start the season on the right foot.

Compl., Ex. 4. There is no allegation in the Complaint that Klean Multivitamin contained IGF-1 or that MLBPA had anything to do with the shipping of BCAA + PEAK ATP to any "major league baseball club" or any control over what those clubs did, or did not do, with any shipment it may have received.

alleged fraud was actually discovered." *McCready v. Am. Honda Motor Co*., No. C 05-5247 SBA, 2006 WL 1708303, at *4 (N.D. Cal. June 19, 2006); *see also Baby Trend, Inc*., 2013 WL 4039451, at *5. In the absence of any such facts, plaintiffs were required to file this lawsuit no later than April 2019, three years after the date of the Klean Athlete Press release cited in the Complaint. Yet they did not file the Complaint until January 2020, far too late to state a Lanham Act claim *even if* the facts supported such a claim.

### b.   False Advertising Law

Plaintiffs' second claim, under California's False Advertising Law, is substantively without merit for the same reason – because it fails to identify any false advertising by MLBPA (or, indeed, any advertising at all).

The FAL prohibits any advertising that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Bus. & Prof. Code §17500. In addition, a "claim under the FAL must demonstrate that 'the plaintiff suffered an injury due to his or her own actual and reasonable reliance on the purported misleading statements.'" *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F.Supp.3d 623, 646 (N.D. Cal. 2019) (quoting *Rosado v. eBay, Inc*., 53 F.Supp.3d 1256, 1266 (N.D. Cal. 2014)). Plaintiffs do not allege that they relied on any purported misleading statements, much less any misleading statement by MLBPA. Plaintiffs' FAL claim is therefore baseless as well, and it, too, is time-barred because an FAL claim, like a Lanham Act claim, has a three-year limitations period. *Beasley v. Conagra Brands, Inc*., 374 F.Supp 3d 869, 882 (N.D. Cal. 2019) (citing Cal. Code Civ. Proc. §338(a)).

### c.   Unfair Competition Law

Plaintiffs' final claim is that MLBPA engaged in unlawful, unfair, or fraudulent conduct within the meaning of the Unfair Competition Law. That claim must necessarily fail as well.

First, plaintiffs' UCL claim is entirely derivative of their Lanham Act and FAL claims. *See* Compl. ¶64. As a result, it necessarily fails on the merits for the same reason those underlying claims fail. *Rubin v. Wal-Mart Stores, Inc*., 599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009).

Second, not only do plaintiffs fail to allege any false advertising by MLBPA, but they also fail to allege – let alone plausibly – any actual reliance on the misleading advertisements. *See*

*Clorox Co.*, 398 F.Supp.3d at 646.

Finally, because a UCL action is equitable in nature, damages are not available, and UCL plaintiffs are therefore limited to injunctive relief and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003); Cal. Bus. & Prof. Code §17203. Where a plaintiff alleges that a defendant caused it to lose business opportunities with a third party, the claim against that defendant sounds in damages, not restitution. *See Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011). But there can be no restitution here because MLBPA does not have and therefore cannot return any of plaintiffs' property. *Korea Supply Co.*, 29 Cal.4th at 1149 (holding that relief is not restitutionary where a "plaintiff does not have an ownership interest in the money it seeks to recover from defendants" because it is neither "seeking the return of money or property that was once in its possession" nor money in which it had a "vested interest"); *Chose v. Accor Hotels & Resorts (Maryland) LLC*, No. 19-CV-06174-HSG, 2020 WL 759365, at *6 (N.D. Cal. Feb. 14, 2020) (granting motion to dismiss claim for UCL restitution because "Plaintiff does not allege that she . . . paid Defendant any money or otherwise has an ownership interest in money from Defendant such that she is entitled to restitution."); *MAI Sys. Corp. v. UIPS*, 856 F.Supp. 538, 542 (N.D. Cal. 1994) ("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims"). And because MLBPA's licensing agreement with Klean Athlete ended on December 31, 2017, there is no basis for injunctive relief either.

**B.      Plaintiffs' Counsel Failed to Undertake the Requisite "Reasonable and Competent Inquiry."**

None of the above analysis will come as any surprise to plaintiffs, because MLBPA repeatedly warned Nix and his attorneys that they have no possible claim against MLBPA and repeatedly explained *why*, factually and legally, they have no such claim. Yet despite Nix's and his attorneys' obligation under Rule 11 to conduct a "reasonable and competent inquiry," they stubbornly ignored the facts and proceeded with their claims against MLBPA, apparently in a fit of retaliatory pique, despite having no good faith basis for believing that MLBPA engaged in any false or misleading advertising and despite having been informed that MLBPA did not

independently perform any substance testing upon the Klean Athlete supplement, had no basis for second-guessing any NSF certifications, and had no contractual relationship with Klean Athlete after December 31, 2017.

Because plaintiffs and their counsel failed to conduct the requisite good faith investigation, but instead ploughed ahead with their retaliatory lawsuit against MLBPA by filing claims that are wholly without merit, this Court should strike all claims against MLBPA in the Complaint and impose sanctions against plaintiffs and their attorneys. *See* Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments (discussing the "variety of possible sanctions to impose for violations" of Rule 11, including "striking the offending paper"); *Christian*, 286 F.3d at 1129 (filing suit in the absence of adequate factual investigation falls short of the Rule 11 standard); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1154 (9th Cir. 2002) (finding no abuse of discretion in decision to award Rule 11 sanctions where plaintiff's counsel knew that the complaint's factual contentions lacked evidentiary support); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (affirming imposition of Rule 11 sanctions where the claims were barred and the complaint "offer[ed] no reasonable basis for which an action could proceed").

### a. The Court Should Impose Monetary Sanctions under Rule 11 for the Filing of a Frivolous Complaint.

Rule 11 "authorizes the imposition of monetary and/or nonmonetary sanctions . . . . A monetary sanction may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those 'fees and other expenses incurred as a direct result of the violation.'" *Truesdell v. S. Cal. Permanente Med. Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (internal citations omitted). The principal purpose of Rule 11 "is specific and general deterrence." *Refac Int'l, Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287 (C.D. Cal. 1991) (internal citations omitted). Rule 11 sanctions should be sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *Christian*, 286 F.3d at 1127 ("One of the fundamental purposes of Rule 11 is to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." (internal quotation marks and citation omitted)).

Plaintiffs and their counsel have held the threat of this (or some other) meritless lawsuit over MLBPA's head for several years in order to gain improper leverage in their litigation battles against MLB. MLBPA repeatedly made clear that it would not, and could not, sign a false affidavit to support Nix's position in those other IGF-1-related lawsuits. MLBPA also repeatedly made clear that Nix's statements about the Joint Drug Program were wrong and that its speculative factual assertions about MLBPA's role in that program and the nature of MLBPA's contractual relationships were also wrong – and it explained precisely why they were wrong. Yet plaintiffs filed this lawsuit against MLBPA anyway. A substantial sanctions award is required to deter the repetition of such wrongful conduct by Nix and his attorneys.

A summary of the interactions between the parties and their attorneys demonstrates why plaintiffs had no good faith basis for suing MLBPA, and highlights Nix's callous disregard for the truth and his – and his attorneys' – multi-year effort to use the threat of baseless litigation as a tool for obtaining false testimony (which is not only sanctionable under the authorities cited above, but constitutes attempted subornation of perjury and extortion).

Nix, a former high school baseball player who never played a single inning in the big leagues (and thus never became a member of MLBPA or the bargaining unit it represents) first reached out to MLBPA in the summer of 2016, offering to sell MLBPA information about purported wrongdoing by MLB. Rubin Decl. ¶4. MLBPA made clear that it was not going to pay for anything. *Id.* Nix persisted, renewing his offer at least twice more, without success. *Id.* When it became clear that MLBPA was not about to pay for any such information, Nix in November 2016 offered to provide that information to MLBPA in exchange for MLBPA giving him a copy of a 2011 internal MLBPA memo that referred to deer antler spray for use in a lawsuit Nix was about to file against MLB in New York state court, *Nix v. Office of Comm'r of Baseball*, *supra*, No. 17-CV-1241 (RJS). *Id.* ¶5. MLBPA again refused, first in response to Nix himself and then in response to a request from Nix's first lawyer, Vincent White. *Id.*

Five months later, in late March 2017, Nix again reached out to MLBPA, stating that an unnamed plaintiff was about to file an "explosive" RICO lawsuit against MLB and MLBPA, and that the unnamed plaintiff would not name MLBPA *if* MLBPA would gave Nix a copy of the 2011

internal memo he had previously requested as a "gesture of good faith." *Id.* ¶6. MLBPA again

declined to cooperate, and no lawsuit was filed.

In July 2018, Nix's second attorney, David Pollack, wrote to MLBPA "in connection with a

defamation action [Nix] has filed against USA Today, ESPN, and the Associated Press in federal

court in Miami arising out of a statement published by them concerning IGF-1 and deer antler"

(Lawsuit #4, which was later dismissed by the Southern District of Florida and the dismissal

affirmed by the Eleventh Circuit). *Id.* ¶7 & Exh. A. Pollack asked MLBPA to "issue a declaration

specifically stating that," *inter alia*:

> 1.  Deer antler is not considered a banned substance in MLB or MILB [minor
>     league baseball];
> 2.  Natural IGF-1 is not considered a banned substance in MLB or MILB.

*Id.* & Exh. A. MLBPA responded that it had repeatedly made clear to Nix that it would not provide

any sworn statements or any internal union documents to him. *Id.*

Nonetheless, on August 31, 2018, Pollack again wrote to MLBPA, noting that the Southern

District of Florida had just dismissed Nix's defamation claim, and threatening that "MLBPA's

refusal to provide Mr. Nix with such an affidavit [stating that "MLBPA does not consider natural

IGF-1 to be a banned substance and is not banned under the CBA between MLB and the MLBPA"

– both of which statements would be untrue] breached its obligations to Mr. Nix as a former player

under the CBA." *Id.* ¶8 & Exh. B. Pollack closed with the following warning:

> Before commencing legal action against the MLBPA, Mr. Nix is giving the
> organization one final opportunity to provide him with an affidavit attesting to
> the fact that the MLBPA does not consider natural IGF-1 or products containing
> natural IGF-1, such as deer antler, to be a banned substance under the CBA
> between MLB and MLBPA. Please let me know [in five days] whether the
> MLBPA is willing to supply Mr. Nix with such an affidavit. If I do not hear from
> you by that time, Mr. Nix will proceed accordingly.

*Id.* [4]

---

[4] The email from Plaintiffs' counsel stated in a header that it was "FOR SETTLEMENT
PURPOSES ONLY," a designation appended with the sole apparent purpose of shielding it from a
court in the event that the pressure tactics failed. A demand made under threat of litigation is not a
settlement communication. *See Winchester Packaging, Inc. v. Mobil Chem. Co.*, 14 F.3d 316, 319
(7th Cir. 1994) ("[A] bill that itemizes what the sender thinks the recipient owes him and demands
— even under threat of legal action — payment is not an offer in settlement or a document in
settlement negotiations and hence is not excludable by force of Rule 408."). In any case, Federal
Rule of Evidence 408 is "one of limited applicability" that "is designed to ensure that parties may

MLBPA promptly rejected the extortionate demand, emphasizing that it owed no "duty" to Nix (who was not a current or "former player under the CBA") and that it had no intention of providing a false affidavit to him to use in his recently dismissed lawsuit:

> The MLBPA does not have practice of providing affidavits to private litigants seeking the MLBPA's position on the meaning of a provision in the Basic Agreement between MLBPA and MLB. Nor would any such an affidavit make any difference to Mr. Nix's case, which was dismissed at the pleading stage, without any inquiry into the truth of the matters he alleged. While you state that Nix will "act accordingly" if MLBPA does not provide the requested affidavit, please be advised that MLBPA owes no duty to Nix as a non-member, and that any effort by Nix to bring any action against MLBPA or its employees would be both frivolous or sanctionable.

*Id.* ¶9 & Exh. C.

Pollack responded on September 10, 2018, reiterating his belief that MLBPA owed "Nix and the other players it represents a duty to make clear that natural IGF-1 and products such as deer antler which contain natural IGF-1 are not – and never have been – banned substances under the CBA," and again threatened legal action if MLBPA did not provide an "affidavit stating that products containing deer antler and natural IGF-1 are not, and have never been banned by the CBA between MLB and the MLBPA." This time, Pollack's threat was even more specific than before: "If the MLBPA refuses to provide such an affidavit, . . . Mr. Nix will have no choice but to pursue an action against the MLBPA for breach of contract, breach of the covenant of good faith and fair dealing, and Florida's Unfair and Deceptive Trade Practices Act . . . ." *Id.* ¶10 & Exh. D.

MLBPA's response was equally clear. On September 11, 2018, MLBPA responded with a detailed letter explaining why Nix, who "never played in a regular-season game for any professional team, in the majors or the minors, after he was drafted in the 29th round of the 1998 draft," was never a member of the bargaining unit and is not owed any duty by MLBPA. *Id.* ¶11 & Exh. E. In that same letter, MLBPA reiterated that it would not and could not provide the requested false affidavit because IGF-1 *is* "expressly listed" as "a banned Performance Enhancing Substance"

---

make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail. When statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161–62 (9th Cir. 2007) (holding that a "threat" is "perfectly acceptable" to establish jurisdictional requirements for action for declaratory relief). Rule 408 does not bar introduction of that communication.

under the Joint Drug Program and because that listing "does not distinguish between natural and other sources of IGF-1." *Id.* & Exh. E at 2. MLBPA reiterated that any continued effort by Nix or his attorneys to pursue this matter would be met with a demand for sanctions and that MLBPA would "point to this letter and to our prior communications to demonstrate that you and Mr. Nix were put on notice that your threatened claims are frivolous and asserted in bad faith." *Id.*

That was the last time MLBPA heard from Nix's attorney David Pollack. But it was not the last time MLBPA heard from Neiman Nix.

On February 19, 2019, Nix personally sent an email to MLBPA, again demanding that MLBPA sign a false "declaration that natural deer antler (and or elk, the largest species in the deer family) and the natural occurring IGF-1 found in deer/elk is not banned in Baseball." *Id.* ¶12 & Exh. F. Nix stated that he was making this demand pursuant to the New York Freedom of Information Law ("FOIL"). He no longer asserted that MLBPA owed any duty to him as a supposed former member of the union. *Id.*

MLBPA again refused to provide such a declaration, reiterating that Nix's factual assertions were "baseless," pointing out that the FOIL has no application to private parties like MLBPA, and warning once again that "[i]f you continue to persist in your threats to pursue legal action against the MLBPA, we will point to this letter and to our many prior communications to you to demonstrate that you have long been on notice that any such legal action would be frivolous, asserted in bad faith, and grounds for monetary sanctions. *Id.* ¶13 & Exh. G.

Five months passed without further word from Nix. But after Nix and his second set of attorneys lost their battle against the media companies in the Eleventh Circuit, Nix tried to go back to the MLBPA well once again, this time with a new lawyer, Lance Reich (his third, current lawyer).

On July 10, 2019, Reich sent his first demand letter to MLBPA on behalf of Nix and DNA, raising for the first time MLBPA's prior licensing agreement with Klean Athlete. *Id.* ¶15 & Exh. H. Reich's letter *acknowledged* that IGF-1 was a banned substance under the Joint Drug Program – despite two years of prior demands by Nix and his former counsel insisting that MLBPA should sign an affidavit stating exactly the opposite. *Id.* Reich also announced that Nix now had a new

theory – that *MLB* had wrongfully banned Nix's deer antler spray product while endorsing competing products that also contained prohibited substances, and that MLBPA was somehow complicit in MLB's wrongdoing. *Id.* & Exh. H. Threatening that "MLBPA would be a defendant in any action here" if it failed to provide the evidence he demanded, Reich insisted in his email that MLBPA must justify its past licensing of Klean Athlete's products and must state "MLBPA's factual position with respect to the presence of IGF-1 in the accused products, especially the whey protein isolate of Klean Athlete." *Id.* & Exh. H.

MLBPA declined to respond, warning Reich against permitting Nix's "continued harassment, baseless accusations, and unwarranted demands" to culminate in litigation against MLBPA. *Id.* ¶16 & Exh. I. Reich then escalated his threats, asking the union the next day to identify which attorney would "represent MLBPA before the International Trade Commission should an action be filed there, and which other specific MLB entities or teams [counsel] would represent." *Id.* ¶17 & Exh. J. MLBPA refused to be baited, responding that Nix's new threatened lawsuit was baseless. *Id.* & Exh. J. Reich escalated once again, warning MLBPA on July 29, 2019 that he was "preparing its complaint in this matter at the ITC" and that "if DNA is successful, the relevant banned products, such as those of Klean Athlete, will be banned from importation," *id.* ¶18 & Exh. K (a threat of injunctive relief that revealed plaintiffs' mistaken belief that MLBPA still had some sort of ongoing business relationship with Klean Athlete, which it did not).

Once again, plaintiffs were wrongfully using the threat of baseless litigation as leverage to obtain MLBPA's support for Nix's campaign against MLB. In that July 29 email, Reich suggested that MLBPA's and MLB's interests may not be "completely aligned" with respect to the false advertising claim he was threatening, because MLBPA might not have any responsibility for the allegedly "selective enforcement of the drug policy of the CBA" that was at the core of Nix's new legal theory. *Id.* Reich's email then stated that because "it is not clear that the selective enforcement is done at the direction of MLBPA" – or put otherwise, because plaintiffs had no evidence that MLBPA did anything wrong or had any ability to test nutritional supplemental or dictate the result of NSF's independent testing – perhaps MLBPA would be willing to "elaborate" on which entity was responsible for that selective enforcement, *i.e.,* cooperate in pinning the blame

on MLB, which would enable MLBPA to "avoid the need [to respond to] specific discovery." *Id.*

MLBPA declined the invitation, but asked Reich for an advance copy of any complaint Nix proposed to file. On September 3, 2019, Reich sent such a draft to MLBPA (which was similar to the later-filed complaint) and Reich again offered to discuss the issues, dangling the benefits of cooperation by suggesting that plaintiffs were still "not sure that MLB and MLBPA's interests are fully aligned in this potential action." *Id.* ¶19 & Exh. L. On September 6, 2019, MLBPA responded by specifically refuting the factual allegations underlying the draft complaint and pointing out the lack of any "factual or legal basis for your allegation that MLBPA made false or misleading factual statements in connection with any commercial advertising or promotion or that MLBPA engaged in any wrongful conduct that directly or proximately caused any legally cognizable damage to your clients." *Id.* ¶20 & Exh. M. MLBPA also pointed out that NSF is an independent testing company and that that NSF had certified the Klean Athlete product as being free of all banned substances – a fact that MLBPA was entitled to rely upon in agreeing to its license agreement with Klean Athlete. As MLBPA wrote:

> If you have any actual evidence that MLBPA ever sponsored any advertising or commercial promotion that encouraged use of a product known to contain a prohibited substance by representing that major legal baseball players used that product with the union's encouragement, please share that evidence with us. We are confident that no such evidence exists, either with respect to the Klean Athlete product you identify (as the *sole* basis for including MLBPA as a defendant) or any other product. We further note that Klean Athlete was independently certified by NSF International as being free of all banned substances – a material fact that for some reason you chose not to mention in your draft complaint.

*Id.* & Exh. M. Then, MLBPA again warned that it would seek sanctions against Reich and his clients if they filed these claims against MLBPA, because their "generalized and defamatory allegations of wrongdoing by MLBPA are knowingly and recklessly false." *Id.* & Exh. M.

Instead of backing down – or providing any factual basis for his and his clients' insupportable "generalized and defamatory allegations" of wrongdoing by MLBPA – Reich wrote back on September 20, 2019 to offer MLBPA another deal to avoid being named as a defendant in the new lawsuit by providing false evidence that plaintiffs could use in their planned lawsuit against MLB.

Reich's email offered to dismiss the claims against MLBPA if the union would "[p]ublicly retract MLBPA's . . . statement [that] 'the Joint Drug Prevent and Treatment Program expressly lists IGF-1 as a banned Performance Enhancing Substance and does not distinguish between nature and other sources of IGF-1 in that listing' . . . and publicly announce that natural IGF-1 as it occurs in the form of animal products are not considered banned by MLBPA" – both of which would be lies. *Id.* ¶21 & Exh. N. Reich's email also insisted that as part of any dismissal deal, MLBPA would have to provide testimony against MLB, upon request, that natural IGF-1 is not a banned substance (which would be a lie) and that the NSF's approved list contains natural IGF-1 products such as numerous third-party protein supplements (which MLBPA doubts but has no independent basis of verifying or disputing).

MLBPA refused to lie or to swear to facts that it did not know to be true. Instead, shortly after plaintiffs filed their complaint, MLBA offered instead to simply confirm what it did know, which is that it has no current agreement with Klean Athlete and that its only agreement with Klean Athlete expired no later than December 31, 2017 and was not renewed. *Id.* ¶22. Reich responded that plaintiffs might be willing to drop their complaint against MLBPA based on those facts, which MLBPA promptly offered to confirm in a sworn declaration in exchange for plaintiffs dismissing all allegations against it with prejudice. *Id.* MLBPA followed up with Reich on January 29, 30, 31 and February 3 and 6 to obtain his clients' response. *Id.* ¶22 & Exh. O. After Reich initially responded that his clients were considering what precise language would be needed, and subsequently responded that Reich himself was drafting that language, *id.* ¶22 & Exh. O, Reich never presented that language. Instead, in late February 2019, Reich announced a whole new whole-cloth theory – that MLBA had *itself* conducted the testing of Klean Athlete's nutritional supplement and had directed NSF to certify that product as "certified for sport" – a ridiculous theory that was as logically implausible as it was factually insupportable. *Id.* ¶23.

MLBPA told Reich that his and his clients' new theory was utterly fanciful, and asked if plaintiffs would dismiss all claims against MLBPA with prejudice if MLBPA would confirm in writing that MLBPA did not itself test the Klean Athlete product for banned substances but instead relied on the NSF certification. *Id.* Reich said that he would check with his clients. But instead of

accepting MLBPA's offer to confirm the *truth*, Reich on April 10, 2020 announced that his clients would not dismiss the lawsuit because now, Nix had supposedly obtained videotaped evidence that MLBPA "had an independent program administrator that oversees the testing done under the Joint Drug Program" which, according to Reich's subsequent email, would prove that "MLBPA would have known what the accused nutritional supplement product had in it when [MLBPA] endorsed the products because of the NSF labeling." *Id.* at ¶¶24-25 & Exh. P. MLBPA asked Reich to produce the video and stated that it could not possibly establish MLBPA's control over the NLF's certification decisions because NLF acts with complete independence. *Id.* ¶25.

Five days later, Reich provided the video. It turned out to be nothing more than grainy, 20-second video clip that purportedly shows MLBPA Assistant General Counsel Bob Lenaghan making a brief reference, at some indeterminable time and location to an unknown audience, to the fact that the collectively bargained Joint Drug Program is overseen by an "Independent Program Administrator," which of course it is. *Id.* & Exh. P.

That video did not support plaintiffs' stated position at all. Instead, as MLBPA's counsel explained in an email to Reich on April 17, 2020, the collectively bargained Joint Drug Program requires the position of Independent Program Administrator to be filled by an individual who is truly independent and who has no "'affiliation with . . . the Players Association." *Id.* ¶26 & Exh. Q. MLBPA also explained that plaintiffs' apparent belief that MLB conducts its own independent testing and that it has some means of dictating the outcome of NSF certifications is preposterous: "MLBPA does not involve itself or meddle in NSF's certification process. Indeed, as NSF's website makes clear, NSF is 'an *independent* and accredited non-governmental organization whose mission is to protect and improve global human health . . . by leading the development of public health and safety standards and by testing and certifying products and systems to those standards.' *See* https://www.nsfsport.com/about-us/ (emphasis added)." *Id.*

MLBPA's April 17, 2020 email closed by asking plaintiffs to identify *any* actual evidence, if they had any, to support the notion that MLBPA engaged in any actionable wrongful conduct. "Otherwise, as we have previously advised you and Mr. Nix, we will seek sanctions, against clients *and* counsel, which shall include a request to be reimbursed for all attorneys' fees and costs

incurred with respect to this matter." *Id.*  Plaintiffs did not respond to that email.  Instead, on May 4, 2020, Nix's counsel wrote to MLBPA, acknowledging MLBPA's plan to seek Rule 11 sanctions, and stating that plaintiffs would defend against that sanctions motion by asserting that "having a different opinion on what specific facts show is not sanctionable conduct." Rubin Decl. ¶28 & Exh. R.

For the reasons set forth in the preceding pages, MLBPA's sanctions motion does not rest upon the parties having merely a "different opinion" about "what specific facts show." Instead, this motion rests upon: (1) a four-year campaign of threats and harassment by Nix and his attorneys, who used the threat of baseless litigation in a failed attempt to pressure MLBPA into making false statements to support Nix's lawsuits against MLB and others; (2) the complete absence of any factual support in plaintiffs' Complaint for plaintiffs' false allegations of wrongdoing against MLBPA; and (3) the uncontroverted facts that *refute* plaintiffs' allegations against MLBPA. These include the *documented* facts establishing that: (a) MLBPA's only alleged "false advertisement" was a licensing agreement that allowed Klean Athlete to use MLBPA's trademark before December 31, 2017; (b) Klean Athlete's nutritional supplement accurately stated before December 31, 2017 that the supplement was "Certified for Sport" by NSF, which is an independent testing agency (as confirmed by the very web pages that plaintiffs now cite); (c) MLBPA does not conduct independent product testing and lacks the facilities for conducting such testing; and (d) MLBPA has no knowledge or belief that any Klean Athlete product contained IGF-1 before December 31, 2017).

Reich's May 4 email also cited a portion of the NSF website setting forth Frequently Asked Questions about NSF's "Certified for Sport" program to support the assertion that "NSF does not test for every substance on the Joint Program list." *Id.* Even aside from the obvious misreading of the NSF web page (which simply refers to the fact that new products and methods of ingestion are regularly added to NSF's testing regimen), the fact remains that plaintiffs have *no* basis whatsoever for what seems to be their newly implied assertion that perhaps NSF does not test any products for IGF-1, which of course it does and has done for many years, as growth hormone has long been a banned substance under the Joint Drug Program and most other lists of banned substances in

sports. Equally important, plaintiffs have *no* basis for any of their other implied assertions either – which are critical to their claims against MLBPA – that MLBPA somehow *knew* that NSF did not test for IGF-1, that MLBPA somehow *knew* that Klean Athlete's nutritional supplement contained IGF-1, and that MLBPA somehow *falsely advertised* that the Klean Athlete nutritional supplement did not contain IGF-1.

This is not a dispute based on "different opinions" about specific facts. The facts are undisputed, and they completely rebut plaintiffs' knowingly false allegations against MLBPA.

### b. The Court Should Impose Further Monetary Sanctions Based on Its Inherent Authority to Punish the Bad-Faith Course of Conduct Preceding the Filing of Plaintiffs' Frivolous Complaint.

The Court has inherent authority to punish plaintiffs' years-long course of bad-faith conduct and lack of a good faith legal or factual basis for suing MLBPA. While Rule 11 sanctions are limited to "paper[s]" signed in violation of the rule, *Christian*, 286 F.3d at 1131, the Court also has inherent authority to impose sanctions for counsel's "bad faith, which includes a broad range of willful improper conduct" – in this case, nearly four years of wrongful threats that Nix would punish MLBPA by filing a baseless lawsuit against it unless MLBPA would lie on his and his company's behalf to further their *other* baseless lawsuits. *Fink*, 239 F.3d at 992. Under the Court's inherent authority, even "a truthful statement or a non-frivolous argument or objection" is sanctionable "when a party acts *for an improper purpose*." *Id*. (emphasis in original); *see also In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir. 1986) (sanctions for "bad faith" conduct justified where party made non-frivolous objections for purpose of exacting concessions in separate case). A court's imposition of sanctions based on its inherent authority is proper so long as a court makes a finding of bad faith. *Christian*, 286 F.3d at 1131 (citing *Primus*, 115 F.3d at 648).

The Court should award MLBPA its reasonable attorneys' fees in preparing this motion and the cost of preparing a motion to dismiss the offending Complaint. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *Margolis v. Ryan*, 140 F.3d 850, 855 (9th Cir. 1998) ("district court did not err by including in the amount [of sanctions under Rule 11] the costs and fees borne by defendant-appellee in bringing the motion for sanctions"); *Refac*, 141 F.R.D. at

287-88 (imposing Rule 11 sanctions based on "all of the expenses[,] including attorney's fees, incurred by each and every defendant herein (including cross- or third-party defendants) from the time of the filing of the complaint through claims for sanctions hereunder including attorney's fees for moving for or joining in the Rule 11 motions").

The sanctions imposed on plaintiffs and their counsel should also include sanctions sufficient to compensate MLBPA for having to respond to plaintiffs' never-ending cascade of threatening letters, emails, and telephone calls. For four years, plaintiffs sought to obtain a factually false declaration from MLBPA that they could use in their litigation against MLB and others – and they refused to take "no" for answer. Although plaintiffs' legal and factual theories kept changing, the patently frivolous nature of those theories (and accompanying threats) did not.

Since at least August 2018, each of plaintiffs' communications has threatened legal action and has required attention from MLBPA's counsel. A substantial award of sanctions is required to stop this wrongful behavior and deter its recurrence. *See Fink*, 239 F.3d at 992 ("where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, [even] the assertion of a colorable claim will not bar the assessment of attorney's fees" (internal citations omitted)); *Primus*, 115 F.3d at 649 ("[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent" (internal quotation marks and citation omitted)).

At the Court's request, MLBPA will submit documentation of the fees and expenses it has incurred thus far in responding to plaintiffs' frivolous and bad faith threats and wrongful filings.

## CONCLUSION

For the foregoing reasons, the motion should be granted, plaintiffs' claims against MLBPA should be stricken, and monetary sanctions should issue against plaintiffs and their attorneys in an amount to be determined by the Court after reviewing MLBPA's documentation of the attorneys' fees reasonably incurred in responding to plaintiffs' and their attorneys' wrongful conduct.

//

//

//

1

Dated: May 5, 2020                    By:    /s/Michael Rubin

2                                               MICHAEL RUBIN
                                                HUNTER B. THOMSON
                                                Altshuler Berzon LLP

3
                                                JEFFREY D. PERCONTE
4                                               Major League Baseball Players Association

5                                               *Attorneys for Defendant*
                                                *Major League Baseball Players Association*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

**MATTER:** *Nix v. Major League Baseball*, Case No. 3:20-cv-00546-WHA (N.D. Cal.)

     I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to the within action; my business address is 177 Post Street, Suite 300, San Francisco, California 94108.  On May 5, 2020, I served the following document(s):

**DEFENDANT MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT POWERS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DECLARATION OF MICHAEL RUBIN IN SUPPORT OF DEFENDANT MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT POWERS**

**[PROPOSED] ORDER GRANTING DEFENDANT MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION'S MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT POWERS**

on the parties by the method below:

**By e-mail:** Based on agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below:

| | |
|---|---|
| Ronald L. Richman | Lance D. Reich |
| BULLIVANT HOUSER BAILEY PC | HOLLEY DRIGGS |
| 101 Montgomery Street, Suite 2600 | 400 South Fourth Street, Suite 300 |
| San Francisco, CA 94104-4146 | Las Vegas, NV 89101 |
| Telephone: 415.352.2700 | Telephone: 702.791.0308 |
| Facsimile: 415.352.2701 | Facsimile: 702.791.1912 |
| E-mail: ron.richman@bullivant.com | Email: lreich@nevadafirm.com |
| | |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed May 27, 2020, at Berkeley, California.

                        ___/s/ Michael Rubin_____
                             Michael Rubin