**KOBRE & KIM LLP**
MICHAEL NG (SB 237915)
Michael.Ng@kobrekim.com
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

ADRIANA RIVIERE-BADELL Riviere-Badell (*admitted pro hac vice*)
Adriana.Riviere-Badell@kobrekim.com
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

LINDSEY WEISS HARRIS (*pro hac vice to be filed*)
Lindsey.Weiss.Harris@kobrekim.com
800 Third Avenue
New York, New York 10022
Telephone: 212-488-1200
Facsimile: 212-488-1220

*Attorneys for MLB Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIMAN NIX, an individual; and DNA SPORTS PERFORMANCE LAB, INC., a Florida Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MAJOR LEAGUE BASEBALL, et al., <br><br> Defendants. | Case No. 3:20-cv-00546-WHA <br><br> **MLB DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:　　　　　August 6, 2020 <br> Time:　　　　　8:00 am <br> Courtroom:　　Courtroom 12 – 19th Floor <br> Complaint Filed: January 23, 2020 <br> Trial Date:　　None Set <br> Judge:　　　　Hon. William H. Alsup |

**MOTION TO DISMISS**　　　　　　　　　　　**CASE NO. 3:20-cv-00546-WHA**

# **TABLE OF CONTENTS**

**Notice of Motion and Motion** ................................................................................................ 1

**Introduction** .......................................................................................................................... 3

**Factual Background** .............................................................................................................. 4

   I.   Plaintiffs Neiman Nix and DNA Sports Lab ..................................................... 4

   II.   Nix's Frivolous and Harassing Litigations ..................................................... 4

      A.   The First Nix Action – Florida State Court: Nix Seeks Media Attention, then Fails to Prosecute ..................................................................................... 5

      B.   The Second Nix Action – S.D.N.Y.: Plaintiffs Again Attempt to Shake Down MLB, Seek Maximum Publicity, Then Voluntarily Dismiss .......................... 6

      C.   The Third Nix Action – New York State Court: Plaintiffs File Yet Another Complaint Based on the Same Facts, Lose, and Are Sanctioned for Frivolous and Harassing Conduct 7

      D.   The Fourth Nix Action – Florida State Court: Nix Sues MLB's Attorneys and 20 MLB Clubs, then Voluntarily Dismisses ................................................. 8

      E.   The Fifth Nix Action – Florida State Court: Plaintiffs File Yet Another Complaint on the Same Facts, then Serve Harassing Discovery .......................... 9

      F.   The News Outlet Action – Florida Federal Court: Plaintiffs Sue the News Outlets for Defamation and Lose .............................................................. 10

      G.   The Current Action: Plaintiffs Try Again to Shake Down MLB, then File the Baseless Complaint for the Purpose of Harassment .......................................... 11

   III.   Nix's Pattern of Extra-Judicial Harassment and Contact with Represented Parties ............... 13

**Argument** ............................................................................................................................ 14

   I.   This Court May Sanction the Filing of a Frivolous Complaint Under Rule 11 ....................... 14

      A.   Plaintiffs' Counsel Failed to Undertake the Requisite "Reasonable and Competent Inquiry" ....................................................................................... 15

      B.   Plaintiffs' Claims are Baseless ............................................................... 16

      C.   Severe Sanctions Are Necessary to Stop Nix's Frivolous and Harassing Conduct ............. 22

   II.   This Court May Sanction the Plaintiffs for their Bad Faith Conduct Under Its Inherent Authority ............................................................................................................... 23

**Conclusion** .......................................................................................................................... 24

**MOTION FOR SANCTIONS**           **CASE NO. 3:20-cv-00546-WHA**

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S 662 (2009) ......................................................................... 19

*Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997).......................................................... 15

*Caruso v. Washington State Bar Association*,
    No. C17-00003 (RSM), 2017 WL 2256782 (W.D. Wa. May 23, 2017) ................... 17

*Cel-Tech Commmc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)............................. 20

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ...................................... 15, 16, 23

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725 (9th Cir. 1999) ............... 18

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................................................ 14

*DirectTV, LLC v. E&E Enters. Global, Inc.*,
    No. 2:17-06110-DDP-PLA (DDP), 2018 WL 707964 (C.D. Cal. Feb. 5, 2018)..................... 20

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ...................................................................... 18

*Ferguson v. Waid*, No. C17-1685 (RSM), 2018 WL 1306468 (W.D. Wa. 2018)........................ 17

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ............................................................... 23

*Gordon & Breach Science Publishers v. American Inst. of Physics*,
    859 F. Supp. 1521 (S.D.N.Y. 1994)........................................................................... 20

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) ......................................................... 17

*In re iPhone Application Litig.*,
No. 11–MD–02250 (LHK), 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011 ............................ 21

*In re Magers*, No. C–01–4253 (MJH), 2003 WL 103400 (N.D. Cal. Jan. 9, 2003)..................... 23

*In re Outlaw Laboratory, LP Litig.*, 424 F. Supp. 3d 973 (S.D. Cal. 2019)................................ 18

*In re WellPoint, Inc. Out-of Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011).................................................................... 18

*King v. Fleming*, No. 16-2108-JAR-GLR, 2017 WL 386836 (D. Kan. Jan. 27, 2017)............... 22

*Knipe v. United States*, 151 F.R.D. 24 (N.D.N.Y. 1993) ................................................................. 17

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ......................................... 21

*Lasoff v. Amazon.com, Inc.*, 741 Fed. App'x 400 (9th Cir. 2018) ................................................. 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................. 19

*Luxpro Corp. v. Apple Inc.*,
    No. C 10-03058 (JSW), 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011) .................................. 21

*MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538 (N.D. Cal. 1994) ....................................................... 21

*Margolis v. Ryan*, 140 F.3d 850 (9th Cir. 1998) .......................................................................... 23

*Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F. Supp. 782 (C.D. Cal. 1998) .................... 17

*Nix, et al. v. Major League Baseball, et al.*,
    Case No. 159953/2016 (BJ), 2018 WL 6838756 (N.Y. Sup. Ct. Dec. 31, 2018) ..................... 8

*Nix, et al. v. ESPN, Inc., et al.*,
    1:18-cv-22208 (UU), 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018) ................................. 11, 17

*Nix, et al. v. ESPN, Inc., et al.,* 772 Fed. App'x 807 (11th Cir. May 15, 2019) .............. 10, 11, 17

*Nix, et al. v. Office of Comm'r of Baseball, et al.*,
    No. 17-CV-1241 (RJS), 2017 WL 2889503 (S.D.N.Y. July 6, 2017) ............................... 5, 6, 7,

*Nix, et al. v. Major League Baseball, et al.*,
    Case No. 159953/2016 (BJ), 2018 WL 2739433 (N.Y. Sup. Ct. June 7, 2018) ......... 7, 8, 16, 17

*O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989 (N.D. Cal. 2014) ......................................... 20

*RBC Bearings Inc. v. Caliber Aero, LLC*,
    No. SACV 12-1442 (FMO), 2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) ............................. 23

*Refac Intern., Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991) .......................................... 23

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ................................................................ 16

*Rubin v. Wal-Mart Stores, Inc.*, 599 F. Supp. 2d 1176 (N.D. Cal. 2009) .................................... 20

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) ........................................ 20

*Scott v. Metropolitan Health Corp.*, 234 Fed. App'x 341 (6th Cir. 2007) ............................. 23, 24

**MOTION FOR SANCTIONS**                     **CASE NO. 3:20-cv-00546-WHA**

*Stahl Law Firm v. Judicate West*,
   No. C13-1668 (THE), 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) ..................................... 18

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011)......................................... 19

*Truesdell v. S. Cal. Permanente Med. Group*, 209 F.R.D. 169 (C.D. Cal. 2002) ........................ 22

*Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146 (9th Cir. 2002)................................ 16

*Youngevity Int'l Corp. v. Smith*, 224 F. Supp. 3d 1022 (S.D. Cal. 2016) ..................................... 19

*Zatko v. Rowland*, 835 F. Supp. 1174 (N.D. Cal. 1993) ................................................................ 22

**Statutes**

Bus. & Prof. Code § 17500 ............................................................................................................. 18

Cal. Bus. & Prof. Code § 17203 ..................................................................................................... 21

Cal. Civ. Code § 47(d) .................................................................................................................... 17

U.S. Const. Art. III........................................................................................................................... 19

**Rules**

Cal. R. Prof. Conduct 4.2................................................................................................................. 13

Fed. R. Civ. P. 11...................................................................................................................... 17, 22, 23

**MOTION FOR SANCTIONS**                    **CASE NO. 3:20-cv-00546-WHA**

### Notice of Motion and Motion

**PLEASE TAKE NOTICE THAT** on August 6, 2020, at 8:00 am, or as soon thereafter as this matter can be heard, before the Honorable William H. Alsup in Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, defendants Major League Baseball ("MLB"), Major League Baseball Enterprises, and MLB Advanced Media, L.P. (collectively "the MLB Defendants") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent authority for an order sanctioning Plaintiffs Neiman Nix and DNA Sports Performance Lab, Inc. (collectively, "Plaintiffs") and their counsel for filing a frivolous complaint for the purpose of harassment.

The MLB Defendants move on the following grounds, as further explained in the accompanying Memorandum of Points and Authorities and supporting papers:

1.     Plaintiffs' counsel failed to conduct a "reasonable inquiry" prior to signing and filing the Complaint;

2.     Plaintiffs' claims are factually and legally baseless; and

3.     Plaintiffs filed this action in bad faith, as demonstrated by their nine-year history of escalating frivolous and harassing conduct against MLB and those associated with it.

Accordingly, the MLB Defendants respectfully request the Court: (1) strike Plaintiffs' claims against the MLB Defendants, and (2) order monetary sanctions against Plaintiffs and their attorneys in an amount to be determined by the Court after reviewing MLB's documentation of the attorneys' fees reasonably incurred in responding to Plaintiffs' and their counsel's wrongful conduct.

This Motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations and Exhibits in support thereof, any reply papers that the MLB Defendants may submit, the arguments and any evidence presented at the hearing on this Motion, and all of the Court's pleadings and papers on file in this matter.

**MOTION FOR SANCTIONS**                           **CASE NO. 3:20-cv-00546-WHA**

1

DATED: July 2, 2020                    KOBRE & KIM LLP

2

3                                        By:   */s/ Michael Ng*
                                               Michael Ng
4

5                                        *Attorneys for Defendants Major League*
                                         *Baseball; Major League Baseball*
6                                        *Enterprises; and MLB Advanced Media, L.P.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiff Neiman Nix and his company, Plaintiff DNA Sports Performance Lab, Inc. ("DNA Sports Lab"), are vexatious, serial litigants who have sued MLB and those associated with it six times over the past six years in state and federal courts across the country. Nix, represented by a constantly rotating roster of attorneys, has sued MLB, its related entities, its current commissioner, its former commissioner, its current and former employees, and even the attorneys representing it in Nix's serial litigations. After seeking widespread media attention, Nix sued ESPN, the Associated Press and USA Today for their coverage of his litigation. After filing these successive actions, Nix has repeatedly had his claims dismissed—either voluntarily or by the court.

But winning in court is not Nix's goal. Nix has tried to use his successive litigations to shake down MLB and harass it into lifting a prohibition on the use of Insulin-like Growth Factor ("IGF-1"), a performance-enhancing substance that Nix and DNA Sports Lab promote and claim to sell. IGF-1 is listed as a prohibited substance in the collectively bargained Joint Drug Prevention and Treatment Program, an agreement between MLB and the Major League Baseball Players Association ("MLBPA"), which is also a defendant in this case. Nix's tactical misuse of the judicial system is plain from the long history detailed below, as well as the face of the Complaint. Plaintiffs recite a long list of alleged grievances that have nothing to do with their false advertising or unfair competition claims. Yet Plaintiffs' own attorneys admit that they did nothing to investigate the Complaint's central allegation that products like Gatorade protein bars and Muscle Milk, which allegedly market themselves with MLB and MLB club logos, contain IGF-1. To the contrary, the evidence available to Plaintiffs and their counsel suggests this central allegation is false.

Moreover, even as alleged, the Complaint's factual allegations do not support its legal claims for false advertising or unfair competition. Most glaringly, Plaintiffs do not allege a false or misleading commercial statement by Major League Baseball; Major League Baseball Enterprises; or MLB Advanced Media (the "MLB Defendants"). Similarly, Plaintiffs make the nonsensical claim that sales of their IGF-1 supplements were harmed because retail products sold

by third parties like Gatorade and Muscle Milk secretly contain IGF-1, while purporting to be free of any banned substance. In other words, Plaintiffs claim that Gatorade and Muscle Milk tricked consumers who wanted to *avoid* IGF-1 into purchasing their products, but that those customers would have otherwise *sought out* and purchased IGF-1 supplements from Nix and DNA Sports Lab.

Because Plaintiffs filed the Complaint for an improper purpose, without any reasonable inquiry or good faith basis for their central factual allegations, and without any plausible legal basis for a claim for relief, sanctions are warranted under Rule 11 and the Court's inherent authority. A New York court already sanctioned both Plaintiffs and their New York counsel for their frivolous and harassing conduct there. MLB Defendants respectfully request that the Court likewise (a) sanction Plaintiffs and their counsel, (b) strike all claims against the MLB Defendants in the Complaint, and (c) order Plaintiffs and their counsel to pay the MLB Defendants' legal fees associated with responding to this lawsuit.

## Factual Background

### I.     Plaintiffs Neiman Nix and DNA Sports Lab

Nix, who alleges he used to play professional baseball, alleges he founded a training center for baseball players called American Baseball Institute ("ABI"). Compl. at ¶¶ 11, 13. Although not relevant to this action, Nix blames MLB for ABI's failure. *Id.* at ¶ 15. In April 2012, Nix alleges he opened a new business, Plaintiff DNA Sports Lab, which, among other things, allegedly "sells health supplements made from certain substances extracted from the shed tissue of elk antlers, also known as 'deer antler velvet,'" which have IGF-1 as their active ingredient. *Id.* at ¶¶ 16, 18. While again not relevant to this lawsuit, the Complaint alleges that a 2013 MLB investigation into whether Plaintiffs were selling illegal performance enhancing drugs to MLB's players harmed DNA Sports Lab. *Id.* at ¶¶ 19-20.

### II.    Nix's Frivolous and Harassing Litigations

Nix began threatening litigation against MLB nearly nine years ago, when he sent MLB a letter alleging MLB investigators had slandered him through their investigation of ABI for luring

**MOTION FOR SANCTIONS**                                    **CASE NO. 3:20-cv-00546-WHA**

players to its training center by having people impersonate MLB scouts. *See* Ex. J[1] at ¶¶ 19, 23. In 2012, Nix threatened to file a suit against MLB that would "quickly become spotlighted in the [] national media" unless MLB paid Nix $6 million within ten days. Ex. A at 4-5. Nix alleged that MLB had "decimated" both ABI and DNA Sports Lab through MLB's "witch hunt" investigations of those businesses. *Id.* at 2-3. Even while making that outlandish demand, Nix's attorney admitted that Nix knew his products contained a banned substance: "One of the products sold by DNA contains deer antler velvet . . . out of respect for the fact this substance has been banned by MLB, my client has only recommended this product to nonprofessional athletes and body builders ever since he began DNA in the wake of ABI's demise, and never tried to market or recommend this product to any MLB player." *Id.* at 3.

### A.    <u>The First Nix Action – **Florida State Court: Nix Seeks Media Attention, then Fails to Prosecute**</u>

After sending multiple threatening letters, in February 2014 Plaintiffs filed a verified complaint in Florida state court against MLB, several related MLB entities, and several MLB employees (the "First Nix Action"). *See Nix, et al. v. Office of Comm'r of Baseball, et al*. No. 17-CV-1241 (RJS), 2017 WL 2889503, at *1 (S.D.N.Y. July 6, 2017) (summarizing Nix's successive litigations); ARB Decl. at ¶ 4. Among other things, Plaintiffs alleged MLB slandered Nix through its investigation of DNA Sports Lab for selling banned substances. 2017 WL 2889503, at *1. As threatened, Nix openly sought media attention for the dispute. In an interview with the Miami New Times, his then-attorney called the lawsuit "the ultimate David versus Goliath." Ex. B. The Miami New Times also interviewed Nix, who provided it with a photograph of himself to accompany the story. *Id.*

But the lawsuit was nothing but a hook for publicity. After seeking out the media coverage, and amending the complaint to allege MLB interfered with Plaintiffs' social media accounts, 2017 WL 2889503, at *1, Nix failed to comply with any of the Florida court's rules or deadlines, ARB Decl. at ¶ 6. Eventually, the court dismissed the complaint without prejudice, stating: "The Court's

---

[1] Unless otherwise noted, all citations to exhibits refer to those attached to the Declaration of Adriana Riviere-Badell ("ARB Decl.").

**MOTION FOR SANCTIONS**                    **CASE NO. 3:20-cv-00546-WHA**

patience is at an end. Plaintiffs have had, as of today, **TWO HUNDRED SIXTY ONE (261) DAYS to perfect service in this case. At no time has a summons in this case ever been issued**." Ex. C at 3 (emphasis in original). Nix filed a Notice of Appeal, followed by a voluntary dismissal. 2017 WL 2889503, at *2.

**B.      The Second Nix Action** – S.D.N.Y.: Plaintiffs Again Attempt to Shake Down MLB, Seek Maximum Publicity, Then Voluntarily Dismiss

Nix resurfaced in 2016, this time represented by a new attorney with more frivolous and harassing threats unless MLB agreed to pay Nix $40 million. Ex. D. After MLB refused, Nix's attorney issued a press release declaring an "Announcement Regarding Major League Baseball Corruption to be Made at Press Conference This Thursday, July 14th." Ex. E. The press release stated the press conference would "reveal a lawsuit that will have just been filed along with [sic] uncovering years of corruption inside Major League Baseball, specifically alleging past activities of Commissioner Bud Selig, current Commissioner Rob Manfred, and many that work for the MLB Commissioner's Office." *Id.* The release also claimed that Nix's attorney possessed evidence that MLB had engaged in violations of "state and federal laws, invasion of privacy, computer hacking, extortion threats and obstruction of justice." *Id.*

Plaintiffs sent a pre-filing copy of the complaint to the media,[2] and hired a public relations firm to promote the press conference on Facebook, Twitter, and Instagram.[3] Their efforts to garner attention were successful and resulted in news coverage by ESPN, Bleacher Report, NBC Sports, Vice Sports, the New York Post, the New York Daily News, Newsday, the Miami New Times, Vocativ, and the Florida Record, among others. ARB Decl. at ¶ 8. As that coverage noted, "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." Ex. H.

Later that day, Nix filed his case (the "Second Nix Action") in New York federal court, claiming state law tortious interference claims based on MLB's allegedly tortious investigation of

---

[2] Ex. F.
[3] Ex. G.

**MOTION FOR SANCTIONS**                               **CASE NO. 3:20-cv-00546-WHA**

DNA Sports Lab for selling banned products. ARB Decl. at ¶ 9; Ex. I. In response to the news coverage and related media inquiries, MLB issued a statement, which said, in relevant part:

> Other than noting that in Paragraph 40 of the Complaint Mr. Nix admits to selling products purportedly containing at least one banned performance-enhancing substance (IGF-1), MLB has no further comment on this frivolous lawsuit.

Compl. at ¶ 23. Based on this statement, Nix amended the complaint to include a claim that MLB defamed Nix by highlighting the content of his own court filing. *See* Ex. J.

Although Plaintiffs made the conclusory allegation that complete diversity existed between the parties, they failed to allege the citizenship of the parties. *Id.* at ¶¶ 2, 4-11. At a pre-motion conference, a new attorney representing Plaintiffs admitted that the parties were not diverse, but asked the court for a "discretionary measure" to retain the case. Ex. K at 6:17-24. The court explained it lacked discretion to hear the case if it lacked subject-matter jurisdiction, *id.* at 7:5-13, and provided the Plaintiffs with one week to amend their complaint, *id.* at 14:12-17; 16:6-7. On November 3, 2016, Plaintiffs voluntarily dismissed the Second Nix Action. 2017 WL 2889503 at *2.

**C.    The Third Nix Action – New York State Court: Plaintiffs File Yet Another Complaint Based on the Same Facts, Lose, and Are Sanctioned for Frivolous and Harassing Conduct**

Less than a month later, on November 28, 2016, Plaintiffs filed a new action against MLB and related parties (the "Third Nix Action") in New York state court based on the same alleged facts, but adding a federal hacking claim—a basis for federal subject matter jurisdiction lacking in the Second Nix Action. *Nix, et al. v. Major League Baseball, et al.*, Case No. 159953/2016 (BJ), 2018 WL 2739433, at *3 (N.Y. Sup. Ct. June 7, 2018) (order dismissing Third Nix Action). Defendants removed, and the federal district court ordered Plaintiffs to either file a motion to remand or file a complaint that complied with federal pleading standards. 2017 WL 2889503, at *2. In response, Plaintiffs sought to voluntarily dismiss their just-added federal hacking claim. *Id.* On July 6, 2017, the court dismissed the claim with prejudice and remanded Plaintiffs' remaining state law claims, noting that "Plaintiffs' failure to prosecute and their general inattentiveness to jurisdictional issues in other cases are very troubling." *Id.* at *5.

**MOTION FOR SANCTIONS**                                    **CASE NO. 3:20-cv-00546-WHA**

After remand, defendants moved to dismiss the complaint because Plaintiffs' claims were barred by the statutes of limitations and by *res judicata*, and Plaintiffs failed to state a claim. The court agreed, and dismissed the complaint. 2018 WL 2739433 at *5. Regarding Plaintiffs' defamation claims, the court held that:

> Defendants in their press release statement verbally expressed paragraph 40 by stating that Nix admitted to selling products containing IGF-1, which is a banned substance under MLB rules. That plaintiffs admitted that they sell products containing IGF-1 is precisely what is written in paragraph 40, and that portion of the statement is thus a fair and accurate report of the complaint.

*Id.* at *4. After Plaintiffs moved to reargue the motion to dismiss, the court sanctioned them because the motion was "completely without merit in law," depended "on a misleading citation to evidence and arguments," and was "intended to prolong the resolution of this case and/or to harass [defendants]." *Nix, et al. v. Major League Baseball, et al.*, Case No. 159953/2016 (BJ), 2018 WL 6838756, at *4 (N.Y. Sup. Ct. Dec. 31, 2018). The court ultimately ordered Plaintiffs and their counsel to jointly and severally pay defendants their reasonable attorney fees and costs of $40,554.93. *See* No. 159953/2016 (BJ), Dkt. 107. To date, Plaintiffs have not paid this judgment and have ignored MLB's demand for payment. ARB Decl. at ¶ 15.

Nix, represented by yet another new attorney, has appealed both the dismissal and the sanctions orders. ARB Decl. at ¶ 16. In Nix's appellate brief, filed in February 2020, he continues to argue that MLB does not ban "natural" forms of IGF-1 derived from elk antler, even though his counsel admitted in 2012 that Nix knew his products contained a banned substance, *see* Ex. A at 3.

### D.   The Fourth Nix Action – Florida State Court: Nix Sues MLB's Attorneys and 20 MLB Clubs, then Voluntarily Dismisses

In April 2018, while MLB's motion to dismiss the Third Nix Action was pending, Nix filed a new lawsuit in Florida state court (the "Fourth Nix Action")—this time *pro se*—including as defendants MLB's law firm, Kobre & Kim LLP (counsel of record in this case), and three of its attorneys, for their representation of MLB in Nix's successive frivolous lawsuits. *See* ARB Decl. at ¶ 17. In May 2018, Nix amended the complaint to add claims against 20 MLB clubs for MLB's alleged conduct that formed the basis of the First, Second, and Third Nix Actions. *See id.* Nix later

retained counsel and voluntarily dismissed his claims against many defendants, including Kobre & Kim, its lawyers, and most of the MLB clubs. *See id.* That litigation is proceeding based on unrelated allegations against two MLB clubs and certain of their employees. *Id.*

      **E.**    **The Fifth Nix Action** – **Florida State Court: Plaintiffs File Yet Another Complaint on the Same Facts, then Serve Harassing Discovery**

On January 25, 2019, Plaintiffs filed a fifth lawsuit against MLB and its employees (the "Fifth Nix Action") in Florida state court, represented by another new attorney, based again on MLB's alleged "hacking" of Plaintiffs' accounts. ARB Decl. at ¶ 18. After defendants moved to dismiss, Plaintiffs conceded the complaint was deficient and the court entered an agreed order granting defendants' motion to dismiss and dismissing the complaint without prejudice. *See id.* Plaintiffs filed an amended complaint on June 20, 2019, repeating the same factual allegations but repackaging their "hacking" claims again under new legal theories. *See* Ex. L. Defendants again moved to dismiss, after which the court dismissed the current and former MLB Commissioners as defendants for lack of personal jurisdiction but allowed Plaintiffs' claims to proceed as to MLB and two of its employees. ARB Decl. at ¶ 18.

Continuing their pattern of harassment, Plaintiffs served voluminous and harassing discovery requests at the peak of the COVID-19 crisis. For example, on March 24, 2020, Plaintiffs served Requests for Production itemizing 89 requests that demonstrate they are trying to use the Fifth Nix Action as a vehicle to obtain irrelevant information to harass MLB and those associated with it, including in this litigation. ARB Decl. at ¶ 19. For example, although the Fifth Nix Action has *nothing* to do with IGF-1, *see* Ex. L, Plaintiffs included *nine* requests for production about IGF-1:

- Request 31: Documents describing researched [sic] performed regarding IGF-1, Deer Antler or Elk Antler.

- Request 32: Documents describing findings or opinions of non-parties, including but not limited to the World Anti-Doping Agency, US Anti-Doping Agency, and the MLB Players Association regarding IGF-1, Deer Antler or Elk Antler.

- Request 33: Documents describing or depicting communications with the World Anti-Doping Agency, US Anti-Doping Agency, and the MLB Players Association regarding IGF-1, Deer Antler or Elk Antler during the Applicable Period.

- Request 34: Documents describing MLB's determination, classification and/or regulation of IGF-1, Deer Antler or Elk Antler.

- Request 35: Documents evidencing that IGF-1, Deer Antler or Elk Antler are banned by the MLB. Please refer to the chapters, sections, paragraphs and/or subparagraphs of the documents provided under which IGF-1, Deer Antler or Elk Antler are banned by MLB.

- Request 36: List of MLB players whom MLB requested to undergo testing for the use of IGF-1, Deer Antler or Elk Antler during the Applicable Period.

- Request 37: Documents evidencing laboratory testing performed on MLB players to test for the use of IGF-1, Deer Antler or Elk Antler during the Applicable Period.

- Request 38: List of MLB players whom were provided with a warning or disciplined in any way during the Applicable Period for the use of IGF-1, Deer Antler or Elk Antler. This list should include, but not be limited to, list of players suspended, the time frame of the suspension, players who were fined, and the amount of the fines.

- Request 39: Documents evidencing the reasons for any discipline of MLB players for the use of IGF-1, Deer Antler or Elk Antler, including but limited to correspondence, paper or electronic, to and from MLB players describing the warning or discipline, documents signed by any players regarding any warnings or discipline, or any databases that document warnings or disciplinary actions taken against MLB players during the Applicable Period.

*See* Ex. M. Similarly, on April 3, 2020, Plaintiffs served 71 interrogatories (including subparts), more than twice the cap of 30 permitted under the rules. *See* Ex. N; *see also* Fla. R. Civ. P. 1.340(a).

On April 17, 2020, MLB filed a motion in New York federal court, asking the court to enjoin the frivolous Florida litigation based on the federal court's dismissal of Plaintiffs' federal hacking claim *with prejudice* in the Third Nix Action. ARB Decl. at ¶ 21. That motion, as well as the Fifth Nix Action, remains pending. *Id.*

F.   <u>The News Outlet Action</u> – Florida Federal Court: Plaintiffs Sue the News Outlets for Defamation and Lose

On March 13, 2018, Plaintiffs sued ESPN, the AP and USA Today in Florida state court, represented by another new attorney, for a statement made in their reporting of the Second Nix Action (the "News Outlet Action"), which is substantively the same as the MLB statement that Nix claimed was defamatory. *See Nix, et al. v. ESPN, Inc., et al.,* 772 Fed. App'x 807, 812 (11th

10

Cir. May 15, 2019) ("The suit admits Nix and his company used bioidentical insulin like growth factor (IGF- 1), which is derived from elk antlers and is on baseball's list of banned substances."). The defendants removed the action, and on August 30, 2018, the Florida federal court dismissed the suit with prejudice, concluding, among other reasons, that Nix's defamation claim was barred by the fair report privilege under New York Civil Rights Law § 74, and that the allegedly defamatory statement was true. *See* Order, *Nix, et al. v. ESPN, Inc., et al.*, 1:18-cv-22208 (UU), 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018). The 11th Circuit affirmed, concluding, among other things, that the challenged statement was privileged as a fair and true report of Nix's complaint:

> Nix's complaint . . . stated that his products contained IGF-1 derived from elk antlers. The MLB's list of banned substances includes all isomers of IGF-1. The statement at issue simply combined these two facts.[4]

772 Fed. App'x at 813.

### G. <u>The Current Action</u>: Plaintiffs Try Again to Shake Down MLB, then File the Baseless Complaint for the Purpose of Harassment

After losing in New York and Florida, and being sanctioned for frivolous and harassing conduct in New York, Nix began threatening the instant litigation through yet another new attorney. In October 2019, Plaintiffs' counsel in this action threatened to file the instant lawsuit, along with burdensome discovery "on all MLB teams" if MLB did not agree to pay Plaintiffs $350 million and "publicly state that natural IGF-1 is not a banned substance and Nix did not and never has sold a banned PED under the Joint Agreement of the MLBPA." Ex. O. In the alternative, Nix offered to settle for $600 million in the absence of a public statement. *Id.* MLB again refused.

Plaintiffs spend a significant portion of the Complaint rehashing false and inflammatory allegations about MLB that have no bearing on their claims here. Of relevance, Plaintiffs allege that "the active ingredient in the supplements developed and sold by Nix and DNA is a naturally

---

[4] Nix attempts to weaponize this holding by mischaracterizing it. Contrary to Plaintiffs' allegation, the 11th Circuit did not make any holding regarding the concentration of IGF-1. Compl. at ¶ 32 (claiming, counterfactually, the 11th Circuit held that IGF-1 "in any concentration" is a banned substance). Instead, the court held that because the Prohibited Substance List did not distinguish between synthetic and natural IGF-1 the News Outlets' "omission of any distinction between synthetic and natural IGF-1 does not render the statements untrue or defamatory." 772 Fed. App'x at 813.

MOTION FOR SANCTIONS                          CASE NO. 3:20-cv-00546-WHA

occurring, bio-identical form of IGF-1 which is found in foods such as milk, meat, fish, whey protein, and in the human body." Compl. at ¶ 18. Plaintiffs allege the IGF-1 contained in their products is derived from elk antlers and, among other things, "increase[s] physical strength" and "enhance[s] athletic performance." *Id.* at ¶ 17. Plaintiffs allege Nix "never tried to sell or market these natural performance supplements to any MLB players" because he was prohibited from doing so by an unrelated non-competition agreement. *Id.* at ¶ 18.

Plaintiffs make the conclusory allegation that MLB "has sponsors and partners that sell products containing IGF-1 and compete with the products of DNA." *Id.* at ¶ 35. Specifically, Plaintiffs allege MLB has "partnerships" with the following products (collectively, the "Retail Products"):

- A Gatorade whey protein bar, which Plaintiffs allege includes the MLB logo on its wrappers and boxes. *Id.* at ¶ 36.
- Muscle Milk brand protein drinks, sold by Cytosport, Inc., which Plaintiffs allege "previously" included the logos of four MLB clubs on their bottles. *Id.* at ¶ 37.
- Eyepromise nutritional supplements containing natural proteins, which Plaintiffs allege is a partner of MLB. *Id.* at ¶ 39.

Plaintiffs allege the Retail Products' use of MLB logos "suggests that these products would not constitute banned substances." *Id.* at ¶ 42. Plaintiffs allege the Retail Products state that they are "certified safe for sport," by the National Science Foundation (the "NSF"), *id.* at ¶¶ 37, 39 and a "provider" for a number of professional sports leagues, including MLB, *id.* at ¶ 36. Plaintiffs do not identify any false or misleading statement by the MLB Defendants regarding any of the Retail Products. Nor do Plaintiffs provide any factual basis for their conclusory allegation that the Retail Products contain IGF-1. *Id.* at ¶ 40. As Plaintiffs acknowledge, the NSF's certification (which is "certified for sport" *not* "certified safe for sport") means the product contains no banned substances, including IGF-1. *Id.* at ¶¶ 37-39.

Nix's true grievance is not with the MLB Defendants' purported association with any of the Retail Products, but with the fact that MLB will not change its drug policy to help Nix's business—as Nix demanded in advance of filing this action—and with MLB's 2016 press release that was the basis of his failed defamation claim:

MLB made its press release in 2016 to the clear detriment of the sales and reputation of DNA with respect to DNA selling products that contain IGF-1. Yet, MLB has not made

12

any such statements regarding the sales by its sponsors and partners that sell products containing natural IGF-1, even with those products bearing the logos and trademarks of MLB.

*Id.* at ¶ 41. Plaintiffs do not allege that they have relied on the Retail Products' use of MLB and MLB club logos.

Based on this alleged conduct, Plaintiffs allege the MLB Defendants have violated the Lanham Act, False Advertising Law ("FAL") and Unfair Competition Law ("UCL"). *Id.* at ¶¶ 46-66.

**III.    Nix's Pattern of Extra-Judicial Harassment and Contact with Represented Parties**

In addition to Nix's extensive history of successive, frivolous litigation, Nix and his constantly rotating roster of attorneys[5] have also repeatedly engaged in unethical and harassing extra-judicial contact with represented parties—including in this litigation. Despite knowing that Kobre & Kim represents MLB in this matter, *see* Ex. P, Plaintiffs' counsel has repeatedly emailed an MLB employee, in violation of California's rules of professional conduct. *See* ARB Decl. at ¶ 24 & Ex. Q – R; *see also* Cal. R. Prof. Conduct 4.2. In addition, during the pendency of this litigation, Nix has threatened yet another frivolous action. *See* ARB Decl. at ¶ 25. On May 22, 2020, Plaintiffs' counsel sent the MLB Defendants' counsel a draft request for arbitration in the Court of Arbitration for Sport against the World Baseball Softball Confederation. Ex. S. That draft request seeks an order barring MLB players from participating in the 2021 World Baseball Classic based on players' alleged use of supplements with IGF-1. In his transmittal email, Plaintiffs' counsel noted that "[w]hile MLB would not be a party before the CAS, the consequences of the sought relief to the MLB's players is clear." *Id.* He further noted that Plaintiffs were "willing to discuss a global settlement with MLB and MLBPA before filing the present Request" and asked for a response within five days. *Id.*

This is hardly the first time Nix and his attorneys have engaged in unethical and harassing extrajudicial conduct during the course of Nix's frivolous and successive litigations. Even during the pendency of MLB's sanctions motion in New York, Nix emailed Timothy Maxey, a joint MLB

---

[5] To date, Nix has been represented by more than 15 different attorneys at different law firms in his threatened and filed litigations against MLB and the News Outlets in Florida, New York and now California. *See* ARB Decl. at ¶ 23.

**MOTION FOR SANCTIONS**                              **CASE NO. 3:20-cv-00546-WHA**

and MLBPA employee, pretending to seek guidance on substances containing IGF-1 because, Nix claimed, he planned to play again professionally. *See* Ex. T at Ex. A. Nix did not advise Maxey that he was suing MLB, 20 MLB clubs, and several current and former employees of both, or that he was actually seeking this information for use in those lawsuits. Nix then called Maxey on his cell phone. After Maxey refused to answer questions because Nix is not a current player, Nix became agitated. *Id.* at ¶ 4. Nix threatened to depose Maxey, demanded Maxey provide him with an affidavit for use in his litigation, and threatened to name him personally in a lawsuit he was planning to file against the MLBPA, MLBPA Assistant General Counsel Bob Lenaghan, and MLBPA Executive Director Anthony Clark. *Id.* at ¶ 6. After the call, Nix sent Maxey yet another email, again threatening to depose him and again demanding an affidavit. *See id.* at Ex. A.

As set forth in the MLBPA's motion for sanctions, Nix employed similar tactics in his attempts to extort it to provide false testimony regarding IGF-1. Dkt. 19 at 15-16. Similarly, in April 2018, while MLB's motion to dismiss the New York action was pending, Nix tried to shake down a number of MLB Clubs by sending them an email "seek[ing] compensation" for MLB's allegedly defamatory statement (MLB's 2016 press release), and demanding a retraction and public apology. *See* ARB Decl. at ¶ 27; Ex. U. Prior to that, Nix accosted Commissioner Robert D. Manfred (a named party in the Second, Third and Fifth Nix Actions) at an MLB event. *See* Ex. V at 2. Before that, Nix asked Florida state authorities to reach out to MLB employee Neil Boland to provide facts relating to Nix's "hacking" claims, but failed to inform authorities he had ongoing litigation against Boland involving the same subject-matter, or that Boland is a represented party in litigation involving those claims. *See id*. at 1.

## Argument

### I.      This Court May Sanction the Filing of a Frivolous Complaint Under Rule 11

This Court should sanction Plaintiffs and their counsel because they filed this legally and factually baseless action without a reasonable inquiry for the purpose of harassment. "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)

**MOTION FOR SANCTIONS**                                **CASE NO. 3:20-cv-00546-WHA**

(quoting Rule 11).[6] An attorney who signs the paper without such a substantiated belief "shall" be penalized. *Id.*

Rule 11 sanctions are appropriate here because (1) the Complaint is objectively "baseless," and (2) Plaintiffs' counsel failed to conduct "a reasonable and competent inquiry" prior to signing and filing the Complaint. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (*quoting Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). In addition, Plaintiffs brought this action for the purposes of harassment. Plaintiffs already brought and lost defamation claims against MLB for its 2016 press release. Although they have repackaged their grievances as "false advertising" and "unfair competition" claims, Plaintiffs' successive litigation and demands for hundreds of millions of dollars demonstrate they brought this action for the purpose of harassment. *See, e.g. Buster*, 104 F.3d at 1190.

### A.    Plaintiffs' Counsel Failed to Undertake the Requisite "Reasonable and Competent Inquiry"

Plaintiffs and their attorneys have no factual basis for their central allegation in the Complaint: that the Retail Products sold by third parties contain IGF-1. Plaintiffs' counsel admitted during the parties' meet and confer they have not tested the Retail Products for IGF-1. ARB Decl. at ¶ 27. As Plaintiffs know, the NSF *has* tested three of the four Retail Products and certified them "for sport." *See* Comp. at ¶¶ 37-39. Had Plaintiffs conducted a reasonable factual inquiry before filing the Complaint, they would have discovered that the NSF tests products for IGF-1 and will only certify them "for sport" if the test results are negative. ARB Decl. at ¶ 30; Declaration of Peter Schilling ("Schilling Decl.") at ¶ 4.[7] Notably, according to the NSF's public directory of certified products, Nix's products are not "certified for sport," suggesting he is well aware the NSF tests for IGF-1, and would reject his products on that basis, among others. Schilling Decl. at ¶ 7 and Ex. C.

---

[6] Unless otherwise noted, all emphasis in quotations is added, and internal citations, quotation marks, ellipses, brackets and other internal marks are omitted.

[7] Similarly, if Plaintiffs thought the third parties were lying about their NSF certification, they could have easily checked the NSF's public directory of certified products. *See* Schilling Decl. at ¶¶ 5-7.

**MOTION FOR SANCTIONS**                    **CASE NO. 3:20-cv-00546-WHA**

Plaintiffs' and their counsel's failure to conduct a requisite good faith investigation alone warrants sanctions. *Christian*, 286 F.3d at 1129 (filing suit in the absence of adequate factual investigation falls short of the Rule 11 standard); *Truesdell v. S. Cal. Permanente Med. Grp*., 293 F.3d 1146, 1154 (9th Cir. 2002) (finding no abuse of discretion in decision to award Rule 11 sanctions where plaintiff's counsel knew that the complaint's factual contentions lacked evidentiary support).

### B.   Plaintiffs' Claims are Baseless

In addition, Plaintiffs' Lanham Act, FAL and UCL claims are legally and factually baseless. Plaintiffs and their counsel should be sanctioned because (1) they advance legally baseless arguments previously rejected by courts in New York and Florida, (2) the Complaint fails on its face to allege the required elements of each claim, and (3) Plaintiffs fail to allege *any* factual basis for their claims against two of the three MLB Defendants.

#### i.   Plaintiffs Advance Legally Baseless Arguments Previously Rejected by the New York and Florida Courts

The Court should sanction Plaintiffs because their argument that MLB's 2016 press release is false and misleading has already been advanced and rejected in multiple actions. Plaintiffs make the conclusory allegation that Defendants have made "false and misleading descriptions or representations of fact, in the context of commercial advertising or promotion, that are directed to the nature, characteristics or qualities of Plaintiffs' services or commercial activities." Compl. at ¶ 47. But the only statement by the MLB Defendants that Plaintiffs allege is MLB's 2016 press release. The New York state court already rejected Nix's argument that MLB's 2016 press release was false or misleading, and the Florida federal courts rejected Nix's argument that a substantively identical statement by the News Outlets was false or misleading.[8] All three courts found the statement was true and privileged, as a fair and true report of Nix's complaint. *See* 2018 WL

---

[8] In addition, Plaintiffs' allegation is factually baseless because MLB's 2016 press release was not made in a commercial context. *See Rice v. Fox Broad. Co*., 330 F.3d 1170, 1181 (9th Cir. 2003) ("The core notion of commercial speech is speech which does no more than propose a commercial transaction."), *overruled on other grounds by Skidmore as Trustee for Randy Craig Wolfe Trust v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

**MOTION FOR SANCTIONS**                                    **CASE NO. 3:20-cv-00546-WHA**

2739433 at *8; 2018 WL 8802885 at *7; 772 Fed. App'x at 813. Any claim based on MLB's 2016 press release fails here for the same reason.[9]

Sanctions are appropriate because Plaintiffs are advancing legally baseless arguments already rejected in two previous lawsuits that are an attempt to further Nix's personal vendetta against MLB. *See Ferguson v. Waid*, No. C17-1685 (RSM), 2018 WL 1306468 (W.D. Wa. Mar. 13, 2018) (quoting *Knipe v. United States*, 151 F.R.D. 24, 25 (N.D.N.Y. 1993)). In *Ferguson* and *Knipe*, the courts concluded sanctions were appropriate because plaintiffs advanced "new-found" legal theories based on legally groundless arguments that were already advanced and rejected in other lawsuits. *Ferguson*, 2018 WL 1306468, at *2; *Knipe*, 151 F.R.D. at 26. In *Knipe* the court found that plaintiff filed the complaint for an improper purpose in part because "counsel's arguments have been repeatedly rejected by district courts and circuit courts alike." *Knipe*, 151 F.R.D. at 26. Sanctions should be imposed for the same reason here, particularly in light of Nix's *nine year* campaign of escalating frivolous and harassing conduct against MLB and those associated with it. *See also Caruso v. Washington State Bar Association*, No. C17-00003 (RSM), 2017 WL 2256782 (W.D. Wa. May 23, 2017) (imposing sanctions under similar circumstances where plaintiff had "continually harassed" the defendant "with swiftly-dismissed lawsuits").

### ii.    The Complaint Fails on its Face to Allege the Required Elements of its Claims

Sanctions are also warranted because the Complaint fails to allege the required elements of Plaintiffs' false advertising and unfair competition claims. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) ("As the complaint failed on its face to allege a required element of [plaintiff's] claim, the district court did not abuse its discretion by finding it lacked adequate legal support."). Plaintiffs' claims are "legally frivolous" because they are unwarranted by existing law or any reasonable argument for the extension of existing law. Fed. R. Civ. P. 11(b)(2).

---

[9] In California, as in New York, communications to the press about judicial proceedings, including statements about the allegations in a complaint, are absolutely privileged under California's fair and true reporting privilege. *Microsoft Corp. v. Yokohama Telecom Corp.*, 993 F. Supp. 782, 784-85 (C.D. Cal. 1998); accord Cal. Civ. Code § 47(d).

17

**MOTION FOR SANCTIONS**                    **CASE NO. 3:20-cv-00546-WHA**

### a.    Plaintiffs' False Advertising Claims Fail

Most glaringly, Plaintiffs fail to allege a false or misleading commercial statement by the MLB Defendants. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999) (citing *Gordon & Breach Science Publishers v. American Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994)) (to plead a Lanham Act violation, Plaintiffs must allege commercial speech, by a defendant who is in competition with plaintiff, for the purpose of influencing consumers to buy defendants' products); Bus. & Prof. Code § 17500 (prohibiting advertising that is "untrue or misleading").[10] At best, accepting Plaintiffs' conclusory allegation that the Retail Products contain IGF-1, Plaintiffs allege the Retail Products have made false or misleading statements by using MLB and MLB club logos and stating they are "certified safe for sport" by the NSF and a "provider" of MLB. But it is well established that statements by third parties cannot be a basis for a false advertising claim against the MLB Defendants—who neither manufacture nor sell the Retail Products. *See In re Outlaw Laboratory, LP Litig.*, 424 F. Supp. 3d 973, 980-81 (S.D. Cal. 2019) ("[I]f the defendant has not made the allegedly false statement, they are not liable for false advertising.") (citing *Lasoff v. Amazon.com, Inc.*, 741 Fed. App'x 400, 402 (9th Cir. 2018)).

In addition, Plaintiffs fail to allege an injury resulting from the allegedly false or misleading advertising. Plaintiffs do not plead any basis to conclude Gatorade's use of MLB's logo or Muscle Milk's use of MLB club logos "diverted sales" from Nix's business or "caused a lessening of goodwill" for Plaintiffs' products. *See Stahl Law Firm v. Judicate West*, No. C13-1668 (THE), 2013 WL 6200245, at *6-7 (N.D. Cal. Nov. 27, 2013). Plaintiffs themselves have alleged in multiple lawsuits—including this one—that Plaintiffs were not *permitted* to sell or market their

---

[10] Plaintiffs thus fall far short of satisfying Rule 9(b)'s heightened pleading standards, which apply to their false advertising claims because they are based on allegedly false statements. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1049 (C.D. Cal. 2011) (holding plaintiffs failed to meet heighted pleading standard of Rule 9(b) for FAL claims); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (holding plaintiffs did not meet burden of heightened pleading standard of Rule (9)(b) for Lanham Act false advertising claims).

18

products to baseball players because of an unrelated non-competition agreement. Compl. at ¶ 18; *see also, e.g.,* Ex. J at ¶¶ 37, 42 (alleging "[a]t no time did Nix work with any baseball players at DNA Sports Lab" and Plaintiffs "never tried to market or recommend" their products to any MLB player or "knowingly sold" their products to any MLB player). Thus, the Retail Products could not have harmed Nix's business by marketing to customers to whom Nix was prohibited from marketing or selling his supplements.

Similarly, Nix claims IGF-1—which is on the list of banned substances under the Joint Drug Prevention and Treatment Program—is a "main ingredient" in his supplements. Even accepting Plaintiffs' conclusory allegation that the Retail Products contain IGF-1, it is illogical and implausible that the "deceived" customers—who were allegedly tricked into purchasing products containing IGF-1—would have instead purchased Plaintiffs' "potent liquids and creams," which purport to have IGF-1 as a main ingredient. *See* Ex. I at ¶ 40. Plaintiffs do not allege sufficient "factual content" for the "court to draw [a] reasonable inference" that individuals who purchased broad consumer-facing retail products like Gatorade protein bars or Muscle Milk would have purchased Nix's "potent" specialty IGF-1 products, which cost hundreds of dollars according to the website cited in the Complaint, ARB Decl. at ¶ 31, Ex. X, under any circumstances. *See Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009). As a result, Plaintiffs not only fail to allege required elements of their false advertising claims, they also lack Article III[11] or statutory standing.[12]

---

[11] Plaintiffs do not plead any direct proof of "injury in fact." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011). Plaintiffs do not allege lost sales figures. For the reasons discussed above, Plaintiffs also fail to establish a chain of inference showing the Retail Products' use of MLB or MLB club logos could harm Nix's business. *Id.*

[12] Plaintiffs lack FAL standing because they do not allege they relied on the Retail Products' use of MLB or MLB club logos. *Youngevity Int'l Corp. v. Smith*, 224 F. Supp. 3d 1022, 1031 (S.D. Cal. 2016); *see also* Compl. at ¶ 60 (alleging "[m]embers of the public" were likely deceived by "Defendants' untrue or misleading statements"). Plaintiffs lack Lanham Act standing because, for the reasons discussed above, they cannot "show economic or reputational injury flowing directly from the" alleged misrepresentations. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 (2014).

### b.    Plaintiffs' Unfair Competition Claim Fails

Plaintiffs' UCL claim that the MLB Defendants engaged in unlawful, unfair, or fraudulent conduct is likewise facially deficient.

First, Plaintiffs allege the MLB Defendants' conduct was "unlawful" because it was in violation of the Lanham Act and FAL. Compl. at ¶ 64. For the same reasons Plaintiffs' false advertising claims fail, Plaintiffs' unfair competition claim based on those claims also fails. *Rubin v. Wal-Mart Stores, Inc*., 599 F. Supp. 2d 1176, 1179 (N.D. Cal. 2009).

Second, Plaintiffs allege the MLB Defendants' conduct was "unfair" because by "endorsing" the Retail Products, "but publicly announcing that all forms of IGF-1 are banned, Plaintiffs have been effectively ostracized from the market, yet Defendants' endorsed products remain on the market." Compl. at ¶ 65 (emphasis added). To state a claim under the UCL's "unfair" prong, Plaintiffs must allege that (1) Defendants violated the antitrust laws, or (2) Defendants' conduct "significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Plaintiffs make the conclusory allegation that Defendants' conduct "tends to significantly harm competition and is anticompetitive in nature," Compl. at ¶ 65, but they fail to allege harm to competition generally, as opposed to harm to *Plaintiffs*. *See, e.g., DirectV, LLC v. E&E Enters. Global, Inc.,* No. 2:17-06110-DDP-PLA, 2018 WL 707964, at *5 (C.D. Cal. Feb. 5, 2018) ("harms alleged must . . . have impacts on 'competition,' not merely on a competitor" to state a UCL unfair competition claim).

Third, Plaintiffs allege MLB Defendants' conduct was "fraudulent" because third parties' use of MLB and MLB club logos would mislead a "significant number of reasonable consumers" to believe the Retail Products do not contain a banned substance. Compl. at ¶ 66. But where a UCL claim "sounds in fraud, [plaintiffs are] required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [the] injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012). Specifically, "UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989,

1002 (N.D. Cal. 2014). As a result, Plaintiffs lack standing to assert a UCL claim based on the third parties' use of MLB and MLB club logos.

Finally, because a UCL action is equitable in nature, damages are not available, and UCL plaintiffs are limited to injunctive relief and restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003); Cal. Bus. & Prof. Code § 17203. Where, as here, a plaintiff alleges that a defendant caused it to lose business opportunities with a third party, the claim against that defendant sounds in damages, not restitution. *See Luxpro Corp. v. Apple Inc.*, No. C 10-03058 (JSW), 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011). There can be no restitution here because the MLB Defendants do not have and therefore cannot return any of Plaintiffs' property. *Korea Supply Co.*, 29 Cal.4th at 1149 (holding that relief is not restitutionary where a "plaintiff does not have an ownership interest in the money it seeks to recover from defendants" because it is neither "seeking the return of money or property that was once in its possession" nor money in which it had a "vested interest"); *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994) ("Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims."). Although Plaintiffs purport to seek injunctive relief enjoining the MLB Defendants from making false and misleading statements about Plaintiffs or their products, as discussed above, Plaintiffs have not pled a single false or misleading statement by the MLB Defendants about Plaintiffs or their products.

### ii.    Plaintiffs Fail to Allege *Any* Factual Basis for Their Claims Against MLB Enterprises, Inc. and MLB Advanced Media L.P.

Plaintiffs fail to allege *any* factual basis for their claims against MLB Enterprises, Inc. and MLB Advanced Media, L.P. In the entire 66-paragraph Complaint, the only time either entity is mentioned is under "Parties" in paragraphs 6 and 7 where Plaintiffs allege each entity is affiliated with MLB and resides in New York. The Complaint does not have a single factual allegation pertaining to its claims against these entities, other than lumping them together in making conclusory allegations that do not rest on any facts pertaining to these entities, let alone wrongful conduct by these entities that could give rise to false advertising or unfair competition claims. *See In re iPhone Application Litig.*, No. 11–MD–02250 (LHK), 2011 WL 4403963, at *8 (N.D. Cal.

Sept. 20, 2011) ("Plaintiffs must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.")

### C. Severe Sanctions Are Necessary to Stop Nix's Frivolous and Harassing Conduct

Because Plaintiffs and their counsel failed to conduct the requisite good faith investigation, but instead demanded $600 million before filing a legally and factually baseless complaint, this Court should strike all claims against the MLB Defendants in the Complaint and impose monetary sanctions against Plaintiffs and their attorneys. *See* Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments (discussing the "variety of possible sanctions to impose for violations" of Rule 11, including "striking the offending paper"). Although striking a complaint, and by extension dismissing a case, is a "harsh sanction" it is appropriate here because "lesser sanctions" will not deter Plaintiffs' escalating frivolous and harassing conduct. *King v. Fleming*, No. 16-2108-JAR-GLR, 2017 WL 386836, at *7 (D. Kan. Jan. 27, 2017) (striking the complaint and dismissing the case in its entirety under Rule 11 because, based on plaintiff's history of misconduct, if the court imposed a lesser sanction the plaintiff would continue to misuse the judicial process and drain judicial resources); *see also Zatko v. Rowland*, 835 F. Supp. 1174, 1182 (N.D. Cal. 1993) (considering plaintiff's extensive pattern of abusing the court process in awarding harsh non-monetary Rule 11 sanctions).

For the same reason, this Court should also impose a substantial monetary sanctions award against Plaintiffs and their counsel. *Truesdell v. S. Cal. Permanente Med. Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) (Rule 11 "authorizes the imposition of monetary and/or nonmonetary sanctions . . . . A monetary sanction may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those 'fees and other expenses incurred as a direct result of the violation.'"). Given that Nix and his New York attorneys have already been sanctioned over $40,000, but Nix continues with his frivolous and harassing conduct (albeit through new attorneys), a substantial award of sanctions is required to stop his wrongful behavior and prevent recurrence. Fed. R. Civ. P. 11(c)(4) (Rule 11 sanctions should be sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated").

Among other things, the Court should award the MLB Defendants their reasonable attorneys' fees in preparing this motion and the cost of preparing a motion to dismiss the Complaint, if it is not stricken and dismissed pursuant to this motion. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *Margolis v. Ryan*, 140 F.3d 850, 855 (9th Cir. 1998) (holding the "district court did not err by including in the amount [of sanctions under Rule 11] awarded the costs and fees borne by defendant-appellee in bringing the motion for sanctions"); *Refac Intern., Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287-88 (C.D. Cal. 1991) (imposing Rule 11 sanctions based on "all of the expenses[,] including attorney's fees, incurred by each and every defendant herein (including cross- or third-party defendants) from the time of the filing of the complaint through claims for sanctions hereunder including attorney's fees for moving for or joining in the Rule 11 motions"). At the Court's request, the MLB Defendants will submit documentation of the fees and expenses they have incurred from this latest chapter of frivolous and harassing litigation.

## II.     This Court May Sanction Plaintiffs for their Bad Faith Conduct Under Its Inherent Authority

The Court also has inherent authority to punish Plaintiffs' bad faith shakedown of MLB, dressed up as a "settlement offer," and filing of the Complaint for the purpose of harassment.[13] *See Scott v. Metropolitan Health Corp.*, 234 Fed. App'x 341, 368 (6th Cir. 2007) (using inherent authority to sanction bad faith attempt to harass and extort defendant). While Rule 11 sanctions are limited to "paper[s]" signed in violation of the rule, *Christian*, 286 F.3d at 1131, the Court also has inherent authority to impose sanctions for counsel's "bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). This Court can consider Nix's *nine year* campaign of frivolous and harassing conduct in support of a finding the Complaint was filed in bad faith. *In re Magers*, No. C–01–4253 (MJH), 2003 WL 103400, at *3 (N.D. Cal. Jan. 9, 2003) (affirming finding of bad faith by plaintiff and noting its "history of

---

[13] *See RBC Bearings Inc. v. Caliber Aero, LLC*, No. SACV 12-1442 (FMO), 2016 WL 6562068, at *9 (C.D. Cal. Aug. 1, 2016) ("A trial court, in awarding sanctions, may consider a party's dilatory tactics and bad faith settlement demands in maintaining the action.").

**MOTION FOR SANCTIONS**                              **CASE NO. 3:20-cv-00546-WHA**

harassment and the lack of legitimate purpose for filing the instant petition in support of its finding of bad faith"); *Scott*, 234 Fed. App'x 341 (considering past misconduct in concluding the action was "long brewed and fermented in the liquor of 'bad faith'"). This includes Nix's pattern of escalating "settlement" demands, successive filing and dismissal of frivolous actions against MLB and those associated with it based on the same claims, use of media attention as a means of harassment, and unethical and harassing extra-judicial contact with represented parties, including MLB's current employees. Enough is enough. The Court should use its inherent authority to sanction Plaintiffs' bad faith conduct and put a stop to Nix's abuse of the legal system to harass MLB.

## <u>Conclusion</u>

For the foregoing reasons, the motion should be granted, the MLB Defendants respectfully request that Plaintiffs' claims against the MLB Defendants be stricken, and monetary sanctions issue against Plaintiffs and their attorneys in an amount to be determined by the Court after reviewing the MLB Defendants' documentation of the attorneys' fees reasonably incurred in responding to Plaintiffs' and their counsel's wrongful conduct.

Dated:          San Francisco, CA
                    July 2, 2020

                                                    KOBRE & KIM LLP

                                                    By:   */s/ Michael Ng*
                                                    Michael Ng (State Bar No. 237915)
                                                    Michael.Ng@kobrekim.com

                                                    150 California Street, 19th Floor
                                                    San Francisco, California 94111
                                                    Telephone: 415-582-4800
                                                    Facsimile: 415-582-4811

                                                    *Attorneys for Defendants Major*
                                                    *League Baseball; Major League*
                                                    *Baseball Enterprises; and MLB*
                                                    *Advanced Media,  L.P.*

**MOTION FOR SANCTIONS**                    **CASE NO. 3:20-cv-00546-WHA**

1

**CERTIFICATE OF SERVICE**

2

**Matter:** *Nix v. Major League Baseball,* Case No. 3:20-cv-00546-WHA (N.D. Cal.)

3

4
5

        I am employed in the City and County of San Francisco California. I am over the age of eighteen years and not a party to the within action; my business address is 150 California Street, Suite 1900, San Francisco, CA 94111. On June 10, 2020, my firm served the following document(s):

6

7

  **MLB DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT AUTHORITY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

8

9

  **DECLARATION OF ADRIANA RIVIERE-BADELL IN SUPPORT OF MLB DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND THE COURT'S INHERENT AUTHORITY**

10

11

  **DECLARATION OF PETER SCHILLING IN SUPPORT OF MLB DEFENDANTS' MOTION FOR SANCTION PURSUANT TO RULE 11 AND THE COURT'S INHERENT AUTHORITY**

12

13

on the parties by the method below:

14

**By email:** Based on agreement of the parties to accept service by email or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below:

15

16

**By Federal Express:** I caused the documents to be sent to the persons at the e-mail addresses listed below:

17

18

19

20

| | |
|---|---|
| Ronald L. Richman | Lance D. Reich |
| BULLIVANT HOUSER BAILEY PC | HOLLEY DRIGGS |
| 101 Montgomery Street, Suite 2600 | 400 South Fourth Street, Suite 300 |
| San Francisco, CA 94104-4146 | Las Vegas, NV 89101 |
| Telephone: 415.352.2700 | Telephone: 702.791.0308 |
| Facsimile: 415.352.2701 | Facsimile: 702.791.1912 |
| Email: ron.richman@bullivant.com | Email: lreich@nevadafirm.com |

21

  Attorney for Plaintiffs      Attorney for Plaintiffs

22

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed July 2, 2020, at San Francisco, California.

23

24

        */s/ Michael Ng*
        Michael Ng

25

26

27

28