1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7
8        NORTHERN DISTRICT OF CALIFORNIA
9
10   DNA SPORTS PERFORMANCE LAB,
     INC., et al.,
11                                              No.  C 20-00546 WHA
                    Plaintiffs,
12
13           v.
                                                **ORDER RE MOTION FOR
14   MAJOR LEAGUE BASEBALL, et al.,             SANCTIONS**
15                  Defendants.
16   _____
17              **INTRODUCTION**
18       In this false-advertising and unfair competition action, defendant baseball players' union
19   moves for dismissal and sanctions under FRCP 11.  To the following extent, the motion is
20   **GRANTED**.
21              **STATEMENT**
22       Plaintiffs, Neiman Nix and his company DNA Sports Performance Lab, Inc. (together
23   "DNA Sports"), sell health supplements "extracted from the shed tissue of elk antlers," which
24   contain a "naturally occurring, bio-identical form of IGF-1," a performance-enhancing
25   substance.  Major League Baseball ("the league") and the Major League Baseball Players
26   Association ("the union") have banned both natural and synthetic IGF-1 under their Joint Drug
27   Prevention and Treatment Program.  Following an investigation by the league of their
28

United States District Court
Northern District of California

1    supplements, DNA Sports sued in several federal and state courts against the league and, now,

2    the union (Compl. at ¶¶ 3–4, 16, 18, 25; Dkt. No. 19 at 3).

3           In 2013, the league launched an investigation into the illegal sale of performance-

4    enhancing drugs to players.  Investigators targeted "anti-aging" clinics in Florida, including

5    DNA Sports.  Plaintiffs contend that this investigation resorted to "strong-arm tactics that

6    created the impression of guilt," which provoked all their lawsuits (Dkt. No. 19 at 5; Compl. at

7    ¶¶ 19–20).

8           In February 2014, plaintiffs sued the league and several of its employees in Florida state

9    court, challenging the league's investigation as unfair and discriminatory.  Plaintiffs missed

10   several case management conferences and failed to perfect service until October, resulting in a

11   November 2014 dismissal for failure to prosecute.  *Nix and DNA Sports Performance Lab, Inc.*

12   *v. Major League Baseball*, No. 3D14-2967, 2015 WL 1930327 (Fla. 3d Dist. Ct. App. Apr. 27,

13   2015).

14          In July 2016, plaintiffs sued the Office of the Commissioner of Baseball and several

15   league employees in the Southern District of New York challenging the same league

16   investigation, alleging tortious interference with prospective economic advantage.  After a pre-

17   motion conference to discuss the league's intent to file motions for dismissal under Rule

18   12(b)(1) and for sanctions, plaintiffs voluntarily dismissed that action in November 2016.  *Nix*

19   *and DNA Sports Performance Lab, Inc. v. Office of Comm'r of Baseball*, No. 16-CV-5604

20   (S.D.N.Y. July 14, 2016).

21          In late November 2016, less than a month after dismissal of the prior suit, DNA Sports

22   sued the league, the Office of the Commissioner of Baseball, and several league employees in

23   New York state court for hacking plaintiffs' social media accounts, tortious interference with

24   economic advantage, and defamation of Nix — all in the course of the league's investigation.

25   Defendants removed to federal district court based on the hacking claim.  Rather than move to

26   remand or amend their complaint to satisfy federal pleading standards, plaintiffs voluntarily

27   dismissed their federal hacking claim and proceeded with the state suit.  The New York state

28   court then dismissed the complaint in June 2018 as *res judicata* under FRCP 41's and New

United States District Court
Northern District of California

2

York CPLR 3217(c)'s two-dismissal rule, barred by statute of limitations, and for failure to state a claim.  In December 2018, the state court denied DNA Sports' motion to reargue the dismissal as frivolous and imposed sanctions against plaintiffs and counsel, requiring them to pay attorney's fees incurred in opposing the motion.  *Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball*, No. 159953/2016, 2018 WL 2739433 (N.Y. Sup. Ct. June 7, 2018).

Meanwhile in March 2018, DNA Sports also sued ESPN, the Associated Press, and USA Today in the Southern District of Florida, alleging that each had defamed plaintiffs by publishing or republishing a statement from the league that DNA Sports' July 2016 tortious interference lawsuit "admits Nix and his company used bioidentical insulin-like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." *Nix and DNA Sports Performance Lab, Inc. v. ESPN, Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *1-2 (S.D. Fla. Aug. 30, 2018).  Plaintiffs called the statement defamatory because it did not differentiate between natural and synthetic IGF-1, giving readers the impression that DNA Sports had engaged in illegal or legal-but-banned drug sales.  The Southern District of Florida, however, held that the statement at issue was substantially correct and the omission did not render the report untrue, thus it was not defamatory.  The district court dismissed the complaint with prejudice in August 2018.  The Court of Appeals for the Eleventh Circuit affirmed, ruling that the league's regulations banned all forms of IGF-1.  *Nix and DNA Sports Performance Lab, Inc. v. ESPN, Inc., et al.*, 772 Fed. Appx. 807, 814 (11th Cir. 2019).

The instant action originates from DNA Sports' March 2018 suit.  In July 2018, DNA Sports and its new counsel contacted the players union seeking a sworn statement corroborating an alleged July 2016 phone call between DNA Sports' counsel and the union's in-house counsel, Robert Lenaghan (Opp. Br. at ¶ 8).  During this phone call Attorney Lenaghan allegedly informed plaintiffs that deer antler "was not and has never been banned in baseball and that no animal products are banned" (Compl. at ¶ 21).  When contacted to confirm this statement in DNA Sports' Florida suit, the union reaffirmed the position eventually maintained by the Eleventh Circuit: the Joint Drug Prevention and Treatment Program banned

United States District Court
Northern District of California

1    both natural and other sources of IGF-1 as a performance enhancing substance (Compl. at ¶

2    29).

3         In July 2019, after the Eleventh Circuit's ruling on plaintiffs' defamation-suit appeal,

4    DNA Sports and their next lawyer, Attorney Lance Reich, contacted the union requesting their

5    "factual position [on] the presence of IGF-1" in a union-licensed product, Klean Athlete (Reich

6    Decl. at ¶ 16).  As alleged, the licensing agreement allowed Klean Athlete to use the union's

7    trademark on products (Compl. at ¶ 10).  Klean Athlete publicized the official partnership with

8    the union in an April 2016 press release that also announced each league club received

9    shipments of its "NSF Certified for Sport" supplements (Compl. Exh. 4).  The union refused to

10   provide their "factual position with respect to the presence of IGF-1 in the accused products"

11   to DNA Sports (Reich Decl. at ¶ 17).

12        In January 2020, without the players union's affidavit or stipulation to the presence of

13   IGF-1 in the accused products, DNA Sports filed this suit based on the union's former

14   licensing agreement with Klean Athlete and the league's licensing agreement with Gatorade

15   "Recover" whey protein bars, Muscle Milk protein shakes, and Eyepromise nutritional

16   supplements (Compl. at ¶¶ 35–38).

17        The foregoing is not a full recitation of DNA Sports' litigation against the league, its

18   affiliates, and others, but it provides the relevant synopsis of DNA Sports' vendetta against the

19   league and the union.  The players union now moves for dismissal and sanctions under FRCP

20   11.  Following briefing of this motion, the league also moved for the same.  Oral argument has

21   not yet been heard on that motion and it is not addressed herein.  This order follows a hearing

22   held telephonically due to COVID-19.

                                   **ANALYSIS**

24        Under FRCP 11(b), an attorney must certify to the best of his knowledge, information,

25   and belief that:

26        (1) [A pleading] is not being presented for any improper purpose, such
           as to harass or to cause unnecessary delay or needlessly increase in
27         the cost of litigation;

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

3

4

This order will first address whether the complaint states a claim for relief before determining the extent of any Rule 11 violation.

5

### 1.   LANHAM ACT.

6

7

8

9

10

This order finds that DNA Sports' first claim for relief, alleging the union's former licensing agreements with Klean Athlete violated the Lanham Act, is without merit. The complaint lacks enough facts to even minimally allege the players union violated the Lanham Act. As it stands, the claim for relief fails to meet two fundamental elements of a Lanham Act claim and the basic standards of pleading.

11

12

13

Section 43(a)(1)(B) of the Lanham Act forbids false descriptions or representations in the advertising and sale of goods and service. *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981). Plaintiffs alleging a Lanham Act false advertising claim must show:

14

15

16

17

18

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

19

20

21

A plaintiff may demonstrate falsity by proving a statement facially false, false by necessary implication, or by showing a literally-true statement was likely to mislead consumers. *Southland Sod Farms v. Stover Seed Co. Eyeglasses*, 108 F.3d 1134, 1139 (9th Cir. 1997).

22

23

24

25

26

27

The complaint alleges the union misrepresented Klean Athlete as free from banned substances by endorsing the product. The complaint relies solely on Klean Athlete's April 2016 press release announcing its partnership with the union as evidence of false-by-necessary-implication advertising. That is, if the union allowed Klean Athlete to use its logo and announce a partnership in Klean Athlete's promotional press release, the product appears free of any substances banned by the league, an alleged misrepresentation by the union because

28

5

United States District Court
Northern District of California

1   Klean Athlete allegedly contained animal protein and, thus, IGF-1.  This theory, however, fails

2   to satisfy elements one and five of Lanham Act false advertising claims.

3        *First*, DNA Sports does not sue the right defendant.  In Lanham Act violations,

4   defendants are typically those who made the allegedly false or misleading statement at issue.

5   *See Lasoff v. Amazon, Inc.*, 741 Fed. Appx. 400, 402 (9th Cir. 2018).  The Court of Appeals for

6   the Eleventh and Second Circuits have imposed "contributory liability" in false advertising

7   claims under the Lanham Act where a defendant has actively and materially induced, caused,

8   or furthered the false advertising.  *See Duty Free Americas, Inc. v. Estee Lauder Companies,*

9   *Inc.*, 797 F.3d 1248, 1277–78 (11th Cir. 2015); *Societe Des Hotels Meridien v. LaSalle Hotel*

10  *Operating Partnership, L.P.*, 380 F.3d 126, 133 (2d Cir. 2004).  Our court of appeals has not

11  yet adopted this interpretation, though at least one court in this district has, persuasively

12  analogizing to another part of the Lanham Act, trademark, in which our court of appeals does

13  impose contributory liability.  *ADT Sec. Services, Inc. v. Security One Int'l, Inc.*, No. 11–CV–

14  05149 YGR, 2012 WL 4068632 at *3 (N.D. Cal. 2012) (Judge Yvonne Gonzalez Rogers).

15  Assuming, without finding, that our court of appeals would approve of this liability extension,

16  the complaint still does not allege enough to make the players union contributorily liable for

17  any potential false advertising.  To state a claim for contributory false advertising, a plaintiff

18  must allege that (1) a third party engaged in false advertising that injured the plaintiff; and (2)

19  the named defendant contributed to this false advertising by knowingly inducing or causing the

20  conduct or materially participating in it.  *Duty Free Americas, Inc.*, 797 F.3d at 1277-78.

21       Here, the complaint does not allege any facts regarding the union's specific licensing

22  agreement with Klean Athlete (Compl. at ¶ 8).  Further, the union neither made the accused

23  statement nor conducted Klean Athlete's product testing.  NSF International, an independent

24  product-testing organization, approved the identified products as "certified for sport" and

25  Klean Athlete represented themselves as such (Compl. at ¶ 38).  If Klean Athlete contained a

26  banned substance and its representation violated the Lanham Act, it was NSFI's error and

27  Klean Athlete's violation, not the union's.  DNA Sports pleads no facts to the union's

28  knowledge or material participation, such as alleging they instructed NSFI to certify the

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

otherwise-banned products or that the union had knowledge of — or the capability to ascertain — the products' compositions beyond NSFI's certification.  This shortfall fundamentally undermines the claim.

*Second*, the complaint alleges no economic or reputational harm.  A Lanham Act claim requires "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[, which] occurs when deception of consumers causes them to withhold trade from the plaintiff."  Lost sales and damage to business reputation are characteristic injuries under the Lanham Act.  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 137 (2014).  But these typical injuries still require sufficiently detailed allegations.  One court in this district dismissed as conclusory and insufficient a plaintiff's allegations of "lost revenue and market share, reduced asset value[,] increased advertising costs, [and] damage to its business, reputation, and goodwill" without a relevant timeframe or facts to defendant's causation.  *LegalForce, Inc. v. LegalZoom.com, Inc.*, No. 18-CV-07274-MMC, 2019 WL 1170779, at *2 (N.D. Cal. Mar. 13, 2019) (Judge Maxine M. Chesney).  So too here.

Although plaintiffs raised a plausible contention that Klean Athlete's press release constituted commercial advertising under the Lanham Act, the complaint provides no factual allegations that this specific speech caused actionable harm.  The complaint avers $1,000,000 in lost revenue and damages but fails support this figure or assert causation by alleging, for example, a clear diversion of sales from DNA Sports to Klean Athlete or lost contracts upon publication of the press release (Compl. at ¶ 56).  The only press release alleged to have caused harm is the league's 2016 press statement on the July 2016 lawsuit, which stated, "Mr. Nix admits to selling products purportedly containing at least one banned performance-enhancing substance (IGF-1)" and which does not advertise the identified products (Compl. at ¶ 41).  Thus, there is no claim for relief here.

*Third*, the April 2016 press release — the only viable alleged commercial advertising — occurred outside California's three-year statute of limitations for fraud.  The Lanham Act does not contain a statute of limitations; the limitations period from the most analogous state-law

United States District Court
Northern District of California

1    action governs.  For false-advertising claims, that is fraud.  *Jarrow Formulas, Inc. v. Nutrition*

2    *Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).  Any complaints regarding the April 2016 press

3    release came due in April 2019, yet the complaint alleges no applicable statute of limitations

4    exception.

5          In its brief, DNA Sports replies that the press release is merely an example of the union's

6    commercial advertising about the only specific IGF-1-containing product that DNA Sports

7    knows the players union has endorsed.  Yet the complaint alleges that the union continues to

8    engage in false advertising, even though the union's licensing agreement with Klean Athlete

9    ended in December 2017 (Opp. Br. at ¶ 13; Compl. at ¶ 54).  If seeking an injunction of any

10   potential speech that continues today, DNA Sports should have included examples of such in

11   their complaint that fell within California's statute of limitations.  As it stands, even assuming

12   DNA Sports adequately alleged speech attributable to the players union and alleged any

13   cognizable harm, the union cannot be enjoined from doing what it has already ceased on its

14   own accord.  Any potentially-false commercial advertising is not occurring and, therefore,

15   cannot be proscribed.

16       **2.    FALSE ADVERTISING.**

17         DNA Sports' second claim for relief is also without merit.  It wholly fails to identify the

18   union's participation in the alleged false-advertising scheme.

19         Plaintiffs premise their second claim for relief on the same April 2016 press release,

20   alleging the union made false or misleading statements in advertising violating California

21   Business and Professions Code § 17500.  California's false-advertising law forbids advertising

22   that is "untrue or misleading, and which is known, or which by the exercise of reasonable care

23   should be known, to be untrue or misleading."  Liability requires a defendant's personal

24   "participation in the unlawful practices" and "unbridled control" over the practices violating

25   § 17500.  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995-96 (9th Cir. 2006).  Our court of

26   appeals maintains that plaintiffs may not establish their § 17500 false advertising claims on

27   vicarious liability.  Relevant here, our court of appeals has dismissed a false advertising claim

28   against a defendant who allowed violating merchants to use the defendant's logo because

1   "there is no duty to investigate the truth of statements made by others." *Perfect 10, Inc. v. Visa*

2   *Int'l Serv. Ass'n*, 494 F.3d 788, 808-09 (9th Cir. 2007).

3         DNA Sports does not show how the union participated in Klean Athlete's false

4   advertising.  Plaintiffs do not allege any facts relating to how the union knew or should have

5   known Klean Athlete products contained banned substances (if it did).  Nor do plaintiffs allege

6   how the union exerted control over Klean Athlete's "certified for sport" determination.  In fact,

7   plaintiffs and their counsel admitted "it is not clear that the selective enforcement [of sports

8   supplement products] is done at the direction of the association" (Dkt. No. 19 Exh. K).  Thus,

9   plaintiffs' second claim for relief entirely fails to satisfy the key pleading element for a

10  § 17500 violation.

11      **3.**     **UNFAIR COMPETITION.**

12        DNA Sports' third claim for relief fails as a product of their Lanham Act and § 17500

13  false advertising claims and for lacking any actionable remedies.

14        Our court of appeals has "consistently held" that claims of unfair competition under

15  § 17200 are "substantially congruent" to claims under the Lanham Act.  *Cleary v. News Corp.*,

16  30 F.3d 1255, 1263 (9th Cir. 1994).  Here, plaintiff's third claim for relief, alleging the union

17  engaged in unfair competition violating California Business and Professions Code

18  § 17200, arises from their false-advertising and Lanham Act claims.  California's statute of

19  limitations bars both claims which, regardless, are inadequately pled.  Thus, as the claims are

20  substantially congruent, plaintiff's baseless Lanham Act claim yields a baseless § 17200 claim.

21        Even still, the remedies requested are unavailable here.  Section 17200 plaintiffs are

22  limited to restitution and injunctive relief, which requires ongoing injury.  *Korea Supply Co. v.*

23  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

24        *First*, DNA Sports cannot request restitution since they never conducted business with

25  the union.  DNA Sports acknowledged that Nix never sold or marketed its products to league

26  players due to its non-competition agreement with the purchasers of his former interest in

27  American Baseball Institute (Compl. at ¶ 18).  It also is not clear that Klean Athlete diverted

28  customers from DNA Sports.  If it is true that Klean Athlete contains substances banned by the

league, any consumers who were seeking to purchase a league-approved supplement would thus avoid both Klean Athlete and DNA Sports.

*Second*, DNA Sports cannot receive injunctive relief because the alleged harm — the union's licensing agreement with Klean Athlete — is over and will likely not be repeated.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 320 (2009) ("An injunction should not be granted as punishment for past acts where it is unlikely that they will recur.").  Since the agreement ended in late 2017, the union has not sought to renew its endorsement, suggesting it will not pursue future business with Klean Athlete.  In sum, DNA Sports' unfair competition claim also fails out of the gate.

## CONCLUSION

Before deciding whether to impose sanctions against anyone this order will allow plaintiffs an opportunity to amend.  Plaintiffs are not required to amend, and their better course might be to walk away.  But if they do amend, they should not only try to cure the defects identified herein but should also cure the further possible defects identified in the union's motion.  If plaintiffs wish to amend, they may move for leave to file by **AUGUST 20 AT NOON**, explaining how the defects have been cured, appending a copy of the proposed amended complaint to the motion, to be heard on a normal 35-day track.  Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the complaint.  If plaintiffs move for leave to file an amended complaint, they should be sure to plead their best case and take into account all criticisms made by the union, including those not reached by this order.

Once the pleadings are settled (or abandoned), a further order will address sanctions.

**IT IS SO ORDERED.**

Dated:  August 1, 2020

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE