UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DNA SPORTS PERFORMANCE LAB, INC. and NEIMAN NIX,<br><br>        Plaintiffs,<br><br>   v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA LP; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; and MAJOR LEAGUE BASEBALL ENTERPRISES, INC,<br><br>        Defendants. | No. C 20-00546 WHA<br><br><br>**ORDER GRANTING MOTION FOR ATTORNEY'S FEES** |

## INTRODUCTION

Following plaintiffs' voluntary dismissal in this false-advertising and unfair competition action, defendants baseball league and players union move for attorney's fees under FRCP 11 and the Court's inherent authority. To the following extent, the motions for fees are **GRANTED**.

## STATEMENT

Plaintiffs, Neiman Nix and his company DNA Sports Performance Lab, Inc. (together "DNA Sports"), sell health supplements "extracted from the shed tissue of elk antlers," which contain a "naturally occurring, bio-identical form of IGF-1," a performance-enhancing substance. Major League Baseball ("the league") and the Major League Baseball Players Association ("the union") have banned players from using both natural and synthetic IGF-1

under their Joint Drug Prevention and Treatment Program. Following the banning of its supplements, DNA Sports sued *seriatum* in several federal and state courts against the league and its affiliates, loosely defined (Compl. ¶¶ 3–4, 16, 18, 25; Dkt. No. 19 at 3). DNA Sports' string of suits against the league and others is characterized by a dismissal followed by a new suit in a different venue with a slightly new cause of action challenging the ban (Dkt. No. 53). DNA Sports eventually made its way to our district. Though this was its first actual suit against the union, the union had followed DNA Sports' litigation history and, promptly upon being served, filed this motion for sanctions seeking fees and dismissal. The league did likewise. A prior order dismissed the complaint. No amendment was sought. Now, the union and the league renew their requests for sanctions.

On a Rule 11 motion, we consider all the circumstances, not just the allegations in the complaint. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990).

1. **DNA SPORTS' HARASSMENT OF THE BASEBALL LEAGUE.**

As detailed in the league's motion for sanctions, DNA Sports and its attorneys have pursued the league, well before the instant suit, for the past nine years (Dkt. No. 42 at 4–5). Our tale begins with an October 2012 shakedown letter. Following two league investigations into DNA Sports' former business venture, DNA Sports sent the letter accusing the league of character defamation, alleged $30,000,000 in damages, and threatened to sue unless the league promptly paid $6,000,000. DNA Sports, though, conceded that its products contained a banned substance under the Joint Drug Prevention and Treatment Program (Dkt. 42-2, Exh. A at 3).

In 2013, the league launched another investigation into the illegal sale of performance-enhancing drugs to players. Investigators targeted "anti-aging" clinics in Florida, including DNA Sports (Dkt. No. 19 at 5; Compl. ¶¶ 19–20).

In February 2014, DNA Sports sued the league in Florida state court, challenging the league's investigation as unfair and discriminatory. But plaintiff missed several case management conferences and failed to perfect service until October, resulting in a November 2014 dismissal for failure to prosecute. *Nix and DNA Sports Performance Lab, Inc. v. Major*

*League Baseball, etc., et al.*, No. 3D14-2967, 2015 WL 1930327 (Fla. 3d Dist. Ct. App. Apr. 27, 2015).

In July 2016, following the league's rejection of another letter, this time demanding $40,000,000, DNA Sports sued the Office of the Commissioner of Baseball and several league employees in the Southern District of New York challenging the same league investigation, alleging tortious interference with prospective economic advantage (Dkt. 42-2, Exh. D). After a pre-motion conference to discuss the league's intent to file motions for dismissal under Rule 12(b)(1) and for sanctions, DNA Sports voluntarily dismissed that action in November 2016. *Nix and DNA Sports Performance Lab, Inc. v. Office of Comm'r of Baseball*, No. 16-CV-5604 (S.D.N.Y. July 14, 2016).

In late November 2016, less than a month after the dismissal, DNA Sports sued the league, the commissioner, and several league employees in New York state court for hacking DNA Sports' social media accounts, tortious interference with economic advantage, and defamation of Nix — all in the course of the league investigation. Defendants removed to federal district court based on the hacking claim. Rather than move to remand or amend its complaint to satisfy federal pleading standards, DNA Sports voluntarily dismissed its federal hacking claim and proceeded with the state suit. The New York state court then dismissed the complaint in June 2018 as *res judicata* under FRCP 41's two-dismissal rule, barred by statute of limitations issues, and for failure to state a claim. In December 2018, the state court denied DNA Sports' motion to reargue the dismissal as frivolous and imposed attorney's fees against DNA Sports and its counsel — fees which remained outstanding as of briefing here. *Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*, No. 159953/2016, 2018 WL 2739433 (N.Y. Sup. Ct. June 7, 2018).

In April 2018, while litigating the third action, Neiman Nix — acting *pro se* — sued Kobre & Kim LLP and three attorneys (the league's counsel), several MLB coaches and general managers, and over a dozen MLB clubs in Florida state court, alleging RICO, trade secret, and computer abuse violations. In December 2018, Mr. Nix voluntarily dismissed claims against the majority of the baseball clubs as well as Kobre & Kim and its lawyers. The action currently

3

remains pending, however, against two remaining clubs and league personnel. *Nix v. Luhnow, et al.*, No. 2018CA003920 (15th Fla. Cir. Ct., Palm Beach Cnty.).

In January 2019, DNA Sports sued the Office of the Commissioner of Baseball, current and former MLB commissioners, and several MLB employees in Florida state court for unlawful hacking and computer abuse violations in the course of the 2013 MLB investigation. After DNA Sports amended its complaint in response to a motion to dismiss, the court dismissed the claims against the commissioners but allowed DNA Sports to proceed with the remaining claims. Though that case pertained to the leagues' alleged hacking of DNA Sports' social media accounts during the 2013 investigation, DNA Sports sought discovery on the league's stance and communications regarding IGF-1. *Neiman Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*, No. 2019CA002611 (11th Fla. Cir. Ct., Miami-Dade Cnty.).

In March 2018, DNA Sports also sued ESPN, the Associated Press, and USA Today in the Southern District of Florida in March 2018, alleging that each had defamed plaintiffs by publishing or republishing a statement from the league that DNA Sports' July 2016 tortious interference lawsuit "admit[ed] Nix and his company used bioidentical insulin-like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." *Nix and DNA Sports Performance Lab, Inc. v. ESPN, Inc., et al.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *1-2 (S.D. Fla. Aug. 30, 2018). Plaintiff called the statement defamatory because it did not differentiate between natural and synthetic IGF-1, giving readers the impression that DNA Sports had engaged in illegal or legal-but-banned drug sales. The Southern District of Florida, however, held that the statement at issue was substantially correct and the omission did not render the report untrue, thus it was not defamatory. The district court dismissed the complaint with prejudice in August 2018. The Eleventh Circuit affirmed, ruling that league regulations banned all forms of IGF-1 — whether synthetic or natural. *Nix and DNA Sports Performance Lab, Inc. v. ESPN, Inc., et al.*, 772 Fed. Appx. 807, 814 (11th Cir. 2019).

The instant action descends from the March 2018 suit. After the Eleventh Circuit's decision, DNA Sports began to investigate the presence of natural IGF-1 in animal-derived protein products. Specifically, DNA Sports "consulted with several experts" about whether whey-protein products endorsed by the league would contain natural IGF-1 (allegedly, they would) (Reich Decl., Dkt. No. 31-1 at ¶¶ 9–10). DNA Sports did not test these products for IGF-1 but instead relied on what it and its experts deemed "common sense" (*id.* at ¶ 11; Opp. Br., Dkt. No. 46 at ¶ 6).

In June 2019, DNA Sports' current attorney, Lance Reich, contacted the league's general counsel inquiring about "the unfair competition and conduct by [the league] in maligning [DNA Sports] in public for selling products containing natural IGF-1" while the league and the union endorsed and profited "from the sale of other nutritional products that contain[ed] natural IGF-1." As DNA Sports admits, Reich demanded that the league "cease its sponsorship and partnerships with all companies and entities that sell natural protein products that contain natural IGF-1," and "publicly announce that all nutritional supplement products that contain natural IGF-1 are banned performance-enhancing substances," or face a new suit (Reich Decl., Dkt. 31-1 at ¶ 12 & Exh. A). The league refused.

2.  **DNA SPORTS' PURSUIT OF THE BASEBALL UNION.**

Meanwhile, DNA Sports and its attorneys began pursuit of the union in the summer of 2016. The union swears, but provides no further documentation, that from July 2016 to November 2016 DNA Sports offered to provide the union information about the league's wrongdoing — first for payment, then in exchange for an internal 2011 union memo that referred to deer antler spray, which is similar to DNA Sports' product (Dkt. No. 19-1 ¶ 5). The union declined each offer. In its declaration, the union further swears that, in March 2017, DNA Sports contacted it to warn that "an unnamed plaintiff was about to file an 'explosive' RICO lawsuit against MLB and MLBPA" and the union would be spared if it would give a copy of the 2011 deer-antler-spray memo to DNA Sports (Dkt. No. 19-1 ¶ 6). The union declined, yet no suit materialized.

After over a year of silence, DNA Sports and its new counsel contacted the union in July 2018, seeking a sworn statement corroborating an alleged July 2016 phone call between DNA Sports' counsel and the union's in-house counsel, Robert Lenaghan (Compl. ¶ 21; Dkt. No. 19-1, Exh. A). Attorney Lenaghan had, allegedly, informed DNA Sports' counsel that deer antler "was not and has never been banned in baseball and that no animal products are banned." DNA Sports wanted confirmation of its statement for its still-pending, March 2018 suit against ESPN, the Associated Press, and USA Today. *Nix and DNA Sports Performance Lab, Inc. v. ESPN, Inc., et al.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *1-2 (S.D. Fla. Aug. 30, 2018). The union refused to confirm the alleged conversation with Attorney Lenaghan, maintaining that the Joint Drug Prevention and Treatment Program banned both natural and other sources of IGF-1 as a performance-enhancing substance.

Throughout August and September 2018, DNA Sports repeated its demands for an affidavit regarding the permissibility of IGF-1 (Dkt. No. 19-1 Exhs. B–D). DNA Sports threatened legal action. DNA Sports apparently believed that the union's failure to provide the requested memo breached its obligations to Mr. Nix as a former player under the collective bargaining agreement. In August, DNA Sports wrote, "Before commencing legal action against the MLBPA, Mr. Nix is giving the organization one final opportunity to provide him with [the requested] affidavit . . ." and gave the union five days to supply the document before filing a related complaint (Dkt. No. 19-1, Exh. B). The union refused to comply, asserting that it did not owe Mr. Nix a duty to provide the requested document and that any action against the union would be frivolous and sanctionable (Dkt. No. 19-1, Exh. C).

In September 2018, DNA Sports tried again with more specificity, writing that if the union refused to provide the affidavit, DNA Sports would "pursue an action against the MLBPA for breach of contract, breach of the covenant of good faith and fair dealing, and Florida's Unfair and Deceptive Practices Act . . . " (Dkt. No. 19-1, Exh. D). After repeating why the union did not owe Mr. Nix a duty to comply and that any legal action on the matter would draw a sanctions demand, DNA Sports ceased its demands for a time (Dkt. No. 19, Exh. E at 2).

In February 2019, DNA Sports abandoned its theory that the baseball union owed a duty to Mr. Nix as a former player and again demanded a declaration regarding deer antler spray, this time pursuant to the New York Freedom of Information Law. The union again refused, explaining that law did not apply to private entities and that the union would pursue sanctions for "baseless" factual assertions and frivolous legal action (Dkt. No. 19 at 18).

In July 2019, after the Eleventh Circuit had ruled for ESPN and company on appeal, DNA Sports and its next lawyer, Attorney Lance Reich, contacted the union and insisted that it justify its past licensing of Klean Athlete protein supplements, which allegedly contained IGF-1 and yet were deemed "certified for sport" by NSF International ("NSFI") (Rubin Decl ¶ 15). The licensing agreement allowed Klean Athlete to use the union's trademark on licensed products (Dkt. No. 19 at 3, 11). Klean Athlete publicized its official partnership with the union in an April 2016 press release that also announced each MLB club received shipments of its "NSF Certified for Sport" supplements (Compl. Exh. 4). The union repeatedly refused to provide a "factual position with respect to the presence of IGF-1 in the accused products" while DNA Sports repeatedly threatened legal action. The parties exchanged numerous emails about the union's involvement in this alleged false advertising (Dkt. No 19, Exhs. B–L). On several occasions, including after reviewing an advance copy of a complaint DNA Sports intended to file at the International Trade Commission (a version of which plaintiffs eventually filed here), the union explained DNA Sports' claims lacked legal standing and sufficiency. DNA Sports proposed that it might forego litigation against the union if the latter identified the responsible parties. In September 2019, DNA Sports inquired into the union's "potential" willingness to avoid any further litigation by:

> Publicly retract[ing] MLBPA's . . . statement [that] 'the Joint Drug Prevent and Treatment Program expressly lists IGF-1 as a banned Performance Enhancing Substance and does not distinguish between nature and other sources of IGF-1 in that listing' . . . and publicly announce that natural IGF-1 as it occurs in the form of animal products are not considered banned by MLBPA.

(Dkt. No. 19-1 at 7). At each juncture, though, the union stood on its rights.

The union implored DNA Sports to identify evidence proving the union had engaged in actionable wrongful conduct. DNA Sports ignored these requests for clarification.

### 3. THE PRESENT SUIT.

In January 2020, DNA Sports filed the present suit based on the league's licensing agreements dealing with Gatorade "Recover" whey protein bars, Cytosport's Muscle Milk protein shakes, and Eyepromise nutritional supplements and the union's former licensing agreement with Klean Athlete (Compl. ¶¶ 35–38).

After DNA Sports filed its complaint, the union offered to stipulate that it had no current agreement with Klean Athlete and that its only agreement with Klean Athlete ended December 2017. Attorney Reich agreed that DNA Sports might dismiss the complaint in exchange for that sworn declaration. The union followed up five times on this matter. Attorney Reich explained that he and DNA Sports were considering the language necessary for the declaration and stalled until April (Dkt. No. 19-1 ¶ 22, Exh. O).

In April, after the union repeatedly sought DNA Sports' voluntary dismissal, Attorney Reich explained DNA Sports would not drop the complaint because it had video evidence proving that the union knew Klean Athlete's supplements contained banned substances (Dkt. No. 19-1, Exh. P). As Attorney Reich explained, the video proved that "[the union] had an independent program administrator that oversees the testing done under the Joint Drug Program," but proved nothing else (Dkt. No. 19-1, Exh. P). Upon receiving the non-incriminating video, the union asked, once again, for any evidence of wrongful conduct. DNA Sports did not answer until May 4 when Attorney Reich acknowledged that the union would be seeking sanctions (Dkt. No. 19-1, Exh. R).

As promised, the union moved for sanctions, seeking dismissal and attorney's fees. Following the union's motion, the league also moved for dismissal and sanctions. Before the league's motion could be heard, however, an August 1 order dismissed the complaint against the union and, though it permitted a motion for leave to amend, recommended DNA Sports walk away. In response, DNA Sports dismissed its entire action against both the league and the union *with prejudice* (Dkt. Nos. 53, 54). Following an August 4 order's request for updated

1    motions, the union moved to recover fees incurred by its two attorneys for 162.5 hours of work
2    conducted from January 2020 through August 2020.  The motion requests $104,039.08 (Dkt.
3    No. 59).  The league moved to recover fees incurred by one attorney for 39.5 hours of work
4    conducted from April 2020 through July 2020.  The league's motion requests $33,407.17 (Dkt.
5    No. 56).
6        This order follows full briefing and argument (held telephonically due to COVID-19).

**ANALYSIS**

The union and the league request monetary sanctions against Attorney Reich under Rule 11 and against DNA Sports under the Court's inherent authority, seeking to hold DNA Sports, Nix, and their latest counsel, Attorney Lance Reich, jointly and severally liable for fees and expenses (Dkt. No. 59 at 1).

Under FRCP 11(b), an attorney must verify to the best of his knowledge, information, and belief that:

> (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Frivolous filings, or filings made for improper purpose, undermine this certification. *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–63 (9th Cir. 1990).  Frivolous filings are both (1) objectively legally or factually baseless; and (2) made without a reasonable and competent inquiry.  *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).  Similarly, improper purpose is judged objectively.  *Townsend*, 929 F.2d at 1362.  If an attorney violates Rule 11(b), courts may impose appropriate sanctions under Rule 11(c)(1).  Sanctions do not require a finding of bad faith, but under Rule 11(c)(4) they are limited to what is sufficient to deter repetition of the sanctioned conduct.

In addition to Rule 11, federal courts have broad inherent powers to sanction parties, counsel, and firms that engage in "conduct which abuses the judicial process." *See Goodyear*

9

*Tire & Rubber Co. v. Haeger*, 581 U.S. ___, 137 S. Ct. 1178, 1186 (2017); *see also B.K.B.*, 276 F.3d 1091, 1108 (9th Cir. 2002) (discussing inherent sanctions against parties). Sanctions imposed under a district court's inherent powers require a bad faith finding, since they are intended to compensate. *Lahiri v. Universal Music & Video Distribution Corp.,* 606 F.3d 1216, 1219 (9th Cir. 2010). District courts wield significant discretion in determining appropriate sanctions.

This order finds DNA Sports' complaint baseless. That, along with finding Reich failed to conduct an adequate investigation, supports Rule 11 sanctions. And, such baselessness in addition to bad faith supports inherent authority sanction of DNA Sports itself.

*First*, this order finds DNA Sports' complaint baseless. A prior order found glaring holes in the allegations against the union (Dkt. No. 53). Exhausted of defamation and other tort claims, plaintiffs sought relief under inapplicable statutes. To allege Lanham Act violations, plaintiffs must show that defendants made a false statement of fact in a commercial advertisement about its own or another's product, that the statement actually and materially deceived its audience, and that plaintiff has been or is likely to be injured as a result of the false statement in the form of diverted sales or loss of goodwill. *Southland Sod Farms v. Stover Seed Co. Eyeglasses*, 108 F.3d 1134, 1139 (9th Cir. 1997). False advertising claims brought under state law require showing that defendants participated in or had control over the untrue or misleading advertisements. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995–96 (9th Cir. 2006). Yet, DNA Sports admit that their products contain naturally-occurring IGF-1. They concede that the league and the union have banned IGF-1 in its natural and synthetic forms under their Joint Drug Prevention and Treatment Program. And they acknowledge that NSF International, an independent product-testing organization, certifies products as "safe for sport" after testing for banned substances enumerated in the drug program (Compl. at ¶¶ 8, 18, 29). So, DNA Sports brought false advertising and unfair competition claims, contesting the "certified for sport" declaration on several products that allegedly contained IGF-1, without ensuring they sued the right defendants (*i.e.*, that defendants made, caused, or induced the allegedly false statement), showing requisite harm (*i.e.*, that plaintiffs suffered injuries like

diverted sales or loss of goodwill), or requesting appropriate relief (*i.e.*, courts cannot enjoin action that has already ceased on its own accord) (Dkt. No. 53). Such baselessness supports an inference of improper motive. *See Townsend*, 929 F.2d at 1365.

The league's prior motion for sanctions would have been granted for similar reasons. The majority of DNA Sports' complaint rehashed prior suits against the league and relied on conclusory statements to baselessly allege Lanham Act, false advertising, and unfair competition claims. The complaint recapitulated the misdeeds of the league's investigations that inspired DNA Sports' February 2015, July 2016, November 2016, and January 2019 suits which were all settled by prior rulings (Compl. at ¶¶ 15, 19–20). It then invoked the press release that was the subject of the March 2018 suit to maintain that though it is true DNA Sports' supplements contain banned IGF-1, the league publicly maligned plaintiffs and "essentially bann[ed] [them] from ever working again in any" league-related capacity (*Id.* at ¶ 24). This after admitting that DNA Sports *never sold its supplements to league players* on account of a non-competition agreement (*Id.* at ¶ 18). Finally, DNA Sports alleges that league players and coaches consume products with IGF-1 and have never been disciplined and several league-endorsed products that compete with DNA Sports contain IGF-1. All this lending itself to false advertising and unfair competition.

Recall that these claims require, among others, both a false statement and harm, such as lost goodwill or diverted sales. *See Southland*, 108 F.3d at 1139; *First Alliance*, 471 F.3d at 995–96. Yet DNA Sports' complaint failed to show how the targeted products (the league-licensed Gatorade "Recover" whey protein bars, Cytosport Muscle Milk protein shakes, and Eyepromise nutritional supplements) compete with DNA Sports' own products, which cost hundreds of dollars more and contain a banned substance. Further, plaintiffs failed to show how the use of the logo or the press release — the alleged commercial speech here — diverted sales from DNA Sports to these specific products and how this speech was false. Without these elements, their allegations against the league are baseless.

*Second*, given the obvious pitfalls in DNA Sports' complaint, this order finds Attorney Reich failed to reasonably investigate these claims. To assess whether an attorney has

11

conducted an adequate pre-filing investigation, courts must consider factual questions regarding the nature of the inquiry and must determine whether the legal issues raised were warranted. *Cooter & Gell*, 496 U.S. at 399.  DNA Sports and Attorney Reich alleged that they "consulted with several experts" about whether whey-protein products endorsed by the league would contain natural IGF-1 (allegedly, they would) (Reich Decl. at ¶¶ 9–10).  DNA Sports did not test these products for IGF-1 but instead relied on what it and its experts deemed "common sense" to determine that all these certified for sport products contained IGF-1 (*id.* at ¶ 11; Opp. Br. at ¶ 6).  Beyond this, a cursory investigation into Lanham Act, false advertising, and unfair competition claims would have revealed the commercial speaker, material-deception, and injury elements which could have saved DNA Sports' complaint or at least, saved the league and the union the trouble of motion practice.  Attorney Reich failed in this regard.

*Third*, this order finds DNA Sports filed its complaint to harass the league and the union.  DNA Sports' history of litigation demonstrates both that this suit is brought in bad faith to vex and that dismissal alone will not dissuade DNA Sports from trying again.  Though this is only the first suit against the union, it is the *sixth* suit arising out of the *same original circumstances* against the league.  As detailed in the prior order, prior dismissals and sanctions have not tempered DNA Sports' vendetta against the league.  It has repeatedly dismissed its cases against the league and companies, either voluntarily or in response to court orders.  Yet, true to its reliable pattern, after dismissal, DNA Sports has simply developed a different theory in a different court based on the same facts and continued its pursuit of the league.  In 2018, after several these dismissals, a New York state court imposed monetary sanctions on DNA Sports and its previous counsel for frivolous and harassing conduct against the league.  *Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*, No. 159953/2016, 2018 WL 2739433 (N.Y. Sup. Ct. June 7, 2018).  As DNA Sports' litigation history demonstrates, however, these sanctions have not fazed DNA Sports.  Rather, it has continued to sue the league, affiliated entities, and now the union, this despite outstanding monetary sanctions for troublesome lawyering.  Considering this prior misconduct, dismissal alone will not deter DNA Sports from filing further baseless and harassing suits.

Indeed DNA Sports and Attorney Reich refuse to dismiss outstanding cases against the league, proving that DNA Sports does not intend to change its course of conduct.  After the August 1 order, the league offered to withdraw its motion for sanctions "if Plaintiffs [would] dismiss with prejudice all outstanding litigation against the MLB defendants and agree to bring no further litigation against the MLB defendants" (Dkt. No. 60 at 14).  Although plaintiffs dismissed the instant action *with prejudice*, DNA Sports still has outstanding litigation against some of the league's clubs and commissioner.  These remain intact despite the league's offer to withdraw their sanctions motion entirely.

Given DNA Sports' persistence, it may be that no amount of sanctions will deter it from continuing its crusade.  The requested amount of fees, however, will at least compensate the union and the league for the harm done here.  As this is the sixth case against the league (at least), a full award is appropriate.  Though this is the first suit against the union, a full award is justified because it is part of an entrenched campaign of harassment.

## CONCLUSION

For the reasons stated herein, defendant baseball union and defendant baseball league's motions for attorney's fees are **GRANTED**.  Plaintiffs, DNA Sports Performance Lab, Inc. and Neiman Nix, jointly, shall pay the Major League Baseball Players Association's attorney's fees for this suit, **$104,039.08**.  DNA Sports Performance Lab, Inc. and Neiman Nix, jointly, shall pay Major League Baseball **$33,407.17**.  The sums are due **NOVEMBER 20 AT 5:00 P.M.**  Inasmuch as this appears to be Attorney Reich's first appearance before the undersigned, and given the importance of not dissuading representation of difficult clients, the motion as to Attorney Reich will be held in abeyance to see the extent to which he engages in ongoing harassment.  The Court retains jurisdiction for this limited purpose.

**IT IS SO ORDERED.**

Dated:  October 27, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13