UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DNA SPORTS PERFORMANCE LAB, INC. and NEIMAN NIX,<br><br>Plaintiffs,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA LP; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; and MAJOR LEAGUE BASEBALL ENTERPRISES, INC,<br><br>Defendants. | No. C 20-00546 WHA<br><br>**OMNIBUS ORDER RE SEALING, CIVIL CONTEMPT, AND ATTORNEY'S FEES** |

Following plaintiffs' failure to pay an award of fees, post bond, or move for a stay, defendants seek an order to show cause regarding civil contempt. Plaintiffs now argue incapacity to pay and their counsel, Attorneys Lance Reich and Ronald Richman, having so far avoided sanction, have moved to withdraw. The Court previously held counsel's motion to withdraw in abeyance, given the severity of civil contempt and ordered disclosure of plaintiffs' financial records to defense counsel (Dkt. No. 82). Neiman Nix has been deposed in his personal capacity and as representative for DNA Sports Performance Lab, Inc. As detailed below, this order **HOLDS PLAINTIFFS IN CIVIL CONTEMPT** and **GRANTS** defendants' prior motion for attorney's fees against Attorney Reich.

1.   **SEALING AND CONFIDENTIALITY.**

We first address some administrative matters. Plaintiffs seek to file a large amount of material under seal and Nix refused to specify various recent settlement amounts in his deposition.

Specifically, plaintiffs' seek to seal Nix's financial information, a deposition transcript discussing those finances, and references to the matter filed with defendants' supplemental brief. Plaintiffs have not provided a declaration justifying the sealing, per Civil Local Rule 79-5(d)(1)(A). Counsel contends the Court authorized the sealing on the record at the January 6 case management conference. Not so. There the undersigned articulated a verbal protective order to govern the information exchange and deposition. But the local rule expressly provides that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." By not supplying the showing required, plaintiffs have thus waived their interest in sealing. Nevertheless, this order finds good cause to seal Nix's personally-identifiable information, such as his social security number, birthday, passwords, or bank account numbers. This sealing request is otherwise **DENIED**. Defendants shall please refile their supplemental brief and supporting documents in compliance with this direction by **FEBRUARY 11 AT NOON**.

Next, plaintiffs seek to seal portions of their rebuttal brief. This time they provide a declaration in support, though it provides no more than a reference to a designation of "Attorney's Eyes Only" under the January 6 protective order as grounds for sealing. Again, this is insufficient. Moreover, the unredacted document filed for chambers review contains no marking of the redactions, seriously frustrating review of the propriety of sealing and violating Local Rule 79-5(d)(1)(D). This request is also **DENIED**.

Further, the details of plaintiffs' settlements in recent years touches directly upon their incapacity defense to civil contempt. This order finds no good cause to seal such information. The public has a vital interest in understanding the bounds and justifications for a party's apparent disregard for a court order. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Deposition questions regarding the settlement *amounts* were

1  proper, should have been answered, and will be made public.  Plaintiffs shall either provide

2  that information in sworn declarations by **FEBRUARY 11 AT 5:00 P.M.** or the depositions will be

3  reopened for that purpose.

4  Plaintiffs shall promptly notify any third parties whose confidentiality interests may be

5  affected that such parties must promptly appear and object to the above, else the interests will

6  be waived.

### 2. CIVIL CONTEMPT.

"Absent a stay, 'all orders and judgments of courts must be complied with promptly.'" *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).  A party may be held in contempt where clear and convincing evidence show its violation of a "specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).  Civil contempt coerces compliance with an order and compensates the prejudiced party. *United States v. Asay*, 614 F.2d 655, 659 (9th Cir. 1980). "The sole question is whether a party complied with the district court's order." *Donovan*, 716 F.2d at 1240.  Genuine inability to comply is a complete defense, but self-induced inability is not.  *Asay*, 614 F.2d at 660.

Our core facts are undisputed.  An October 27 order awarded attorney's fees to defendants Major League Baseball (the league) and the Players Association (the union), totaling $137,446.25, due November 20 at 5:00 p.m. (Dkt. No. 66).  That date has passed. Plaintiffs have paid nothing.  Absent justification, contempt is warranted.

Plaintiffs have appealed the award of fees and retained new counsel for that proceeding. But if plaintiffs believed the instant fee award improper, "their remedy was to appeal and request a stay pending the appeal." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).  Indeed, plaintiffs have neither moved for a stay nor offered supersedeas bond.  *Contra* Rule 62; *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985).

Instead, plaintiffs now argue their incapacity to pay the fees award.  Setting aside the late hour of this argument, having only been raised *after* the payment deadline passed, this order

still finds it uncompelling. On the one hand, plaintiffs do appear at first glance to lack the funds to pay the attorney's fees. The sparse information provided paints a bleak financial picture. DNA Sports' 2019 tax return lists a little over five thousand dollars in revenue (Dkt. No. 86-5 at 20) and Nix testified on the company's behalf that it generated no more than two thousand five hundred dollars in revenue in 2020 (DNA Sports Tr., Dkt. No. 86-6, at 44–45). Nix's financial records show four bank accounts totaling little more than one thousand dollars in his name and he testified to holding no more than seven thousand dollars in assets (Dkt. No. 86-5 at 7–14; Nix. Tr., Dkt. No. 86-6, at 114–15). He testified to lacking a permanent residence for the past five years and to living out of his truck until he sold it this past summer. Throughout, Nix testified, he has subsisted on the support of friends and family (Nix. Tr. at 21–22, 114–15, 118–21). On this portion of the record, it appears that plaintiffs cannot pay the fees award.

On the other hand, the record plainly shows that plaintiffs have manufactured their poverty, though, as will be seen, it is difficult to place the blame for this solely on Nix. Money bound for Nix over the last several years has routinely found its way into the pockets of his attorneys. At his deposition, Nix detailed four suits (just a snippet of his litany of suits) with settlements ranging from tens to several hundreds of thousands of dollars. In one, Nix paid about one third of the settlement to his attorneys. In the rest, his attorneys took nearly the entire settlement. All told, the attorneys have taken at least several hundred thousand dollars in legal fees over the last several years (Nix. Tr. 126–42).

And, they didn't just take settlement proceeds. They took the proceeds of DNA Sports' equipment liquidation, of the sale of Nix's 1987 Pontiac Fiero, and of the sale of the 2003 Dodge Ram that Nix lived out of until last summer. While by no means the only attorney in the mix, Nix's current counsel, Lance Reich, partook in these spoils. Indeed, Nix testified that he has paid Attorney Reich between one hundred to three hundred fifty thousand dollars so far (Nix. Tr. at 37, 68–69, 160).

Paying one's own attorney's fees rather than court-ordered fees is a choice. On those grounds alone, plaintiffs' current incapacity to pay the ordered fees is self-induced. But it goes

4

further. Plaintiffs paid his attorneys (including *current-counsel* Reich) with proceeds of settlement payments in January 2020, well after both the league and union had warned that they would seek sanctions if plaintiffs brought this frivolous suit, and September 2020, *after* an August 1 order had dismissed the woefully inadequate complaint as to the union and warned that plaintiffs ought to walk away before a future order would decide whether to impose sanctions (Nix. Tr. at 80–82, 135–37; Dkt. Nos. 19-1 at 54; 42-2 at 170–71; 53). Simply put, plaintiffs used counsel, including Attorney Reich, as a depository for settlement funds *when they anticipated an adverse award of fees here*. Plaintiffs' poverty is unquestionably self-induced. *See Asay*, 614 F.2d at 660.

This order **HOLDS PLAINTIFFS IN CIVIL CONTEMPT**. Nevertheless, this order hesitates to impose further financial penalties on a man living on the compassion of his friends and family. A subsequent order may do so; but for now plaintiffs shall specify ***with particularity*** any non-pecuniary sanctions which will actually and effectively prevent further harassing litigation. Plaintiffs' response is due **FEBRUARY 18 AT NOON**.

3. **COUNSEL'S JOINT LIABILITY FOR FEES.**

Shifting gears to a separate matter from civil contempt. The October 27 fee-award order considered imposing joint liability upon Attorney Reich. It certainly could have. Rule 11 prohibits baseless filings made without reasonable and competent inquiry. *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–63 (9th Cir. 1990); *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997). The prior order found Attorney Reich had failed his duty under the rule. But, given this appeared to be his first appearance before the Court and "given the importance of not dissuading representation of difficult clients," the prior order held the matter of Attorney Reich's joint liability for the fee award "in abeyance to see the extent to which he engages in ongoing harassment."

Now, given the fee award has not been paid, and in light of the revelation that Attorney Reich has been handsomely paid *and* has secreted away funds, this order now takes the matter out of abeyance and extends joint liability for the fee award to Attorney Reich to the extent of

5

any and all fees, reimbursement for expenses, and other funds of any kind received by him from plaintiffs in any case or in concert with plaintiffs. Two further points bear stating.

*First*, Attorney Reich has not been forthright with the Court in advancing plaintiffs' incapacity defense. As an officer of the court, an attorney owes a duty of candor. "A lawyer shall not . . . knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal." Moreover, "[t]he duty of candor is not simply an obligation to answer honestly when asked a direct question by the trial court. It includes an affirmative duty to inform the court when a material statement of fact or law has become false or misleading in light of subsequent events." *Levine v. Berschneider*, 56 Cal. App. 5th 916, 921 (2020) (citing *In re Reno*, 55 Cal. 4th 428, 283 P.3d 1181 (2012)); Cal. R. Prof. Cond. 3.3.

Attorney Reich prepared and filed the materials advancing plaintiffs' incapacity defense. As detailed above, those documents do indeed show that Nix and DNA Sports lack the funds to pay. But as also detailed above, Nix *then* revealed upon cross-examination at his deposition the extraordinary amount of money the attorneys, *including Attorney Reich*, have taken from Nix in recent years. Indeed, since just last summer, the six thousand dollars from the sale of Nix's truck went to either Mr. Reich or prior counsel in Florida. Last September 2020, *after* dismissal of this case and defendants' motions for fees, and just *one month* before the award of fees, a fifty to one hundred thousand dollar settlement also went to Nix's Florida counsel. And, in recent weeks, Nix scrounged six thousand dollars from family and friends to pay Attorney Paul Golden to appeal the instant fee award. The facts undermining Attorney Reich's argument to the Court were in his control and he failed to disclose them.

*Second*, Attorney Reich has continued to enable these frivolous lawsuits. "The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity, — *uberrima fides*." *Cox v. Delmas*, 99 Cal. 104, 123 33 P. 836, 839 (1893); *Rader v. Thrasher*, 57 Cal. 2d 244, 250, 368 P.2d 360, 363 (1962). It is difficult to see how those best served by Nix's relationship with his attorneys (including Attorney Reich) are any other than *the attorneys themselves*. Even under a charitable read of

6

Nix's deposition testimony and our record, Attorney Reich either knew or willfully ignored the facts that DNA Sports had been hemorrhaging money for years; that Nix lived out of his car; that Nix lives on the charity of friends and family; that the suit was baseless; and that defendants would seek substantial sanctions. Put plainly, Attorney Reich took potentially hundreds of thousands in legal fees from a man living in his truck and on charity to prosecute a case which counsel should have known would result in a significant adverse fees award.

To this extent, defendants' motions for attorney's fees against Attorney Reich are **GRANTED**. This order again emphasizes that no part of the matter of civil contempt extends to Attorney Reich. This order merely takes out of abeyance and rules on the matter of his liability for the unpaid fee award, stemming from his conduct in prosecuting this frivolous case and his misconduct since the prior order held the matter in abeyance. Attorney Reich shall be liable up to the entire attorney's fees award, though for no greater amount than he has received for his representation of or connection with plaintiffs in any matter. If the fee award exceeds Attorney Reich's receipts from plaintiffs, he shall provide a full accounting of the funds received from plaintiffs demonstrating such. All this is due **MARCH 4 AT 5:00 P.M.**

The motion to withdraw by Attorneys Reich and Richman remains held in abeyance pending appearance of new counsel on behalf of plaintiffs.

**IT IS SO ORDERED**.

Dated: February 4, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE