**KOBRE & KIM LLP**
Michael Ng (State Bar No. 237915)
Michael.Ng@kobrekim.com
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Adriana Riviere-Badell (*appearance pro hac vice*)
Adriana.Riviere-Badell@kobrekim.com
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

*Attorneys for Defendants Major League Baseball; Major League Baseball Enterprises; and MLB Advanced Media, L.P.*

**ALTSHULER BERZON LLP**
Michael Rubin (State Bar No. 80618)
mrubin@altshulerberzon.com
Hunter B. Thomson (State Bar No. 330533)
hthomson@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415-421-7151
Facsimile: 415-362-8064

Jeffrey D. Perconte (*appearance pro hac vice*)
jperconte@mlbpa.org
Major League Baseball Players Association
12 East 49th Street
New York, NY 10017
Telephone: (212) 584-6516
Facsimile: (212) 584-6616

*Attorneys for Defendant
Major League Baseball Players Association*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEIMAN NIX, an individual; and DNA SPORTS PERFORMANCE LAB, INC., a Florida corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>MAJOR LEAGUE BASEBALL, et al.,<br><br>Defendants. | Case No.: 3-20-cv-00546-WHA<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR OSC RE CONTEMPT**<br><br>Hearing Date: January 21, 2021<br>Time: 8:00 a.m.<br>Courtroom: Courtroom 12, 19th Floor<br>Judge: Hon. William H. Alsup<br>Complaint Filed: January 23, 2020 |

**TABLE OF CONTENTS**

Introduction ..............................................................................................................................1

Argument .................................................................................................................................3

    I.  Plaintiffs Should be Held in Contempt Because They Chose to Disregard the Court's Sanctions Award Despite Having Available Sources of Funds ......................3

    II.  Plaintiffs' Attorney Has Been Complicit in Plaintiffs' Abusive Litigation Conduct and Should be Jointly and Severally Liable for the Sanctions Award...........7

        A.  Nix's Deposition Establishes that His Attorney Was Complicit in His Vendetta Against MLB and MLBPA.................................................................8

        B.  Plaintiffs' Counsel's Harassing Conduct Has Continued Since the Sanctions Order Issued.................................................................................10

Conclusion..............................................................................................................................12

# TABLE OF AUTHORITIES

**Federal Cases**

*DNA Sports Performance Lab Inc. et al. v. Club Atlantis Condominium Ass'n*,
  219 So. 3d 107 (Fla. 3d DCA 2003) ..................................................................................5

*Federal Trade Commission v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999)......................................................................................4, 5

*Loftus v. SE Pennsylvania Transp. Auth.*,
  8 F.Supp.2d 464 (E.D. Pa. 1998), *aff'd mem.*, 187 F.3d 626 (3rd Cir. 1999) ..........................4

*Oliner v. Kontrabecki*,
  305 B.R. 510 (N.D. Cal. 2004)..........................................................................................6

*Prop. Reserve, Inc. v. Wasson*,
  No. CV 12-00649 SOM-KSC, 2013 WL 12177461 (D. Haw. Nov. 19, 2013) .....................7

*SEC v. Bilzerian*,
  112 F.Supp.2d 12 (D.D.C. 2000) .....................................................................................4

*SEC v. Goldfarb*,
  No. C 11-00938 WHA, 2012 WL 2343668 (N.D. Cal. June 20, 2012) ...............................4

*SEC v. Musella*,
  818 F.Supp. 600 (S.D.N.Y. 1993).....................................................................................4

*SEC v. Universal Express, Inc.*,
  546 F.Supp.2d 132 (S.D.N.Y. 2008) .................................................................................4

*United States v. Asay*,
  614 F.2d 655 (9th Cir. 1980).............................................................................................6

**Introduction**

On December 23, 2020, Plaintiffs Neiman Nix and his company, DNA Sports Performance Lab, Inc., submitted to the Court an *in camera* declaration and documents in support of their contention that they could not pay even a penny of the sanctions award imposed against them on October 27, 2020 (Dkt. 66, the "Sanctions Order"). Plaintiffs did not, however, serve those documents on Defendants, in plain violation of the Court's December 12, 2020 Order (Dkt. 75). At the January 6, 2021 status conference, the Court ordered Plaintiffs to produce those documents to Defendants and to appear for deposition to be examined about those documents and Plaintiffs' claimed inability to pay.

Plaintiffs produced those documents later that day, and were deposed on January 12, 2021. It is now clear that Plaintiffs and their attorney Lance Reich (who defended the depositions) have not been truthful or forthcoming with the Court, let alone with Defendants. Plaintiffs and their attorney have long known that Neiman Nix has no steady source of income and principally gets by through a combination of gifts and handouts from family and friends, and by filing and settling lawsuits. He uses the proceeds from those settlements to foment even more litigation—now almost exclusively against MLB and in MLB-related cases (including against media such as AP and ESPN and, in this case, the players union).

While Plaintiffs assert a current inability to pay the Court's sanctions award, their documents do not include *any* information about Nix's or his company's income or sources of funds in calendar year 2020. Those materials were limited to information (which turned out to be incomplete and inaccurate) pertaining to 2019. When Defendants sought to probe Nix's *2020* income, Nix and his company refused, on the advice of attorney Reich, to answer questions about the settlement amounts Nix received from two lawsuits that he settled in January 2020 and September 2020, although he admitted having received such settlements. On advice of attorney Reich, Nix also refused to testify about the sworn statements in his December 9 and December 29, 2020 declarations to this Court, which recounted in summary fashion the legal advice he had solicited and received from his attorneys pertaining to this lawsuit—thus waiving any attorney-

client privilege (which is also waived to the extent Nix blames Reich for his wrongful, sanctionable litigation conduct). *See* Dkt. 73-5, ¶ 6; Dkt. 79-1, ¶¶ 6, 13, 80.

Despite Nix's stonewalling and his attorney's complicity in that stonewalling (and in the entire course of events leading up to the sanctions award, the non-payment, and the upcoming contempt hearing), Nix *admitted* having received a substantial settlement in September 2020 and *admitted* having paid $6,000 in late December 2020 or early January 2021 to retain New York attorney Paul Golden (who had represented Plaintiffs in their recent unsuccessful appeal from the New York state trial court's sanctions award in favor of MLB) to pursue Plaintiffs' frivolous appeal from this Court's October 27, 2020 Sanctions Order. Nix also revealed that, while contending that he has no income and no sources of revenue, he somehow managed to pay approximately *one million* dollars in attorney's fees by cobbling together small gifts from family and friends, and from the proceeds of settlements.

Plaintiffs' decision not to pay any portion of this Court's October 27 sanctions award is inexcusable and warrants the imposition of civil contempt. In addition, it is now clear that Plaintiffs' attorney Lance Reich has been complicit in Plaintiffs' sanctionable and contemptuous conduct. Because Reich's actions and omissions have furthered Plaintiffs' campaign of harassment and their "vendetta" against MLB and MLBPA (including by magnifying the costs and delays of these proceedings), both before and during the three months after the Sanctions Order, the Court should no longer hold sanctions against Reich "in abeyance" but should order Reich jointly and severally liable with Plaintiffs to pay the outstanding sanctions award. *See* Oct. 27 Sanctions Order (Dkt. 66) at 13 ("Inasmuch as this appears to be Attorney Reich's first appearance before the undersigned, and given the importance of not dissuading representation of difficult clients, the motion as to Attorney Reich will be held in abeyance to see the extent to which he engages in ongoing harassment. The Court retains jurisdiction for this limited purpose.").

The Court already found that Reich, along with his clients, engaged in sanctionable conduct. *See, e.g., id.* at 11–12. Reich's post-October 27 conduct—including his filing of a frivolous appeal from the sanctions award, his failure to make any disclosure of Plaintiffs' claimed

inability to pay sanctions until several days *after* the court-ordered payment deadline had expired, his failure to disclose Plaintiffs' receipt of settlement funds in September 2020 or to disclose the funds they used to retain a new appellate attorney in January 2021—coupled with the extensive evidence of his pre-October 27 sanctionable conduct (which Defendants now have reason to believe is further documented in the materials submitted to the Court *in camera* in support of Reich's motion to withdraw, *see* Dkt. 75), fully support extending the sanctions award to Reich as well.

Nix is a serial, vexatious litigant. He made clear in his most recent declaration and accompanying rant to the Court during the January 6, 2021 status conference that his vendetta against MLB and MLBPA continues unabated. During the January 12 deposition, among other things, Nix accused defense counsel of hacking, human trafficking, and wire fraud, and insisted that all Major League Baseball players must be banned from consuming breast milk and oxygen. But Nix's attorneys are his enablers. They are complicit in his wrongful conduct. Unless the Court makes clear that attorneys who knowingly support Nix's sanctionable conduct are themselves sanctionable, this ongoing abuse of the judicial process to attack and harass will never end.

Defendants have no idea how Neiman Nix got the one million dollars he claims to have paid the attorneys who sign their names on the pleadings he directs them to file. The financial documents he produced certainly do not disclose the source of those funds. But absent an order making Nix's attorney in this case jointly and severally liable for sanctions, it is hard to imagine how this vendetta will end—because by claiming a complete inability to pay, Nix seeks to completely avoid the deterrent effect of sanctions.

**Argument**

I. **Plaintiffs Should be Held in Contempt Because They Chose to Disregard the Court's Sanctions Award Despite Having Available Sources of Funds**

When a party deliberately violates a court's order and seeks to defend its defiance by asserting that compliance was impossible, that party can only avoid an order of civil contempt by demonstrating "categorically and in detail" that compliance—even in part—is truly impossible. *See, e.g., Federal Trade Commission v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999).

1  Inability to comply *in part*, like a self-induced inability to comply, is never a defense. To avoid civil
2  contempt, the alleged contemnor must document a complete, involuntary inability to comply with any
3  aspect of the court order that it violated. *See, e.g.*, *SEC v. Musella*, 818 F.Supp. 600, 602 (S.D.N.Y.
4  1993) (contemnor "must pay what he or she can"); *SEC v. Universal Express, Inc.*, 546 F.Supp.2d
5  132, 140 (S.D.N.Y. 2008) (contemnor "is not entitled to satisfy the disgorgement judgment at his
6  convenience and only insofar as it does not cause him any discomfort"); *SEC v. Bilzerian*, 112
7  F.Supp.2d 12, 17 (D.D.C. 2000) ("Inability to comply is only a complete defense if he cannot pay any
8  of the judgment; otherwise, he must pay what he can."); *Loftus v. SE Pennsylvania Transp. Auth.*, 8
9  F.Supp.2d 464, 469 (E.D. Pa. 1998), *aff'd mem.*, 187 F.3d 626 (3d Cir. 1999) ("unless a party is
10 completely unable to comply with the Court's Order's [sic] due to poverty, he must comply to the
11 extent that his finances allow him."); *SEC v. Goldfarb*, No. C 11-00938 WHA, 2012 WL 2343668 at
12 *4–6 (N.D. Cal. June 20, 2012) (rejecting defense where contemnor's financial records documented
13 lack of good faith effort to pay down balance).

14    Plaintiffs Nix and DNA Sports Performance Lab, Inc. did not raise their alleged inability
15 to pay as a defense to Rule 11 and inherent-authority sanctions, even though they and their
16 attorney were fully aware of Plaintiffs' financial condition throughout the course of this litigation.
17 Nor did Plaintiffs inform the Court prior to the November 20, 2020 payment deadline that they
18 had no intention of paying those sanctions. Not until January 6, 2021, *after* this Court reprimanded
19 Plaintiffs and their attorney for violating its December 12, 2020 Order by refusing to serve
20 Defendants with the financial documents that Plaintiffs had submitted *ex parte* to the Court *in
21 camera*, did Defendants produce any documentation of their purported inability to pay. But those
22 documents are plainly insufficient to establish impossibility, especially now that they have been
23 tested in the crucible of deposition. *See K.D. v. United Airlines, Inc.*, No. 217CV02825RFBNJK,
24 2019 WL 177468, at *1 (D. Nev. Jan. 10, 2019) ("The Court finds that Plaintiff's bare bones,
25 unsupported assertions of indigence are insufficient to meet the burden of demonstrating an
26 inability to pay").

27    The sum total of Plaintiffs' submission consists of: (1) eight paragraphs in a conclusory,
28 self-serving declaration, (2) cover pages of five bank statements, (3) a photograph of an ATM

receipt, and (4) federal tax returns from 2019, with *no* information about any 2020 income and *no* information documenting the many "gifts" from family members that Nix purports to have received in recent years—or the source of his payment of one million dollars to the various attorneys who have represented him in his vendetta against MLB and MLBPA and other matters (including to Lance Reich, who was paid from the proceeds of a January 2020 settlement). Ng Supp. Decl. Ex. A at 6–20; *see* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 142:1-143:15. Plaintiffs' failure to establish "categorically and in detail" why they did not pay *any* portion of the October 27 sanctions award by the November 20 deadline precludes Plaintiffs from establishing their impossibility defense to contempt. *Affordable Media*, 179 F.3d 1228 at 1241.

Plaintiffs' declaration and attached documents fail to disclose significant, material information about their financial resources, demonstrating that they have not been honest with the Court. In the Court-ordered depositions of Nix and his company conducted on January 12, Nix disclosed that on September 23, 2020, following the parties' voluntary dismissal with prejudice here, Plaintiff DNA Sports settled a separate lawsuit, *DNA Sports Performance Lab Inc. et al. v. Club Atlantis Condominium Ass'n*, 219 So. 3d 107 (Fla. 3d DCA 2003). On the advice and with the consent of his attorney, Nix refused to reveal the exact amount of that settlement, but eventually admitted it was somewhere between $50,000 and $100,000. Ng Supp. Decl. Ex. B, Nix Dep. Tr. 137:17. That settlement was not reported to the Court in Nix's declaration, in the brief filed in opposition to contempt, or in the financial documents that purportedly established Plaintiffs' inability to pay anything toward the sanctions award. Although Nix asserts that those settlement funds were paid to his lawyers in that case, he admitted to personally receiving some unstated portion of those proceeds. *Id.* at 137:9–12. Nix also admits that within the past few weeks—long after the Court's November 20, 2020 deadline for paying the sanctions order had come and gone—he elected to pay one of his attorneys, Paul Golden, $6,000 in legal fees, in order to prosecute Plaintiffs' frivolous Ninth Circuit appeal from this Court's sanctions award (which attorney Reich had noticed and filed). Ng Supp. Decl. Ex. B, Nix Dep. Tr. at 120:3–121:3. Nix also testified that he continues to pay other legal fees exceeding $500 a month—although he would not be more specific. Ng Supp. Decl. Ex. B, Nix Dep. Tr. 119:23–25. Though Nix claims

that his business is defunct, that he is unemployed and that his savings have been depleted, one thing remains clear: from whatever source, he continues to find money to pay lawyers.

The reality is that Nix is a professional litigant, who earns his living, such as it is, by filing serial lawsuits and betting that enough of them will result in settlement proceeds that he can keep using to find attorneys willing to file new lawsuits on his behalf—and to avoid the deterrent effect of a sanctions award by pleading poverty whenever he is caught. Together with his company, Nix has apparently received between $315,000 and $1,250,000 in litigation settlements over the past five years. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. at 126:18–142:22. He has elected to roll those proceeds into additional litigation, believing that he has, as he put it in sworn testimony, "hit the jackpot" with his lawsuits against MLB and related entities. DNA Dep. Tr. 39:10. That his quixotic pursuit of litigation has allegedly left him with an empty bank account does not excuse his failure to comply with this Court's sanctions award, because self-induced impossibility is never a defense to contempt. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (defendant cannot avoid civil contempt if its inability to pay was self-induced); *see Oliner v. Kontrabecki*, 305 B.R. 510, 523 (N.D. Cal. 2004). Even now, under the direct orders of this Court and the New York trial court to pay sanctions, he has elected to spend what little he has left on new legal pursuits rather than to comply with those orders. For example, just hours before this Court's deadline for payment to Defendants here, Nix personally paid $505 to file notice of a frivolous appeal from this Court's judgment, even after being informed by Defendants that an appeal would not discharge Plaintiffs' duty to comply with the sanctions order. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 118:1–12; Ng Supp. Decl. Ex. A at 8.

Even if Plaintiffs had spent much of what they received from prior settlements or other sources to fund their litigation vendetta, they clearly had *some* money remaining to make payment of *some* of the amount owed to Defendants. Instead, they flagrantly ignored the Court's order, letting the November 20 deadline expire without word or deed. Plaintiffs' own submissions show that Plaintiffs had at least $2,031.90 in their bank accounts as of November 2020. Ng Supp. Decl. Ex. A at 6–14. And Nix now estimates his net worth to be approximately $7,000. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 114:20–115:2. Plaintiffs' failure to make any effort to pay any portion

of the sanctions award is clearly contemptuous. *See Prop. Reserve, Inc. v. Wasson*, No. CV 12-00649 SOM-KSC, 2013 WL 12177461, at *2 (D. Haw. Nov. 19, 2013) (finding belated claim of inability to pay unpersuasive where sanctioned party made no effort to pay even a portion of the sanction).

These are not innocent actions without consequences. Plaintiffs' frivolous filings and years of threats and lawsuits are thoroughly documented in Defendants' Rule 11 and related filings. Plaintiffs' and their attorneys' utter disregard for the Court's orders have resulted in further harassment of Defendants and have forced Defendants and the Court to endure multiple rounds of briefing on sanctions, contempt, withdrawal, and refusal to provide financial disclosures. And of course, this entire mess could have been avoided had Plaintiffs and their counsel heeded the *twelve* separate warnings from Defendants and their counsel about the sanctionable nature of Plaintiffs' claims in this lawsuit, which never had any chance of success on the merits and which now appear to have been filed in an effort to strong-arm yet another settlement designed to punish Defendants and to fund Nix's unshakable litigation habit. *See* Michael Rubin Decl. in Support of Defendant MLBPA's Motion for Sanctions Pursuant to Rule 11 and the Court's Inherent Powers Exs. A–R, Dkt. 19–1 at 11–81; Riviere-Badell Decl. in Support of MLB Defendants' Motion for Sanctions Ex. P, Dkt. 42-2 at 169–171; Michael Rubin Reply Decl. in Support of Defendant MLBPA's Motion for Sanctions Ex. A, Dkt. 38-1 at 5-23. To allow Plaintiffs to escape consequence would simply invite more of the same bad conduct.

**II.  Plaintiffs' Attorney Has Been Complicit in Plaintiffs' Abusive Litigation Conduct and Should be Jointly and Severally Liable for the Sanctions Award**

The Court's Sanctions Order imposed monetary sanctions on Plaintiffs for their bad-faith conduct in filing a frivolous complaint in this case as part of their "vendetta" against MLB and MLBPA. Dkt. 66. That Order found that the Plaintiffs' Complaint was "baseless," filled with "glaring holes," and was filed in bad faith, with the improper motive "to harass the league and the union." *Id.* at 10–12. Nevertheless, the Court narrowly held off on imposing sanctions against Plaintiffs' attorney Lance Reich, while awaiting further developments. Even though the Court concluded that Reich had engaged in sanctionable conduct by filing a frivolous complaint riddled

with "obvious pitfalls" and had "failed to reasonably investigate those claims," which were filed for an improper purpose, the Court held the sanctions motion in abeyance as to Reich "to see the extent to which he engages in ongoing harassment" going forward. Because that harassment has continued—and because Nix's deposition makes clear that Reich has been complicit in Nix's vendetta and an enabler of his sanctionable conduct (or perhaps, as Nix now seems to assert, principally responsible for that sanctionable conduct) and for continuing this litigation in the case of Defendants' Rule 11 motion—Plaintiffs' attorney should be held jointly and severally liable for the sanctions award as well.

### A. Nix's Deposition Establishes that His Attorney Was Complicit in His Vendetta Against MLB and MLBPA

Nix's January 12 deposition revealed that Reich has been aware since before this lawsuit was filed that Nix would claim to be financially unable to pay any sanctions award that might be issued if Defendants prevailed on their pre-litigation warnings and post-filing sanctions motions. Reich was aware of Nix's transition from an unsuccessful small business owner into an almost equally unsuccessful professional plaintiff who claims to be indigent while funneling massive amounts of money to his attorneys' fees. While Reich was content to make a series of empty threats against MLB and MLBPA in the months leading up to this litigation (to which Defendants responded by pointing out the factual and legal errors in Reich's assertions and making clear that any complaint would be met with a request for sanctions), as soon as Nix paid Reich the proceeds from another settlement in January 2020, Reich pulled the litigation trigger and filed this lawsuit, disregarding Defendants' threat of sanctions and MLBPA's actual Rule 11 sanctions motion once Nix paid him enough to underwrite five months of frivolous, harassing litigation. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 80:5–83:1. Throughout that time, Reich knew, according to Nix, that Nix was living out of his truck or with friends and that Nix's company had nearly no sales in 2019 or 2020, meaning that Nix would likely try to plead poverty if he were actually sanctioned. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 22:12–17; DNA Dep. Tr. 44:23–45:4; Ng Supp. Decl. Ex. A at 19–20.

Despite Nix's claimed indigence, he testified that he has spent "probably over $1 million" on attorneys' fees over the last five years. He claimed that whenever he came into some money, either from selling $50,000 to $100,000 of his company's equipment (he did not say when), Ng Supp. Decl. Ex. B, Nix Dep. Tr. 37:1–9; or selling his truck in early 2020 (a source of income he did not reveal to the Court), Ng Supp. Decl. Ex. B, Nix Dep. Tr. 21:6–10; or selling a Pontiac in 2018, Ng Supp. Decl. Ex. B, Nix Dep. Tr. 68:22–69:6; or legal settlements in 2014, 2015, late 2019, and September 2020 (similarly unrevealed), Ng Supp. Decl. Ex. B, Nix Dep. Tr. 126:18–141:19, he uses that money to pay his lawyers, including Reich—to whom Nix has already paid an estimated $200,000 to $350,000 in attorneys' fees. *See* Ng Supp. Decl. Ex. B, Nix Dep Tr. 160:11–15.

Reich also represented Nix in a case in the Western District of Washington that settled in late 2019, with payment of the settlement money disbursed in January 2020. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 82:15–83:1. That money went to Reich and another attorney who has represented Nix against MLB, to fund past and future legal work. *See* Ng Supp. Decl. Ex. B, Nix Dep. Tr. 80:21–82:3.

Reich knew that Nix would likely seek to duck sanctions if Defendants prevailed in their Rule 11 motion, because at some point in the late spring or early summer of 2020, Nix also fell behind on Reich's legal bills. Ng Supp. Decl. Ex. B, Nix Dep. Tr. 160:7-21. Nonetheless, Nix alleges that Reich recommended that Nix press ahead with this lawsuit, even after MLBPA filed the motion for sanctions in the spring of 2020—an allegation of complicity (or principal responsibility) that Nix has now made in two separate public declarations, and presumably, in his *in camera* submission as well). *See, e.g.*, Declaration of Neiman Nix in Support of Plaintiffs' Opposition to Defendants' Motion for Order to Show Cause, Dkt. 79-1, ¶ 13 ("I provided all of the facts for my attorneys in this matter and relied on their expertise in this matter. Both of my attorneys carefully reviewed the sanctions and each stated they did not feel that it was a sanctionable offense at all."). Yet when Defendants sought to probe Nix's allegations of Reich's responsibility for the sanctioned conduct, Reich instructed Nix not to answer. Ng Supp. Decl. Ex. B, Nix Dep. Tr. 203:20-207:14.

For all these reasons, Reich was not an unwitting participant in Plaintiffs' harassing course of conduct. He was a complicit enabler and (well-funded) collaborator.

**B. Plaintiffs' Counsel's Harassing Conduct Has Continued Since the Sanctions Order Issued**

The Court already concluded in its October 27 Sanctions Order that Reich was complicit in Plaintiffs' sanctionable conduct, but it deferred imposing sanctions pending evidence about Reich's future conduct in support of Nix's campaign of harassment. Despite Reich being on notice of the risk that the sanctions award would be made joint and several, Reich deliberately delayed these proceedings, forced Defendants to incur more costs and fees, and forced this Court to deal with the mess he had created. Had Reich been more forthcoming with the Court and counsel, not only would the Court likely have made the monetary sanctions joint and several at the outset, but the Court would also have had the opportunity to consider other forms of sanctions that might have had a more effective deterrent impact on Nix than an award of monetary sanctions that Nix never had any intent to pay.

Even after entry of the Sanctions Order, Reich chose not to communicate to MLB or MLBPA that Plaintiffs would not be paying the award in whole or part. Despite MLBPA's emails and phone calls with Reich on November 16, 17, 18, and 20, not until three days after expiration of the payment deadline did Reich for the first time acknowledge that Plaintiffs would not be paying and would be asserting an inability to pay the court-ordered sanctions. Declaration of Michael Rubin in Support of Motion OSC re Contempt (Dkt. 70-1), ¶¶ 5–7, 9, 17–20.

Reich enabled his clients' scheme to willfully disregard the Sanctions Order, requiring Defendants to spend more time and money seeking compliance. Counsel for MLBPA twice informed Reich prior to the expiration of the deadline to pay the sanctions award that a notice of appeal would not suspend Plaintiffs' obligation to comply with the court-ordered sanctions award. *Id*. ¶ 9. Nevertheless, without posting an appellate bond or seeking a stay of execution, Reich filed a notice of appeal of the Sanctions Order on behalf of Plaintiffs, *id*. ¶ 8, allowing the payment deadline to come and go with no payment, *id*. ¶ 16, thereby forcing Defendants to undertake yet another round of briefing to inform the Court of Plaintiffs' non-compliance.

Reich knew or should have known that the notice of appeal he signed and filed was frivolous, but he proceeded to file it anyway. The Ninth Circuit Mediation Conference statement that Reich filed alleges that this Court abused its discretion in imposing sanctions. That is the purported basis for Plaintiffs' appeal, and it is entirely baseless. Yet by filing that meritless appeal (which Nix has come up with another $6,000 to pay Paul Golden to prosecute), Reich's complicity will force Defendants to pay thousands of dollars of appellate attorneys' fees on appeal, in addition to what Defendants have already been forced to spend defending against Plaintiffs' baseless accusations.

When Lance Reich signed and filed Plaintiffs' Opposition to Defendants' Motion for OSC re Contempt, which asserted that Plaintiffs were unable to pay the sanctions award, Dkt. 79, he knew that Nix had settled a lawsuit for some undisclosed figure between $50,000 to $100,000 just a few months earlier. Ng Supp. Decl. Ex. B, Nix Dep. Tr. 137:15-17. That opposition brief was not complete and accurate, and it was Reich's frivolous interpretation of the Court's December 12 Order as not requiring service of Nix's financial statements on Defendants that caused this Court on January 6 to order compliance with that order by the end of the day and to further order Nix and his company to promptly stand for deposition. Reich's position that filing "under seal" means filing ex parte *in camera* was indefensible—and even if the Court had not ordered Plaintiffs to serve Defendants, Reich should have known he could not rely on an ex parte filing in arguing that his client was unable to pay the court-ordered sanctions.

It is true that on December 3, 2020, Reich and his local counsel Ronald Richman moved to withdraw as counsel for Plaintiffs. But that attempt to jump ship in the face of their clients' efforts to blame *them* for the sanctionable conduct that they *each* engaged in (and by then instructing Nix in deposition not to testify about those communications even though Nix had already twice disclosed in public declarations that he was relying on advice of counsel in choosing not to withdraw his complaint in the face of the MLBPA's Rule 11 motion, Ng Supp. Decl. Ex. B, Nix Dep. Tr. 203:20–207:14), cannot preclude a Court order making Reich jointly and severally liable for the previously imposed sanctions or the well-documented attorneys' fees and costs Defendants have been forced to incur with respect to this contempt motion. Indeed, the

October 27 Sanctions Order expressly states that the Court will retain jurisdiction for the purposes of considering whether to make Reich liable for sanctions.

Plaintiffs' attorney Lance Reich was fully aware of and complicit in Nix's abuse of the legal system. He is the mechanism by which the Court's processes were abused, and he should share in Nix's payment of sanctions as a result of that misconduct.

## **Conclusion**

For the reasons stated, Defendants respectfully request that the Court: (1) issue an Order to Show Cause why Plaintiffs should not be held in contempt of Court for failing to comply with this Court's October 27, 2020 Sanctions Order; (2) order Plaintiffs to pay additional sanctions of $500 per day for each day following entry of a contempt order that Plaintiffs fail to pay the sanctions award in full; (3) order Plaintiffs' counsel jointly and severally liable for the $137,445.25 in sanctions awarded to Defendants on October 27, 2020; and (4) award Defendants their reasonable expenses, including attorney's fees, incurred in bringing this motion.

DATED: January 14, 2021          KOBRE & KIM

By: /s/ *Michael Ng*
Michael Ng (State Bar No. 237915)
Michael.Ng@kobrekim.com
150 California Street, 19th Floor
San Francisco, California 94111
Telephone: 415-582-4800
Facsimile: 415-582-4811

Adriana Riviere-Badell
(*appearance pro hac vice*)
Adriana.Riviere-Badell@kobrekim.com
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: 305-967-6100
Facsimile: 305-967-6120

*Attorneys for Defendants Major League Baseball; Major League Baseball Enterprises; and MLB Advanced Media, L.P.*

ALTSHULER BERZON LLP

By: /s/ *Michael Rubin*
Michael Rubin (SBN 80618)
mrubin@altshulerberzon.com
Hunter B. Thomson (SBN 330533)
hthomson@altshulerberzon.com
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Jeffrey D. Perconte (*appearance pro hac vice*)
Major League Baseball Players Association
jperconte@mlbpa.org
12 East 49th Street
New York, NY 10017
Telephone: (212) 584-6516
Facsimile: (212) 584-6616

*Attorneys for Defendant*
*Major League Baseball Players Association*