UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DNA SPORTS PERFORMANCE LAB, INC., and NEIMAN NIX,

Plaintiffs,

v.

MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA LP; MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION; and MAJOR LEAGUE BASEBALL ENTERPRISES, INC,

Defendants.

No. C 20-00546 WHA

**ORDER DENYING MOTION SEEKING RECONSIDERATION**

## INTRODUCTION

In this long-terminated false advertising case, a repeat litigant seeks reconsideration of the order denying relief from judgment. For reasons below, reconsideration is denied.

## STATEMENT

Recall what this case concerned. After seven years of letters and serial litigation against Major League Baseball, plaintiffs Neiman Nix and DNA Sports Performance Lab, Inc. brought this action in January 2020. They alleged that defendants Major League Baseball and its Players Association had banned players from using products containing the substance IGF-1. They alleged that non-party NSF International tested for banned substances before certifying products as "NSF Safe for Sport." And, plaintiffs alleged that their own animal-derived sports supplements contained IGF-1. The problem was that third-party products also contained IGF-1 but were labeled "NSF Certified for Sport" and endorsed by MLB. So, plaintiffs brought false

advertising and unfair competition claims against MLB, the MLBPA, and two MLB entities.

One defendant moved for sanctions before moving to dismiss. The Court considered the claims, recognized they were frivolous, but did not impose sanctions just yet, giving plaintiffs a chance to make the next move (Dkt. No. 53 ("Pre-Dismissal Order")). Plaintiffs dismissed their own complaint with prejudice (Dkt. No. 54 ("Dismissal")). Collateral orders found that the claims had been brought for improper purposes (e.g., Dkt. Nos. 66, 93, 133. ("Fees Order," "Contempt Order," "Pre-Filing Order," respectively)). The last issued in April 2022.

Nearly three years later, Nix attended a film screening. During the question-and-answer session, he asked an NSF employee if NSF was even able to test for IGF-1. The employee said no. So, Nix reviewed what defendants had submitted in support of collateral matters in this case — billing records, declarations, and so on. He determined defendants had known NSF's purported testing limitations from the start, yet had withheld it, and that this amounted to material fraud on our proceedings. Nix came back to court seeking relief from the above orders (Dkt. No. 159 ("Prior Br.")). Indeed, he sought to "vitiate[ ]" his own voluntary dismissal (Dkt. No. 165-2 ("Present Br.") at 11). He also sought an order stopping the play of baseball and awarding $600,000,000 (Prior Br. 24–25).

An order denied Nix's motion for relief from judgment. Nix at most had found "newly discovered evidence" or fraud on a party. So, his motion was out of time under Rule 60(b) (Dkt. No. 163 ("Order")). All other motions were denied. In one, Nix had sought sanctions for defendants' purported failure to notify him of their motion to strike (see Dkt. No. 162).

Now, Nix seeks reconsideration. He must show a material change in facts or law, or a manifest error by the Court. Civ. L.R. 7-9(b)(3). No hearing is needed. Id. at 7-1(b).

**ANALYSIS**

1.  **THE MOTION FOR RELIEF FROM JUDGMENT.**

Nix argues the order erred by considering fraud on a party but not on the Court. The latter, under Rule 60(d), has no time bar. The distinction makes no difference here.

Regardless of Nix's characterization of the facts and applicable law, the prior order's characterization of the cited hearsay as at best "newly discovered evidence" or evidence of a

fraud on Nix but not on the Court was not erroneous.

The contrary conclusion requires crediting a lengthy logical chain: that the third-party employee's hearsay revealed facts about the third-party's testing, that those facts were readily knowable to defendants when making representations to the Court (but not readily knowable to plaintiffs) (*e.g.*, Prior Br. Decl. ¶ 53), that defendants' representations to the Court were so contrary they amounted to misrepresentations, that the knowing misrepresentations to the Court were material to its orders, and — as to Nix's contention that this fraud "vitiates" dismissal — that but for the pre-dismissal order plaintiffs would not have dismissed their case.

The links at the start of the chain cannot be sustained. Consider our history. After seven years of threats and filings leading to this suit and five more years since, Nix attests he has found a truth long known to defendants but never to him until he asked a third-party employee about it publicly. That is not credible. And, if credited, it does not help Nix. That is because the links at the end of the chain cannot be sustained, either, as addressed next.

*As for the orders' merits-related analysis*, the orders already treated as true everything pleaded. Nix had pleaded that, because *both* plaintiffs' sports supplements and other products contained IGF-1, defendants' endorsement of only the latter as *not* containing IGF-1 amounted to false advertising and unfair competition. Even so, the claims were set to fail. Nix had not brought the claims against the right defendants (e.g., those who had made, caused, or induced statements), had failed to allege requisite harm (e.g., direct competition with the other products and lost sales), *and* had failed to request appropriate relief (e.g., harms had ceased) (*see* Pre-Dismissal Order 5–10; Fees Order at 10–11). Now, Nix offers still another reason endorsing the products as lacking IGF-1 was false. But a false endorsement was already assumed.

*As for the other sanctions-related findings*, recall there are three orders Nix puts at issue. When awarding attorney's fees, the Court assumed the pleadings true and found that their facial insufficiency supported an "inference of improper motive" (Fees Order at 10–11). When considering contempt, the Court set out uncontested facts as to what attorney's fees went unpaid (Contempt Order 3). And, when considering pre-filing requirements, the Court underscored plaintiffs' "litigation modus operandi" in nine suits against the league, each

3

"characterized by a dismissal followed by a new suit in a different venue with a slightly new cause of action" (Pre-Filing Order 5 (quoting Fees Order 2)). None of these three orders turned on what Nix asserts. For instance, it would still be true that "a cursory investigation into Lanham Act, false advertising, and unfair competition claims would have revealed the commercial speaker, material-deception, and injury elements" his complaint missed (Fees Order 12). And, it would still be true that Nix for years brought litigation based on "common sense" rather than reasonable diligence (*ibid.*), without uncovering this fact by, it would seem, asking about it and researching it (*see also* Prior Br. Decl. ¶ 69 (citing old public reports purportedly confirming new information)). Even "a person with a measured legitimate claim may cross the line into frivolous litigation." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1059 (9th Cir. 2007) (per curiam). Nix lacked even the measured claim, as above.

*As for his voluntary dismissal*, Nix asserts he wanted to keep litigating (Present Br. 11). So no fraud on the Court prompted him to dismiss. If his lawyer was deterred by the Court's pre-dismissal order (*ibid.*), then his lawyer was not deterred by fraud, either, per the above.

2. **THE MOTION FOR SANCTIONS.**

Recall that, soon after Nix filed his motion for relief from judgment, defendants moved to strike it — and Nix complained defendants did not timely notify him. Still, Nix timely opposed them with a 25-page brief, or 51 pages with exhibits. The motion to strike was mooted when Nix's own motion failed. Regardless, Nix maintained that sanctions should be imposed for deficient notice. The prior order did not error in denying sanctions. If there was any deficiency, there was still no indication that defendants acted in bad faith, nor that any prejudice flowed to Nix from it.

## CONCLUSION

The motion seeking reconsideration (Dkt. No. 165) is **DENIED**.

IT IS SO ORDERED.

Dated: May 13, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4